| | |
|---|---|
| **Jahmir Adams, Jeremy Lee Hensel,** | **:  United States District Court** |
| **Danny Jesus Ruiz, Antonio McGruther,** | **:  Eastern District of Pennsylvania** |
| **Tray Daniels, Shawn Schlopy, Miguel Martell,** | **:** |
| **and Copeland Tyler Plaintiffs,** | **:  Civil Division – Civil Rights** |
| **vs.** | **:  CLASS ACTION – JURY DEMAND** |
| **Adelphoi USA, John/Jane Does 1-100, Defendants.** | **:  Case No.: 23-cv-** |

## CLASS ACTION COMPLAINT

Plaintiffs Jahmir Adams ("Adams"), Jeremy Lee Hensel ("Hensel"), Danny Jesus Ruiz ("Ruiz"),

Antonio McGruther ("McGruther"), Tray Daniels ("Daniels"), Shawn Schlopy ("Schlopy"), Miguel Martell

("Martell"), and Copeland Tyler, ("Tyler"), individually and on behalf of all others similarly situated, allege as

follows, against Defendants Adelphoi USA, and John/Jane Does 1-100, in their official and individual

capacities (the "John/Jane Doe Defendants") (collectively "Adelphoi USA", the "School", and "Defendants"):

## INTRODUCTION

1. Adelphoi operates facilities where juveniles are held in custody in Pennsylvania.

2. Adelphoi, by contract and legislation in Pennsylvania, and all the states it operates, has been delegated a critical and legislatively mandated public function: (a) to provide a custodial setting for children adjudicated delinquent in juvenile court proceedings, as well as children at risk for delinquency or criminal conduct; and (b) to carry out legislatively mandated control and related services, and to provide appropriate sanctions and rehabilitation under the laws governing punishment and treatment of juveniles for criminal acts.

3. Adelphoi USA offers rehabilitation, education and support services for youth through a trauma-informed approach. Operating since at least 1973 and managed by leaders and innovators in the field of juvenile justice, Adelphoi USA are both community-based and residential, serving both local and out-of-state students. Available at https://www.Adelphoi.org/

1

4. Instead of fulfilling its promise and solemn responsibility to protect these vulnerable youth, they were exposed to predators and abusers. Adelphoi USA failed to enact safety measures and other policies to protect the children, failed to adequately screen, hire, train, and supervise staff, and failed to fulfill its duties under state and federal law and as a result of the Defendant's misconduct, children in Adelphoi USA facilities have been reportedly sexually abused – often by Adelphoi USA staff.

5. Thus, Adelphoi acts as an arm of the states and Commonwealth, where it operates, providing a core public function, and is a state governmental actor for 42 U.S.C. § 1983 liability purposes.

6. Adelphoi was acting as an arm of the states and Commonwealth, where it operates, acts under the color of law for 42 U.S.C. § 1983 liability purposes.

7. In Pennsylvania the Juvenile Court Judges Commission adopted the "Balanced and Restorative Justice" (BARJ) philosophy which requires that "youth committing delinquent acts are provided with supervision, care, and rehabilitation (the legal basis for treatment of those adjudicated in the juvenile court system in Pennsylvania) in a manner that is balanced to include (1) community protection, (2) personal and legal responsibility, and (3) competency development."

8. Adelphoi also professes to employ a "Balanced and Restorative Justice (BARJ) compliant, residential program utilizing a Sociological Model, designed to effectuate long-term behavioral change and enhance life skills development."

9. Adelphoi program includes room and board, clothing, behavior management individual and group counseling, academic and vocational programming, medical and dental services, as well as athletic and recreational opportunities." Available at https://www.Adelphoi.org/

10. Adelphoi offers services for court-adjudicated youth and non-delinquent youth. Available at https://www.Adelphoi.org/

11. Defendants violated the clearly established federal Constitutional and statutory rights of Plaintiffs and those similarly situated under the Fourth, Eighth, and Fourteenth Amendments, and committed tortious

conduct under state law, by subjecting Plaintiffs and those similarly situated to harmful and degrading physical, mental, and sexual abuse, including using physical force, and by failing to protect them from harm and injuries at the hands of others.

12. Defendants violated Plaintiffs' state and federal Constitutional equal rights to educational opportunities.

13. Adelphoi caused the injuries and harms to Plaintiffs and those similarly situated by failing to properly train, supervise, and discipline the John/Jane Doe Defendants and, as a result, the John/Jane Doe Defendants, as a matter of practice and custom, engaged in the prohibited conduct on a systematic basis with the expectation that their conduct would not be subject to discipline or sanctions.

14. Further, Adelphoi failed to protect Plaintiffs and those similarly situated from assaults and abuse by staff and fellow students at Adelphoi.

15. Adelphoi itself and via its staff members, individually and collectively, deprived the Plaintiffs and others similarly situated from their constitutionally guaranteed right to an education and equal educational opportunities.

16. Adelphoi has failed to properly protect Plaintiffs, and those similarly situated, and has shown a reckless disregard and deliberate indifference to the widespread violations of their rights, despite being aware for decades of the conduct of the John Doe Defendants, including the physical assaults and sexual abuse, and the corresponding lack of protection for Plaintiffs and the children residing at Adelphoi.

17. Additionally, in the Commonwealth of Pennsylvania state court, separate lawsuits, raising almost identical claims, including both physical and sexual abuse, to those contained within this complaint, including complaints for excessive force, fondling, groping, sodomy, and rape have been filed against Adelphoi USA and/or the other related named Defendants.

18. Because of Defendants' conduct, Plaintiffs and those similarly situated have suffered and continue to suffer harm, including emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, all of which adversely affects

their daily activities and the full enjoyment of life. Plaintiffs and others similarly situated have and will in the future sustain loss of earnings and earning capacity and have, and will, incur expenses for medical and psychological treatment, therapy, and counseling.

19. Accordingly, Plaintiffs make individual claims for the abuse they suffered and bring on behalf of others similarly situated a class action for injunctive relief to enjoin Defendant from continuing conduct that threatens imminent harm to the proposed class.

20. Plaintiffs bring this lawsuit to hold Adelphoi USA accountable for the harm it caused and to prevent this devastating abuse from happening to any other child in Adelphoi USA's care.

## JURISDICTION AND VENUE

21. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), because Plaintiffs allege actions arising under the laws of the United States, including 20 U.S.C. § 1681 and 34 U.S.C. § 2034, in addition to 28 U.S.C. § 1343, and the Civil Rights Act of 1871, 42 U.S.C. §§1983, 1985, and 1988, and deprivation of their federal constitutional rights to equal educational opportunities.

22. At all relevant times, all Defendants acted under the color of state law.

23. This Court has subject matter jurisdiction over class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because: (1) Plaintiffs seek to represent a nationwide class of individuals who were sexually, physically and/or emotionally abused at Adelphoi USA, and were deprived of educational opportunities; (2) the amount in controversy exceeds $5,000,000, excluding interest and costs; (3) the proposed class consists of more than 100 individuals; and (4) none of the exceptions under the subsection applies to this action.

24. This Court has subject matter jurisdiction over individual claims brought by Plaintiffs, based on the federal questions raised of the parties pursuant to 28 U.S.C. § 1331. Defendant Adelphoi USA operates in New York and Ohio as their principal places of business. The amount in controversy, without interest and costs, exceeds $75,000.

25. This Court has supplemental jurisdiction for the state law claims, pursuant to 28 U.S.C. §1367.

26. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) in that a substantial part of the events and/or omissions giving rise to the claim occurred in this district.

## PARTIES

27. Plaintiff is **Jahmir Adams**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

28. Plaintiff is **Jeremy Lee Hensel**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

29. Plaintiff is **Danny Jesus Ruiz**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

30. Plaintiff is **Antonio McGruther**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

31. Plaintiff is **Tray Daniels**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

32. Plaintiff is **Shawn Schlopy**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

33. Plaintiff is **Miguel Martell**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

34. Plaintiff is **Copeland Tyler**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

35. Defendant, **Adelphoi USA** is a registered business with a corporate headquarters office at 1119 Village Way Latrobe, PA 15650.

36. Defendants **John/Jane Does 1-100** are current and former managers, administrators, supervisors, teaching staff, medical staff, and others who have been employed by or were under the control of Adelphoi, who abused and/or facilitated the abuse of children at Adelphoi.

## TOLLING OF STATUTE OF LIMITATIONS

37. The statute of limitations to file claims for physical, emotional, deprivation of educational opportunities, and/or sexual abuse is tolled based on the decisions in *American Pipe*[1] and its progeny.

38. The statute of limitations is also tolled based on the doctrines of continuing violations and fraudulent concealment.

39. Upon information and belief, physical, emotional, and/or sexual abuse of Adelphoi USA patients occurred as early as 1998, and has continued until at least 2022, if not the present.

40. Tolling of the statute of limitations based on fraudulent concealment occurs where the entity liable for the claim fraudulently conceals the existence of the claim or the identity of any person liable for the claim from the knowledge of the person entitled to sue and to satisfy the equitable principle of fraudulent concealment in order to toll the statute of limitations, in Pennsylvania, case law agree that Plaintiffs must show: (1) successful concealment of the causes of action; and (2) fraudulent means to achieve that concealment[2].

41. Adelphoi USA concealed the existence of Plaintiffs' claims and the fact that Plaintiffs had causes of action against them at the time the physical, emotional, and sexual abuse occurred by making material representation(s) to Plaintiffs involving a past or existing fact by, including but not limited to:

    a. Misrepresenting that the abuse experienced by Plaintiffs was part of their treatments, in part by accompanying the abuse with actual medical treatments including during therapeutic sessions

---

[1] *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)
[2] *See Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005)

b.  Misrepresenting that the abuse experienced by Plaintiffs was appropriate by taking advantage of the vulnerability of patients who were looking for adults whom they could trust and who made them feel safe, including by: building trust with patients as a method of grooming them for sexual abuse, bringing gifts to their patients, providing patients with extra privileges, and exchanging "love letters" with their patients

c.  Representing that Adelphoi USA's physical, emotional, and sexual abuse of Plaintiffs was normal, medically necessary, proper, appropriate, legitimate, and/or medically beneficial, generally;

d.  Representing that Adelphoi USA was not physically, emotionally, and sexually assaulting Plaintiffs;

e.  Representing that Plaintiffs should not question and/or report the conduct to appropriate authorities; and

f.  Representing that there was no possible cause of action against Adelphoi USA.

42. The material representation(s) to Plaintiffs were false in that Adelphoi USA was actually physically, emotionally, and sexually violating Plaintiffs.

43. When Adelphoi USA made the material representation(s), they knew or should have known that the representations were false in that the treatment of Plaintiffs was not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty.

44. Adelphoi USA made the material representations recklessly, without any knowledge of their truth and as a positive assertion, in that they had previously received strikingly similar complaints of physical, emotional, and sexual abuse by Adelphoi USA staff from other previous patients and knew that the appropriateness of their conduct had been questioned in the past.

45. Defendant's representations were material, in that had Plaintiffs known the representations were false, they would have stopped seeking treatment from Adelphoi USA immediately.

46. Adelphoi USA made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs in that Plaintiffs should believe that their treatment at Adelphoi USA's facilities was proper, appropriate, and legitimate; should not believe that they had been abused; should continue to be treated at Adelphoi USA's facilities so that the abuse could continue; should not question and/or report the conduct to appropriate authorities; and should not reasonably believe and not be aware of a possible cause of action that they have against Adelphoi USA.

47. Plaintiffs acted in reliance upon the material representation(s) in that they: (a) reasonably believed that their treatment was proper, appropriate, and legitimate; (b) reasonably did not believe that they had been physically, emotionally, and sexually abused; and (c) did not believe that they should question and/or report the conduct to appropriate authorities.

48. In addition to affirmative false representations, Defendant failed to disclose to Plaintiffs that they were being abused and that Adelphoi USA had a history of committing physical, emotional, and sexual assaults in the guise of medical treatment.

49. Defendant's representations caused Plaintiffs to be exposed to the risk of physical, emotional, and sexual abuse by Adelphoi USA staff, and to actually be physically, emotionally, and/or sexually abused by Adelphoi USA staff.

50. Adelphoi USA is equitably estopped from relying upon a statute of limitations defense because of its gross negligence and silence as well as its active and deliberate efforts to deceive Plaintiffs and to conceal their unlawful and grossly negligent conduct. Through its gross negligence and silence, Adelphoi USA encouraged and influenced Plaintiffs to act to their disadvantage by telling them that their complaints about physical, sexual, and emotional abuse were unfounded, encouraging them to continue seeking treatment at Defendant's facilities and making them feel ashamed, such that Plaintiffs could not discover the nature, scope, and magnitude of Defendant's misconduct. As set forth herein, Defendant also took active steps to misrepresent material facts.

51. Plaintiffs' claims should be equitably tolled because any alleged failure to meet any deadline unavoidably arose from circumstances beyond Plaintiffs' control. Adelphoi USA concealed material facts regarding Adelphoi USA's misconduct and for decades Defendant misrepresented and fraudulently concealed this activity and the substantial risks posed by that misconduct.

52. Adelphoi USA intended for the public, including Plaintiffs, to be deceived by this fraud such that Adelphoi USA's conduct remained unstopped for decades and the repercussions of their misconduct was not dealt with to the detriment of Plaintiffs. As set forth herein, Defendant knew the actual facts, that Adelphoi USA staff have been abusing their youth for decades, and that Defendant knowingly did nothing to stop it.

53. Plaintiffs' damages, as herein alleged, were proximately caused by Adelphoi USA.

54. As minors, Plaintiffs did not know, could not have reasonably known, and were not reasonably aware of a possible cause of action that they had against Adelphoi USA at the time that such abuse occurred.

## FACTUAL BACKGROUND

A. **Defendants Had A Duty To Provide A Safe And Secure Facility For Juveniles and Provide Educational Opportunities Committed Or Otherwise Housed At Adelphoi Pursuant To Constitutional and State Law Mandates.**

55. At all times the Defendant and all its staff members, workers, employees, servants, voluntary, and the like were mandatory reporters pursuant to Pennsylvania law and were required to report any suspected child abuse pursuant to 55 Pa.C.S.A. §3680 *et seq*; 55 Pa.C.S.A. §3800 *et seq*; 42 Pa.C.S.A. §§ 6327(a) *et seq*.; and all other applicable child abuse reporting requirement laws related to mandatory abuse reporters and applicable to Defendant's facility.

56. The Defendant accepted juveniles for placement pursuant to court orders issued from various county and state governmental units.

57. Adelphoi serves as a custodial facility for the placement of juvenile court adjudicated youths, aged 8-18, and other at-risk youth. Operating since at least the early 1970s, Adelphoi has provided juvenile

residential care since its inception. It claims to assess the unique needs of each student, teach tools for success and offer meaningful opportunities for personal growth.

58. Children with a wide range of backgrounds, abilities, and diagnoses receive treatment from Adelphoi USA programs. Adelphoi USA offers many clinical, therapeutic, educational and employment programs for children with special needs and their families. Some youth and families receive less-intensive services from Adelphoi USA such as outpatient behavioral health therapy, family-based mental health services, and various types of consultation-based support. Other non-residential programs include day schools for youth with intellectual/developmental disabilities and autism spectrum disorders. Adelphoi USA's more intensive residential programs include therapeutic boarding schools, therapeutic group homes, supervised independent living facilities, an intensive residential treatment program for children who have experienced sexual exploitation, and psychiatric specialty hospitals.

59. For the children who were abused at an Adelphoi USA facility, it was almost impossible to get help or stop the abuse because Adelphoi USA reportedly limited the contact many of them had with the outside world, limiting phone calls thereby trapping children with their abusers.

60. Nor was there any clear and safe mechanism by which victims could report abuse within Adelphoi USA; as reported, those who did report were disbelieved, or worse, retaliated against, exacerbating and amplifying the trauma of the actual abuse.

61. Many of the children who were abused at Adelphoi USA were vulnerable, intellectually disabled, and already fleeing from abuse.

62. Adelphoi USA staff members also took advantage of children who had already been victims of sexual abuse and were at Adelphoi USA to seek healing.

63. The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with disabilities are easily targeted because they are more likely to be perceived as weak or vulnerable, and are seen as less likely to report abuse,

especially when the victim has limited communication abilities or cognitive impairments. Especially in a group home or residential treatment setting, abuse can more easily be hidden and children have limited access to police, advocates, or social services representatives who can intervene[3].

64. Despite Defendant's awareness of decades of systematic sexual and physical abuse of children in its care, Adelphoi USA has failed to enact appropriate uniform national and system-wide protocols and policies to ensure the safety of its youth. Adelphoi USA acted with an extreme disregard for the wellbeing of children in its programs by failing to properly screen, hire, and train employees, failing to report known abuse of youth in Adelphoi USA facilities, and ignoring and covering up complaints alleged against it regarding child abuse.

65. Despite this keen awareness of decades of systematic sexual and physical abuse of children in its care, Adelphoi USA has failed to enact sufficient measures to ensure the safety of their youth.

66. Moreover, Adelphoi USA's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

67. The term "Institutional Betrayal" refers to wrongdoings perpetrated by an institution upon individuals dependent on that institution, including failure to prevent or respond supportively to wrongdoings by individuals (*e.g.,* physical, emotional, and sexual abuse) committed within the context of the institution.

68. Indeed, Adelphoi USA's culture of indifference to the safety and well-being of its patients has caused abuse and sexual violence to flourish at Adelphoi USA for decades and this toxic culture continues to thrive to this day, even affecting staff.

69. These failures, acts, and egregious omissions created a highly dangerous risk of physical, emotional, and sexual abuse for any child placed in an Adelphoi USA program or facility across the nation. This

---

[3] https://www.childwelfare.gov/topics/can/factors/

pervasive culture of abuse allowed perpetrators access and opportunity to abuse highly vulnerable children and young adults, and gave them the impunity to act without the risk of detection or punishment.

70. Children arrive at Adelphoi USA facilities seeking treatment, healing, and belonging. For decades, Adelphoi USA has abused the trust that families have placed in it by allowing a culture of abuse, exploitation, and trauma.

71. Adelphoi is funded in large part by the Commonwealth of Pennsylvania and other government entities, jurisdictions, and agencies, both inside and outside Pennsylvania, to provide services mandated by law for children who have been adjudicated as delinquent in juvenile court.

72. Adelphoi asserts it provides a rehabilitative as opposed to a punishment based program for juvenile offenders and delinquent youth, including Plaintiffs. Adelphoi further states that it provides evidence-based programs such as "Positive Behavioral Intervention Supports, Moral Recognition and Coping with Anger" to turn its students away from crime.

73. Adelphoi has been the recipient of placements and commitments of juveniles from Pennsylvania, New York, New Jersey, Delaware, Indiana, Ohio, West Virginia, Michigan, and other states by virtue of its promise of a progressive and effective program for delinquent children, with proven services. Adelphoi has assiduously sought recognition as a model reform school, and has achieved that status, at least for some, as "the Harvard of reform schools." Namely, New York, Ohio, and many Pennsylvania counties, including Berks county within the Eastern District of Pennsylvania, had government contracts with Adelphoi, for placing juveniles within their respective jurisdictions at Adelphoi USA owned and/or operated facilities.

74. Defendants have the duty to provide treatment, supervision, and rehabilitation in accordance with federal and state Constitutional standards, via the Pennsylvania Juvenile Act, and prevailing standards for the care and custody of juveniles in need of treatment and supervision. As detailed in this Complaint,

Defendants have failed to provide these services in accord with Constitutional, statutory and community standards of care.

**B.  <u>Facts as to Jahmir Adams</u>**

75. While housed at Adelphoi USA Plaintiff was subjected to sexual abuse.

76. Plaintiff resided at Adelphoi USA from approximately 2019-2022 when he was a juvenile and approximately 17-19 years old.

77. Plaintiff Adams resided at Adelphoi USA pursuant to a court-order issued by a judge in the Berks County Court of Common Pleas.

78. During his/their tenure as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent hired, certified, assigned, retained, supervised, managed, overseen, directed, administrated, and/or otherwise controlled by and for one or more of the Defendant, Adelphoi USA, **<u>Patrick Kratz and Mr. Dave</u>** was an abuser of children, including Plaintiff, Jahmir Adams.

79. **<u>Patrick Kratz and Mr. Dave</u>**, committed acts of abuse against Plaintiff, Jahmir Adams, in a Adelphoi facility in Pennsylvania.

80. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **<u>Patrick Kratz and Mr. Dave</u>**, sexually and/or physically, and/or emotionally abused children and/or was/were not fit to serve as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent.

81. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **<u>Patrick Kratz and Mr. Dave</u>** had been and/or were abusing Plaintiff and/or other children at Adelphoi, Pennsylvania, and other locations visited by and/or related to Adelphoi activities, events, and/or duties.

82. At all material times hereto, Defendant, Adelphoi USA, took no action and/or failed to timely and adequately take action to warn or otherwise protect children of the Adelphoi USA, including Plaintiff, from Defendants, **<u>Patrick Kratz and Mr. Dave</u>**.

83. Plaintiff was groomed by **Patrick Kratz and Mr. Dave** who were both his counselors.

84. Almost immediately after his arrival at the facility both **Patrick Kratz and Mr. Dave** who were Plaintiff's counselors began repeatedly slapping Plaintiff's buttocks for completing routine activities, such as participating in group teaching or therapy sessions.

85. After a short period of grooming Plaintiff by slapping his buttocks and other related statements and conduct, **Patrick Kratz** asked Plaintiff if he wanted food from outside the Adelphoi facility.

86. Plaintiff responded to **Patrick Kratz** indicating he wanted food, and was told Plaintiff had to "jerk him off" in the kitchen on his upcoming weekend shift.

87. When Plaintiff responded by saying "no", **Patrick Kratz** grabbed Plaintiff's shirt and said "if you do not do it you can kiss going home goodbye".

88. **Patrick Kratz** saw Plaintiff would comply when he felt threatened with physical force.

89. After this initial incident, every second weekend, in either the kitchen or library, Plaintiff was forced to place his hands on **Patrick Kratz's** penis and testicles and manipulate his genitals, until **Patrick Kratz** ejaculated into Plaintiff's hand.

90. **Mr. Dave** became aware **Patrick Kratz** was sexually abusing Plaintiff and used this information to target and isolate Plaintiff to subject him to further sexual abuse.

91. Armed with this information, **Mr. Dave** approached Plaintiff and coerced him into using his cell phone after **Mr. Dave** finished watching Plaintiff masturbate.

92. When Plaintiff would decline, **Mr. Dave** threatened to call Plaintiff's probation officer and make a false report about non-existent misconduct by the Plaintiff.

93. Plaintiff was abused on more than 10 occasions in a similar manner.

94. At all times material hereto, as a result of the abuse of Plaintiff by **Patrick Kratz and Mr. Dave**, Plaintiff Jahmir Adams felt enormous shame, humiliation, embarrassment, and self-loathing, and was extremely confused and conflicted about the role of love and intimacy in her life.

14

95. At all times material hereto, as a result of the abuse of Jahmir Adams by **Patrick Kratz and Mr. Dave**, Jahmir Adams has suffered from extreme difficultly navigating intimate relationships, and he has experienced and continues to experience bouts of anger, difficulties when involved in relationships and attempting to be intimate in the context of these relationships, and/or drug and alcohol abuse.

96. As a result of the abuse set forth above, Plaintiff suffered great, permanent harm, including but not limited to, the following: severe emotional distress, extreme trauma, depression, anxiety, post-traumatic stress disorder (PTSD) symptoms, humiliation, embarrassment, fear, shame, emotional dissociation, and/or loss of self-esteem and self-worth, all of which has and/or will continue to require counseling, therapy, and/or other treatment.

97. Also, as a result of the abuse set forth above and its consequential trauma and harm, Plaintiff has suffered a severe impairment and disruption of his enjoyment of life, identity, intimacy with loved ones, and/or belief structure, including, but not limited to, the impairment and disruption of his relationship with members of his family, friends, acquaintances, and/or others.

98. Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff suffered from destructive and dysfunctional behaviors, including, but not limited to, addictions (i.e. alcohol and/or drugs) and/or other mental health issues, all of which have required and/or will require counseling, therapy, and/or other treatment.

99. Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff has incurred significant past loss of wages and future loss of earning capacity to his permanent detriment.

100.  Plaintiff's youth and placement at Adelphoi, together with the power imbalance and authoritative inequity between the Plaintiff and Defendants, created a culture and social dynamic that weakened Plaintiff's ability to resist **Patrick Kratz and Mr. Dave** and/or to report the misconduct of **Patrick Kratz and Mr. Dave** and/or other staff members, especially given the status with which and pedestal upon which Defendant, Adelphoi USA, assumed and held as treatment center for children and persons

with disabilities, in particular the purported authority that comes when an institution provides mental health services to a vulnerable population.

101.  The abuse set forth above and its consequential trauma and harm, in turn, caused Plaintiff to suppress and/or emotionally dissociate his feelings about his traumatic experience(s), thereby exacerbating its devastating psychological, physical, and social consequences.

102.  Plaintiff was not fully aware of the causal relationship between the abuse set forth above, and its consequential trauma and harm, until recently, and continues to endure and/or discover trauma and harm relative to the abuse at the present time, and which inflictions of trauma and harm shall and will continue in the future.

103.  Other victims' declarations and/or revelations of their experiences with abuse and corresponding damages caused by such abuse prompted Plaintiff to realize he is not alone, and to acknowledge, address, and/or discover the connection between his abuse and his corresponding emotional distress, social dysfunction and/or other damages and to speak out concerning same.

**C.  <u>Facts as to Jeremy Lee Hensel</u>**

104. While housed at Adelphoi USA Plaintiff was subjected to sexual abuse.

105. Plaintiff resided at Adelphoi USA from approximately 2009-2010 when he was a juvenile and approximately 16-17 years old.

106. Plaintiff resided at Adelphoi USA pursuant to a court-order issued by a judge in the Allegheny County Court of Common Pleas.

107. During his/their tenure as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent hired, certified, assigned, retained, supervised, managed, overseen, directed, administrated, and/or otherwise controlled by and for one or more of the Defendant, Adelphoi USA, **<u>Jeffrey Newhouse</u>** was an abuser of children, including Plaintiff.

108. **<u>Jeffrey Newhouse</u>**, committed acts of abuse against Plaintiff, in an Adelphoi facility in Pennsylvania.

109. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **<u>Jeffrey Newhouse</u>**, sexually and/or physically, and/or emotionally abused children and/or was/were not fit to serve as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent.

110. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **<u>Jeffrey Newhouse</u>** had been and/or were abusing Plaintiff and/or other children at Adelphoi, Pennsylvania, and other locations visited by and/or related to Adelphoi activities, events, and/or duties.

111. At all material times hereto, Defendant, Adelphoi USA, took no action and/or failed to timely and adequately take action to warn or otherwise protect children of the Adelphoi USA, including Plaintiff, from Defendants, **<u>Jeffrey Newhouse</u>**.

112. Plaintiff was sexually assaulted by staff member **<u>Jeffrey Newhouse</u>** who was his counselor.

113. During dinner in kitchen while at an Adelphoi facility, **<u>Jeffrey Newhouse</u>** grabbed Plaintiff's penis and testicles and said "I know you want me".

114. Immediately thereafter, **<u>Jeffrey Newhouse</u>** used his hand to prevent Plaintiff's attempts from getting up and leaving, by restraining Plaintiff's hands.

115. **<u>Jeffrey Newhouse</u>** then pulled down Plaintiff's pants, and inserted his fingers into Plaintiff's anus, causing Plaintiff severe pain in his rectum.

116. Plaintiff, as he was bleeding, felt **<u>Jeffrey Newhouse</u>** insert 4 fingers into his anus

117. After forcibly inserting his fingers into Plaintiff's anus, **<u>Jeffrey Newhouse</u>** inserted his penis into Plaintiff's mouth and made Plaintiff perform oral sex.

118. While forcing Plaintiff to perform oral sex **<u>Jeffrey Newhouse</u>** ejaculated into Plaintiff's mouth.

119. Shortly thereafter Plaintiff was forced to brush his teeth and rinse his mouth with Listerine.

120. Plaintiff was then ordered by **<u>Jeffrey Newhouse</u>** to discard his boxers due to the large amount of blood on them in addition to being ripped.

121. Plaintiff was then forced to shower while **Jeffrey Newhouse** watched to clean up all the blood.

122. At all times material hereto, as a result of the abuse of Plaintiff by **Jeffrey Newhouse**, Plaintiff felt enormous shame, humiliation, embarrassment, and self-loathing, and was extremely confused and conflicted about the role of love and intimacy in her life.

123. At all times material hereto, as a result of the abuse of Plaintiff by **Jeffrey Newhouse**, Plaintiff has suffered from extreme difficultly navigating intimate relationships, and he has experienced and continues to experience bouts of anger, difficulties when involved in relationships and attempting to be intimate in the context of these relationships, and/or drug and alcohol abuse.

124. As a result of the abuse set forth above, Plaintiff suffered great, permanent harm, including but not limited to, the following: severe emotional distress, extreme trauma, depression, anxiety, post-traumatic stress disorder (PTSD) symptoms, humiliation, embarrassment, fear, shame, emotional dissociation, and/or loss of self-esteem and self-worth, all of which has and/or will continue to require counseling, therapy, and/or other treatment.

125. Also, as a result of the abuse set forth above and its consequential trauma and harm, Plaintiff has suffered a severe impairment and disruption of his enjoyment of life, identity, intimacy with loved ones, and/or belief structure, including, but not limited to, the impairment and disruption of his relationship with members of his family, friends, acquaintances, and/or others.

126. Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff suffered from destructive and dysfunctional behaviors, including, but not limited to, addictions (i.e. alcohol and/or drugs) and/or other mental health issues, all of which have required and/or will require counseling, therapy, and/or other treatment.

127. Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff has incurred significant past loss of wages and future loss of earning capacity to his permanent detriment.

128.  Plaintiff's youth and placement at Adelphoi, together with the power imbalance and authoritative inequity between the Plaintiff and Defendants, created a culture and social dynamic that weakened Plaintiff's ability to resist **Jeffrey Newhouse** and/or to report the misconduct of **Jeffrey Newhouse** and/or other staff members, especially given the status with which and pedestal upon which Defendant, Adelphoi USA, assumed and held as treatment center for children and persons with disabilities, in particular the purported authority that comes when an institution provides mental health services to a vulnerable population.

129.  The abuse set forth above and its consequential trauma and harm, in turn, caused Plaintiff to suppress and/or emotionally dissociate his feelings about his traumatic experience(s), thereby exacerbating its devastating psychological, physical, and social consequences.

130.  Plaintiff was not fully aware of the causal relationship between the abuse set forth above, and its consequential trauma and harm, until recently, and continues to endure and/or discover trauma and harm relative to the abuse at the present time, and which inflictions of trauma and harm shall and will continue in the future.

131.  Other victims' declarations and/or revelations of their experiences with abuse and corresponding damages caused by such abuse prompted Plaintiff to realize he is not alone, and to acknowledge, address, and/or discover the connection between his abuse and his corresponding emotional distress, social dysfunction and/or other damages and to speak out concerning same.

**D.  Facts as to Danny Jesus Ruiz**

132. While housed at Adelphoi USA Plaintiff was subjected to sexual abuse.

133. Plaintiff resided at Adelphoi USA from approximately 2017-2019 when he was approximately 13-15 years old.

134. Plaintiff resided at Adelphoi USA pursuant to a court-order issued by a judge in the Allegheny County Court of Common Pleas.

135. During his/their tenure as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent hired, certified, assigned, retained, supervised, managed, overseen, directed, administrated, and/or otherwise controlled by and for one or more of the Defendant, Adelphoi USA, **Supervisor Andy** was an abuser of children, including Plaintiff.

136. **Supervisor Andy**, committed acts of abuse against Plaintiff, in an Adelphoi facility in Pennsylvania.

137. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **Supervisor Andy**, sexually and/or physically, and/or emotionally abused children and/or was/were not fit to serve as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent.

138. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **Supervisor Andy** had been and/or were abusing Plaintiff and/or other children at Adelphoi, Pennsylvania, and other locations visited by and/or related to Adelphoi activities, events, and/or duties.

139. At all material times hereto, Defendant, Adelphoi USA, took no action and/or failed to timely and adequately take action to warn or otherwise protect children of the Adelphoi USA, including Plaintiff, from Defendants, **Supervisor Andy**.

140. Plaintiff while complying with all orders, directions, and while not physically resisting in any manner, **Supervisor Andy**, placed his hands around Plaintiff's throat and squeezed causing Plaintiff to choke and have extreme trouble breathing.

141. Staff members **Supervisor Joe, Matt Leary, and Mr. Juan** were present while **Supervisor Andy** was using excessive force choking Plaintiff.

142. Plaintiff was restrained and physically assaulted by **Supervisor Andy** in a basement hallway where there were no cameras.

143. Plaintiff as a punishment was locked in a cell for 2 months.

144. At all times material hereto, as a result of the abuse of Plaintiff by **Supervisor Andy**, Plaintiff felt enormous shame, humiliation, embarrassment, and self-loathing, and was extremely confused and conflicted about the role of love and intimacy in her life.

145. At all times material hereto, as a result of the abuse of Plaintiff by **Supervisor Andy**, Plaintiff has suffered from extreme difficultly navigating intimate relationships, and he has experienced and continues to experience bouts of anger, difficulties when involved in relationships and attempting to be intimate in the context of these relationships, and/or drug and alcohol abuse.

146. As a result of the abuse set forth above, Plaintiff suffered great, permanent harm, including but not limited to, the following: severe emotional distress, extreme trauma, depression, anxiety, post-traumatic stress disorder (PTSD) symptoms, humiliation, embarrassment, fear, shame, emotional dissociation, and/or loss of self-esteem and self-worth, all of which has and/or will continue to require counseling, therapy, and/or other treatment.

147. Also, as a result of the abuse set forth above and its consequential trauma and harm, Plaintiff has suffered a severe impairment and disruption of his enjoyment of life, identity, intimacy with loved ones, and/or belief structure, including, but not limited to, the impairment and disruption of his relationship with members of his family, friends, acquaintances, and/or others.

148. Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff suffered from destructive and dysfunctional behaviors, including, but not limited to, addictions (i.e. alcohol and/or drugs) and/or other mental health issues, all of which have required and/or will require counseling, therapy, and/or other treatment.

149. Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff has incurred significant past loss of wages and future loss of earning capacity to his permanent detriment.

150. Plaintiff's youth and placement at Adelphoi, together with the power imbalance and authoritative inequity between the Plaintiff and Defendants, created a culture and social dynamic that weakened

Plaintiff's ability to resist **Supervisor Andy** and/or to report the misconduct of **Supervisor Andy** and/or other staff members, especially given the status with which and pedestal upon which Defendant, Adelphoi USA, assumed and held as treatment center for children and persons with disabilities, in particular the purported authority that comes when an institution provides mental health services to a vulnerable population.

151.  The abuse set forth above and its consequential trauma and harm, in turn, caused Plaintiff to suppress and/or emotionally dissociate his feelings about his traumatic experience(s), thereby exacerbating its devastating psychological, physical, and social consequences.

152.  Plaintiff was not fully aware of the causal relationship between the abuse set forth above, and its consequential trauma and harm, until recently, and continues to endure and/or discover trauma and harm relative to the abuse at the present time, and which inflictions of trauma and harm shall and will continue in the future.

153. Other victims' declarations and/or revelations of their experiences with abuse and corresponding damages caused by such abuse prompted Plaintiff to realize he is not alone, and to acknowledge, address, and/or discover the connection between his abuse and his corresponding emotional distress, social dysfunction and/or other damages and to speak out concerning same.

**E.  Facts as to Antonio McGruther**

154. While housed at Adelphoi USA Plaintiff was subjected to sexual abuse.

155. Plaintiff resided at Adelphoi USA from approximately 2017-2019 when he was approximately 13-15 years old.

156. Plaintiff resided at Adelphoi USA pursuant to a court-order issued by a judge in the Bradford County Court of Common Pleas.

157. During his/their tenure as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent hired, certified, assigned, retained, supervised, managed, overseen, directed,

administrated, and/or otherwise controlled by and for one or more of the Defendant, Adelphoi USA, **Tabby Dunn** was an abuser of children, including Plaintiff.

158. **Tabby Dunn**, committed acts of abuse against Plaintiff, in an Adelphoi facility in Pennsylvania.

159. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **Tabby Dunn**, sexually and/or physically, and/or emotionally abused children and/or was/were not fit to serve as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent.

160. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **Tabby Dunn** had been and/or were abusing Plaintiff and/or other children at Adelphoi, Pennsylvania, and other locations visited by and/or related to Adelphoi activities, events, and/or duties.

161. At all material times hereto, Defendant, Adelphoi USA, took no action and/or failed to timely and adequately take action to warn or otherwise protect children of the Adelphoi USA, including Plaintiff, from Defendants, **Tabby Dunn**.

162. A month after starting therapy with **Tabby Dunn**, Plaintiff noticed she began to start grooming him by rubbing her body against Plaintiff and often hugging him.

163. One day while under her care, Plaintiff had his penis grabbed and rubbed.

164. While rubbing Plaintiff's penis, **Tabby Dunn**, then jumped on top of Plaintiff, and took his penis and inserted it into her vagina and began raping him.

165. After **Tabby Dunn**, finished raping Plaintiff she threatened him.

166. **Tabby Dunn**, told Plaintiff if he reported the abuse she would have him killed.

167. At all times material hereto, as a result of the abuse of Plaintiff by **Tabby Dunn**, Plaintiff felt enormous shame, humiliation, embarrassment, and self-loathing, and was extremely confused and conflicted about the role of love and intimacy in her life.

168. At all times material hereto, as a result of the abuse of Plaintiff by **Tabby Dunn**, Plaintiff has suffered from extreme difficultly navigating intimate relationships, and he has experienced and continues to

experience bouts of anger, difficulties when involved in relationships and attempting to be intimate in the context of these relationships, and/or drug and alcohol abuse.

169.  As a result of the abuse set forth above, Plaintiff suffered great, permanent harm, including but not limited to, the following: severe emotional distress, extreme trauma, depression, anxiety, post-traumatic stress disorder (PTSD) symptoms, humiliation, embarrassment, fear, shame, emotional dissociation, and/or loss of self-esteem and self-worth, all of which has and/or will continue to require counseling, therapy, and/or other treatment.

170.  Also, as a result of the abuse set forth above and its consequential trauma and harm, Plaintiff has suffered a severe impairment and disruption of his enjoyment of life, identity, intimacy with loved ones, and/or belief structure, including, but not limited to, the impairment and disruption of his relationship with members of his family, friends, acquaintances, and/or others.

171.  Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff suffered from destructive and dysfunctional behaviors, including, but not limited to, addictions (i.e. alcohol and/or drugs) and/or other mental health issues, all of which have required and/or will require counseling, therapy, and/or other treatment.

172.  Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff has incurred significant past loss of wages and future loss of earning capacity to his permanent detriment.

173.  Plaintiff's youth and placement at Adelphoi, together with the power imbalance and authoritative inequity between the Plaintiff and Defendants, created a culture and social dynamic that weakened Plaintiff's ability to resist **Tabby Dunn** and/or to report the misconduct of **Tabby Dunn** and/or other staff members, especially given the status with which and pedestal upon which Defendant, Adelphoi USA, assumed and held as treatment center for children and persons with disabilities, in particular the purported authority that comes when an institution provides mental health services to a vulnerable population.

174.  The abuse set forth above and its consequential trauma and harm, in turn, caused Plaintiff to suppress and/or emotionally dissociate his feelings about his traumatic experience(s), thereby exacerbating its devastating psychological, physical, and social consequences.

175.  Plaintiff was not fully aware of the causal relationship between the abuse set forth above, and its consequential trauma and harm, until recently, and continues to endure and/or discover trauma and harm relative to the abuse at the present time, and which inflictions of trauma and harm shall and will continue in the future.

176. Other victims' declarations and/or revelations of their experiences with abuse and corresponding damages caused by such abuse prompted Plaintiff to realize he is not alone, and to acknowledge, address, and/or discover the connection between his abuse and his corresponding emotional distress, social dysfunction and/or other damages and to speak out concerning same.

**F.  Facts as to Tray Daniels**

177. While housed at Adelphoi USA Plaintiff was subjected to sexual abuse.

178. Plaintiff resided at Adelphoi USA from approximately 2013 when he was approximately 15 years old.

179. Plaintiff resided at Adelphoi USA pursuant to a court-order issued by a judge in the Allegheny County Court of Common Pleas.

180. During his/their tenure as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent hired, certified, assigned, retained, supervised, managed, overseen, directed, administrated, and/or otherwise controlled by and for one or more of the Defendant, Adelphoi USA, **Mr. Dave** was an abuser of children, including Plaintiff.

181. **Mr. Dave**, committed acts of abuse against Plaintiff, in an Adelphoi facility in Pennsylvania.

182. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **Mr. Dave**, sexually and/or physically, and/or emotionally abused children and/or was/were not fit to serve as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent.

183. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **Mr. Dave** had been and/or were abusing Plaintiff and/or other children at Adelphoi, Pennsylvania, and other locations visited by and/or related to Adelphoi activities, events, and/or duties.

184. At all material times hereto, Defendant, Adelphoi USA, took no action and/or failed to timely and adequately take action to warn or otherwise protect children of the Adelphoi USA, including Plaintiff, from Defendants, **Mr. Dave**.

185. During dinner, **Mr. Dave**, said he could easily dominate him and could "take him down".

186. Plaintiff was ordered during dinner by **Mr. Dave** to go to the library, and once Plaintiff walked inside, **Mr. Dave** began wrestling him.

187. While wrestling, **Mr. Dave** started humping Plaintiff and then used his hands to grab Plaintiff's penis and testicles.

188. Once Plaintiff complained, **Mr. Dave** began to squeeze his testicles extremely hard and said "this is all I have to do to gain control".

189. After releasing his tight squeeze of Plaintiff's testicles, **Mr. Dave** started caressing Plaintiff's genitals.

190. Plaintiff was sexually assaulted by **Mr. Dave** on more than 3 instances.

191. At all times material hereto, as a result of the abuse of Plaintiff by **Mr. Dave**, Plaintiff felt enormous shame, humiliation, embarrassment, and self-loathing, and was extremely confused and conflicted about the role of love and intimacy in her life.

192. At all times material hereto, as a result of the abuse of Plaintiff by **Mr. Dave**, Plaintiff has suffered from extreme difficultly navigating intimate relationships, and he has experienced and continues to experience bouts of anger, difficulties when involved in relationships and attempting to be intimate in the context of these relationships, and/or drug and alcohol abuse.

193.  As a result of the abuse set forth above, Plaintiff suffered great, permanent harm, including but not limited to, the following: severe emotional distress, extreme trauma, depression, anxiety, post-traumatic

stress disorder (PTSD) symptoms, humiliation, embarrassment, fear, shame, emotional dissociation, and/or loss of self-esteem and self-worth, all of which has and/or will continue to require counseling, therapy, and/or other treatment.

194.  Also, as a result of the abuse set forth above and its consequential trauma and harm, Plaintiff has suffered a severe impairment and disruption of his enjoyment of life, identity, intimacy with loved ones, and/or belief structure, including, but not limited to, the impairment and disruption of his relationship with members of his family, friends, acquaintances, and/or others.

195.  Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff suffered from destructive and dysfunctional behaviors, including, but not limited to, addictions (i.e. alcohol and/or drugs) and/or other mental health issues, all of which have required and/or will require counseling, therapy, and/or other treatment.

196.  Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff has incurred significant past loss of wages and future loss of earning capacity to his permanent detriment.

197.  Plaintiff's youth and placement at Adelphoi, together with the power imbalance and authoritative inequity between the Plaintiff and Defendants, created a culture and social dynamic that weakened Plaintiff's ability to resist **Mr. Dave** and/or to report the misconduct of **Mr. Dave** and/or other staff members, especially given the status with which and pedestal upon which Defendant, Adelphoi USA, assumed and held as treatment center for children and persons with disabilities, in particular the purported authority that comes when an institution provides mental health services to a vulnerable population.

198.  The abuse set forth above and its consequential trauma and harm, in turn, caused Plaintiff to suppress and/or emotionally dissociate his feelings about his traumatic experience(s), thereby exacerbating its devastating psychological, physical, and social consequences.

199. Plaintiff was not fully aware of the causal relationship between the abuse set forth above, and its consequential trauma and harm, until recently, and continues to endure and/or discover trauma and harm relative to the abuse at the present time, and which inflictions of trauma and harm shall and will continue in the future.

200. Other victims' declarations and/or revelations of their experiences with abuse and corresponding damages caused by such abuse prompted Plaintiff to realize he is not alone, and to acknowledge, address, and/or discover the connection between his abuse and his corresponding emotional distress, social dysfunction and/or other damages and to speak out concerning same.

**G. Facts as to Shawn Schlopy**

201. While housed at Adelphoi USA Plaintiff was subjected to sexual abuse.

202. Plaintiff resided at Adelphoi USA from approximately 2018-2019 when he was approximately 16-17 years old.

203. Plaintiff resided at Adelphoi USA pursuant to a court-order issued by a judge in the McKean County Court of Common Pleas.

204. During his/their tenure as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent hired, certified, assigned, retained, supervised, managed, overseen, directed, administrated, and/or otherwise controlled by and for one or more of the Defendant, Adelphoi USA, **Mr. Craig** was an abuser of children, including Plaintiff.

205. **Mr. Craig**, committed acts of abuse against Plaintiff, in an Adelphoi facility in Pennsylvania.

206. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **Mr. Craig**, sexually and/or physically, and/or emotionally abused children and/or was/were not fit to serve as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent.

207. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **Mr. Craig** had been and/or were abusing Plaintiff and/or other children at Adelphoi, Pennsylvania, and other locations visited by and/or related to Adelphoi activities, events, and/or duties.

208. At all material times hereto, Defendant, Adelphoi USA, took no action and/or failed to timely and adequately take action to warn or otherwise protect children of the Adelphoi USA, including Plaintiff, from Defendants, **Mr. Craig**.

209. Plaintiff was taken by **Mr. Craig** to an area of the Adelphoi facility without cameras.

210. Plaintiff was forced by **Mr. Craig** to place his mouth on **Mr. Craig's** penis and perform oral sex on multiple occasions.

211. Plaintiff was in extreme pain when **Mr. Craig** forcibly inserted his penis into Plaintiff's anus, causing, Plaintiff's rectum to bleed.

212. After each sexual assault, **Mr. Craig** would give Plaintiff cigarettes and tell Plaintiff to "man up and stop being a pussy".

213. Plaintiff was raped and sexually assaulted during the night shift by **Mr. Craig** numerous times.

214. Plaintiff was abused on more than 10 occasions in a similar manner.

215. At all times material hereto, as a result of the abuse of Plaintiff by **Mr. Craig**, Plaintiff felt enormous shame, humiliation, embarrassment, and self-loathing, and was extremely confused and conflicted about the role of love and intimacy in her life.

216. At all times material hereto, as a result of the abuse of Plaintiff by **Mr. Craig**, Plaintiff has suffered from extreme difficultly navigating intimate relationships, and he has experienced and continues to experience bouts of anger, difficulties when involved in relationships and attempting to be intimate in the context of these relationships, and/or drug and alcohol abuse.

217. As a result of the abuse set forth above, Plaintiff suffered great, permanent harm, including but not limited to, the following: severe emotional distress, extreme trauma, depression, anxiety, post-traumatic

stress disorder (PTSD) symptoms, humiliation, embarrassment, fear, shame, emotional dissociation, and/or loss of self-esteem and self-worth, all of which has and/or will continue to require counseling, therapy, and/or other treatment.

218.  Also, as a result of the abuse set forth above and its consequential trauma and harm, Plaintiff has suffered a severe impairment and disruption of his enjoyment of life, identity, intimacy with loved ones, and/or belief structure, including, but not limited to, the impairment and disruption of his relationship with members of his family, friends, acquaintances, and/or others.

219.  Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff suffered from destructive and dysfunctional behaviors, including, but not limited to, addictions (i.e. alcohol and/or drugs) and/or other mental health issues, all of which have required and/or will require counseling, therapy, and/or other treatment.

220.  Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff has incurred significant past loss of wages and future loss of earning capacity to his permanent detriment.

221.  Plaintiff's youth and placement at Adelphoi, together with the power imbalance and authoritative inequity between the Plaintiff and Defendants, created a culture and social dynamic that weakened Plaintiff's ability to resist **Mr. Craig** and/or to report the misconduct of **Mr. Craig** and/or other staff members, especially given the status with which and pedestal upon which Defendant, Adelphoi USA, assumed and held as treatment center for children and persons with disabilities, in particular the purported authority that comes when an institution provides mental health services to a vulnerable population.

222.  The abuse set forth above and its consequential trauma and harm, in turn, caused Plaintiff to suppress and/or emotionally dissociate his feelings about his traumatic experience(s), thereby exacerbating its devastating psychological, physical, and social consequences.

223.  Plaintiff was not fully aware of the causal relationship between the abuse set forth above, and its consequential trauma and harm, until recently, and continues to endure and/or discover trauma and harm relative to the abuse at the present time, and which inflictions of trauma and harm shall and will continue in the future.

224. Other victims' declarations and/or revelations of their experiences with abuse and corresponding damages caused by such abuse prompted Plaintiff to realize he is not alone, and to acknowledge, address, and/or discover the connection between his abuse and his corresponding emotional distress, social dysfunction and/or other damages and to speak out concerning same.

**H.  Facts as to Miguel Martell**

225. While housed at Adelphoi USA Plaintiff was subjected to sexual abuse.

226. Plaintiff resided at Adelphoi USA from approximately 2017-2019 when he was approximately 13-15 years old.

227. Plaintiff resided at Adelphoi USA pursuant to a court-order issued by a judge in the Dauphin County Court of Common Pleas.

228. During his/their tenure as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent hired, certified, assigned, retained, supervised, managed, overseen, directed, administrated, and/or otherwise controlled by and for one or more of the Defendant, Adelphoi USA, **Dave and Frank Chapel** was an abuser of children, including Plaintiff.

229. **Dave and Frank Chapel**, committed acts of abuse against Plaintiff, in an Adelphoi facility in Pennsylvania.

230. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **Dave and Frank Chapel**, sexually and/or physically, and/or emotionally abused children and/or was/were not fit to serve as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent.

231. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **Dave and Frank Chapel** had been and/or were abusing Plaintiff and/or other children at Adelphoi, Pennsylvania, and other locations visited by and/or related to Adelphoi activities, events, and/or duties.

232. At all material times hereto, Defendant, Adelphoi USA, took no action and/or failed to timely and adequately take action to warn or otherwise protect children of the Adelphoi USA, including Plaintiff, from Defendants, **Dave and Frank Chapel**.

233. Plaintiff was assigned multiple one on one counselors including both **Dave and Frank Chapel**.

234. Both **Dave and Frank Chapel**, while playing sports would constantly slap Plaintiff's buttocks.

235. Staff members, **Dave and Frank Chapel**, reacted on multiple occasions to Plaintiff complaining about having his buttocks touched, by each staff member grabbing Plaintiff's penis and testicles.

236. At all times material hereto, as a result of the abuse of Plaintiff by **Dave and Frank Chapel**, Plaintiff felt enormous shame, humiliation, embarrassment, and self-loathing, and was extremely confused and conflicted about the role of love and intimacy in her life.

237. At all times material hereto, as a result of the abuse of Plaintiff by **Dave and Frank Chapel**, Plaintiff has suffered from extreme difficultly navigating intimate relationships, and he has experienced and continues to experience bouts of anger, difficulties when involved in relationships and attempting to be intimate in the context of these relationships, and/or drug and alcohol abuse.

238.  As a result of the abuse set forth above, Plaintiff suffered great, permanent harm, including but not limited to, the following: severe emotional distress, extreme trauma, depression, anxiety, post-traumatic stress disorder (PTSD) symptoms, humiliation, embarrassment, fear, shame, emotional dissociation, and/or loss of self-esteem and self-worth, all of which has and/or will continue to require counseling, therapy, and/or other treatment.

239.  Also, as a result of the abuse set forth above and its consequential trauma and harm, Plaintiff has suffered a severe impairment and disruption of his enjoyment of life, identity, intimacy with loved ones,

and/or belief structure, including, but not limited to, the impairment and disruption of his relationship with members of his family, friends, acquaintances, and/or others.

240.  Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff suffered from destructive and dysfunctional behaviors, including, but not limited to, addictions (i.e. alcohol and/or drugs) and/or other mental health issues, all of which have required and/or will require counseling, therapy, and/or other treatment.

241.  Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff has incurred significant past loss of wages and future loss of earning capacity to his permanent detriment.

242.  Plaintiff's youth and placement at Adelphoi, together with the power imbalance and authoritative inequity between the Plaintiff and Defendants, created a culture and social dynamic that weakened Plaintiff's ability to resist **Dave and Frank Chapel** and/or to report the misconduct of **Dave and Frank Chapel** and/or other staff members, especially given the status with which and pedestal upon which Defendant, Adelphoi USA, assumed and held as treatment center for children and persons with disabilities, in particular the purported authority that comes when an institution provides mental health services to a vulnerable population.

243.  The abuse set forth above and its consequential trauma and harm, in turn, caused Plaintiff to suppress and/or emotionally dissociate his feelings about his traumatic experience(s), thereby exacerbating its devastating psychological, physical, and social consequences.

244.  Plaintiff was not fully aware of the causal relationship between the abuse set forth above, and its consequential trauma and harm, until recently, and continues to endure and/or discover trauma and harm relative to the abuse at the present time, and which inflictions of trauma and harm shall and will continue in the future.

245. Other victims' declarations and/or revelations of their experiences with abuse and corresponding damages caused by such abuse prompted Plaintiff to realize he is not alone, and to acknowledge,

address, and/or discover the connection between his abuse and his corresponding emotional distress, social dysfunction and/or other damages and to speak out concerning same.

**I. <u>Facts as to Copeland Tyler</u>**

246. While housed at Adelphoi USA Plaintiff was subjected to sexual abuse.

247. Plaintiff resided at Adelphoi USA from approximately 2010-211 when he was a juvenile and approximately 14-15 years old.

248. Plaintiff resided at Adelphoi USA pursuant to a court-order issued by a judge in the Allegheny County Court of Common Pleas.

249. During his/their tenure as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent hired, certified, assigned, retained, supervised, managed, overseen, directed, administrated, and/or otherwise controlled by and for one or more of the Defendant, Adelphoi USA, **<u>Justin, J.D. and Steve</u>** was an abuser of children, including Plaintiff.

250. **<u>Justin, J.D. and Steve</u>**, committed acts of abuse against Plaintiff, in a Adelphoi facility in Pennsylvania.

251. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **<u>Justin, J.D. and Steve</u>**, sexually and/or physically, and/or emotionally abused children and/or was/were not fit to serve as a staff, counselor, teacher, employee, agent, servant, representative and/or ostensible/aided agent.

252. At all material times hereto, Defendant, Adelphoi USA, knew or should have known that **<u>Justin, J.D. and Steve</u>** had been and/or were abusing Plaintiff and/or other children at Adelphoi, Pennsylvania, and other locations visited by and/or related to Adelphoi activities, events, and/or duties.

253. At all material times hereto, Defendant, Adelphoi USA, took no action and/or failed to timely and adequately take action to warn or otherwise protect children of the Adelphoi USA, including Plaintiff, from Defendants, **<u>Justin, J.D. and Steve</u>**.

254. Plaintiff was forced to engage in strip searches by staff members/employees **Justin, J.D. and Steve** who would make jokes, sexual innuendos, and would grope and fondle Plaintiff's buttocks.

255. Moreover, on numerous other occasions **Justin, J.D. and Steve** would slap, hit, and/or smack Plaintiff's buttocks while saying "good game' while Plaintiff was not engaged in any physical activity or sport.

256. Whenever Plaintiff objected to having his buttocks slapped he would be restrained, by **Justin, J.D. and Steve** and especially **Justin** who would strip search him and further grope his buttocks.

257. Plaintiff was abused on more than 3 occasions in a similar manner.

258. At all times material hereto, as a result of the abuse of Plaintiff by **Justin, J.D. and Steve**, Plaintiff felt enormous shame, humiliation, embarrassment, and self-loathing, and was extremely confused and conflicted about the role of love and intimacy in her life.

259. At all times material hereto, as a result of the abuse of Plaintiff by **Justin, J.D. and Steve**, Plaintiff has suffered from extreme difficultly navigating intimate relationships, and he has experienced and continues to experience bouts of anger, difficulties when involved in relationships and attempting to be intimate in the context of these relationships, and/or drug and alcohol abuse.

260. As a result of the abuse set forth above, Plaintiff suffered great, permanent harm, including but not limited to, the following: severe emotional distress, extreme trauma, depression, anxiety, post-traumatic stress disorder (PTSD) symptoms, humiliation, embarrassment, fear, shame, emotional dissociation, and/or loss of self-esteem and self-worth, all of which has and/or will continue to require counseling, therapy, and/or other treatment.

261. Also, as a result of the abuse set forth above and its consequential trauma and harm, Plaintiff has suffered a severe impairment and disruption of his enjoyment of life, identity, intimacy with loved ones, and/or belief structure, including, but not limited to, the impairment and disruption of his relationship with members of his family, friends, acquaintances, and/or others.

262.  Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff suffered from destructive and dysfunctional behaviors, including, but not limited to, addictions (i.e. alcohol and/or drugs) and/or other mental health issues, all of which have required and/or will require counseling, therapy, and/or other treatment.

263.  Also, as a result of the abuse set forth above and its consequential trauma and harm, the Plaintiff has incurred significant past loss of wages and future loss of earning capacity to his permanent detriment.

264.  Plaintiff's youth and placement at Adelphoi, together with the power imbalance and authoritative inequity between the Plaintiff and Defendants, created a culture and social dynamic that weakened Plaintiff's ability to resist **Justin, J.D. and Steve** and/or to report the misconduct of **Justin, J.D. and Steve** and/or other staff members, especially given the status with which and pedestal upon which Defendant, Adelphoi USA, assumed and held as treatment center for children and persons with disabilities, in particular the purported authority that comes when an institution provides mental health services to a vulnerable population.

265.  The abuse set forth above and its consequential trauma and harm, in turn, caused Plaintiff to suppress and/or emotionally dissociate his feelings about his traumatic experience(s), thereby exacerbating its devastating psychological, physical, and social consequences.

266.  Plaintiff was not fully aware of the causal relationship between the abuse set forth above, and its consequential trauma and harm, until recently, and continues to endure and/or discover trauma and harm relative to the abuse at the present time, and which inflictions of trauma and harm shall and will continue in the future.

267.  Other victims' declarations and/or revelations of their experiences with abuse and corresponding damages caused by such abuse prompted Plaintiff to realize he is not alone, and to acknowledge, address, and/or discover the connection between his abuse and his corresponding emotional distress, social dysfunction and/or other damages and to speak out concerning same.

268.  Specifically, regarding all the aforementioned staff member(s) it is averred the physical contact made with the respective Plaintiff's genitals/intimate private areas was indecent contact for the purpose of arousing the aforementioned individual.

**J. <u>Defendants' Violations of the Constitutional Rights of Plaintiffs and the Class, Abuse of Trust, and Violations of the Standard of Care Pursuant to the States and Commonwealth's Respective Laws, Rules, Regulations, and Statutes</u>**

269.  Adelphoi is situated in a pastoral setting with historic buildings and has been marketed as a sought-after placement for juvenile detention, due to its campus, professed commitment to humane and evidence-based treatment, and successful athletic program.

270.  In reality, Adelphoi is not idyllic, nor does it provide the services and programs it has advertised. To the contrary, it has for decades failed to provide a safe and secure facility and has abetted and tolerated practices and customs of negligent, reckless, and unconstitutional force and other abuses of those committed for treatment and education.

271.  Under its veneer of civility, there is a Dickensian "culture of violence" and intimidation at Adelphoi that has severely impacted Plaintiffs and other children through systematic uses of force, threats of longer sentences for those who report the abuse, and detention beyond commitment dates for those students with injuries that would be noticed upon release from Adelphoi.

272.  Based on the prior news reports, the numerous lawsuits, internal complaints by Plaintiffs and other similarly situated, the Defendants knew or should have known about child abuse occurring at its facilities.

273.  Adelphoi's students also reported officials lying about the rampant child abuse and systematic attempts by Adelphoi and its staff to hide the abuse, going so far as intercepting letters and students getting "beat down" for reporting the abuse to law enforcement and third-party officials with the students often too afraid to report the abuse because they feared retaliation.

274.  The pattern of assaults and child abuse was at various times abetted and promoted by threats to students who were prepared to report the abuses, that they would have to go to a worse placement, have their criminal probation violation, their sentences extended, and/or having to do their time all over again.

## CLASS ACTION ALLEGATIONS

275.  Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action under Rules 23(a), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure.

276.  Plaintiffs bring their Injunctive Relief claim individually and as a class action pursuant to Fed. R. Civ. Pro. 23(a) and (b)(2).

277.  Plaintiffs will request the Court certify the following class:

**"All persons who are currently and/or have previously attended, resided, and/or were court ordered into placement, at any Adelphoi USA, juvenile facility, juvenile detention, juvenile placement, and/or holding facility, in any state, Commonwealth, or jurisdiction, and while at any or in connection with any of the Defendants' facility(ies) were subjected to either physical, mental, and/or sexual abuse by any of the named Defendants, and/or their staff members, volunteers, agents, servants, employees, or the like while juveniles, and/or either had their educational opportunities deprived, are having their educational opportunities deprived, and/or are at threat to have their educational opportunities deprived (the "Class")."**

278.  The definition of juvenile for purposes for this class, includes individuals who were held in custody at any of these Defendants' identified juvenile placement and/or residential care facilities, after their 18th birthday and until their 22nd birthday, and suffered abuse after their 18th birthday and before their 22nd birthday, and their respective statutes of limitations for filing an injury claim had not otherwise expired.

279.  The Class excludes all School employees and contractors.

280.  Typicality: Plaintiffs' claims are typical of the claims of each class member in that Plaintiffs, like all class members, were enrolled in an Adelphoi USA program and therefore subjected to the same policy and practice of negligent supervision and systematic abuse by staff. Plaintiffs and the class members were injured through Adelphoi USA's failure to protect them, and Plaintiffs are advancing the same legal theories on behalf of themselves and the Class.

281.  Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests and the interests of all other members of the Class are identical, and Plaintiffs are cognizant of their duty and responsibility to the Class. Accordingly, Plaintiffs can fairly and adequately represent the interests of the Class. Moreover, Plaintiffs' counsel are competent and experienced in litigating class actions, including litigation of this kind. Plaintiffs and counsel intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

282.  Plaintiffs reserve the right to amend or modify the Class definition or create a subclass(es) upon further investigation and following discovery.

283.  Commonality: There are numerous questions of law and fact common to the Class. Questions common to the class include:

a.  The extent of Defendant's knowledge of or deliberate indifference to the pattern of abuse and neglect of youth in their programs.

b.  Whether Adelphoi USA had a duty to implement and enforce more comprehensive rules, regulations, policies, and procedures regarding the staffing, training, supervision, and management of staff at their facilities.

c.  Whether Adelphoi USA's pattern of negligent staffing constituted a breach of their duty to supervise and care for children who were placed in their custody.

d.  Whether Defendant's polices, practices, and customs failed to satisfy their duty to report abuse as required under federal law for all persons engaged in a professional capacity working with children, such as teachers, social workers and physicians; such persons are required to report incidents of child abuse that occur while such person is engaged in a professional capacity in a federally "contracted" facility. 34 U.S.C. § 23041(a)(1).

e.  Whether Adelphoi USA's actions caused the Plaintiffs and class members to have been deprived of educational opportunities.

    f.   The scope of the injunctive relief and damages to which the Plaintiffs and members of the Class are entitled.

    g.   Whether Defendants violated 42 U.S.C. Section 1983;

    h.   Whether Defendants violated the Fourth, Eighth and Fourteenth Amendments to the United States Constitution;

    i.   Whether Defendants violated 23 Pa. C. S. § 6311, 49 Pa. C. S § 45.402, and all other related state and federal child abuse reporting laws;

    j.   Whether the Defendants violated the respective child abuse reporting statutes, and other related child abuse protection laws for each state where it operated;

    k.   Whether Defendants are liable for negligence;

    l.   Whether Defendants acted in a manner of reckless indifference;

    m.   Whether Defendants knew of the pattern of abuse at Adelphoi;

    n.   Whether Adelphoi is liable for negligent hiring, retention, and supervision; and

    o.   Whether there was a pervasive environment of abuse at Adelphoi that can be remedied by an injunction and/or declaratory relief.

284.  Equitable Relief: Class action is appropriate under Rule 23(b)(2) because Adelphoi USA has acted and refused to act on grounds generally applicable to the Class as a whole, such that final injunctive relief is appropriate with respect to the Class as a whole. Such injunctive relief includes, but is not limited to, the implementation of systemic changes to prevent such conduct in the future as mentioned above.

285.  This action, in part, seeks declaratory and injunctive relief, and a writ of mandamus to compel Defendants to meet their obligations under 23 Pa. C. S. § 6311 and 49 Pa. C. S § 45.402 ("Mandatory Reporting Obligations") on both a historical and going-forward basis, and require Adelphoi to provide sufficient evidence to the Court that they have and will do so, and to compel Defendants to make a complete disclosure of all records and information in their possession, custody or control during the time

period from January 1, 2000 to the present pertaining to the abuse of children and students at Adelphoi.

Plaintiffs request that the Court appoint a special master or undertake other appropriate measures to

ensure that sensitive information about the victims of Defendants' abuse remains confidential (unless

authorized by a victim/survivor) and, additionally, provide a mechanism for the victims of abuse to

review records pertaining to them to verify that they exist, are accurate and complete, and are available

to be reviewed by Pennsylvania government officials and law enforcement. As such, class certification

under Fed. R. Civ. P. 23(b)(2) is appropriate.

286.  All Class members were subject to a pattern or practice of similar abuse. Defendants acted on grounds

generally applicable to all Class members, making final equitable relief to the Class as a whole

appropriate.

287.  The members of the Class are so numerous that joinder of all members in one action is impracticable.

Hundreds, and possibly thousands of boys have attended Adelphoi and been subjected to the widespread

abuse occurring at Adelphoi. The Class members can be identified in the discovery process through

Defendants' records and the records of the jurisdictions that placed students at Adelphoi. Furthermore,

notice can be provided by the Court to all persons who have attended Adelphoi so that those who have

been abused will have the opportunity to report the abuse in a safe environment.

288.  Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all Class

members were harmed in a similar fashion by Defendants' wrongful and abusive conduct while

attending Adelphoi.

289.  Plaintiffs seek to hold Defendants accountable for the wrongs they have committed and to make the

Class whole. Plaintiffs are committed to fairly, adequately, and vigorously representing and protecting

the interests of the Class. Plaintiffs have retained the undersigned counsel who are qualified and

experienced in class action litigation of this kind. Neither Plaintiffs nor their counsel have any interests

that might cause them to refrain from vigorously pursuing the claims in this action. In addition, Defendants have no defenses unique to Plaintiffs.

290.  Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct described in this Complaint stems from common and uniform conduct and practices, resulting in common violations.

291.  It would be difficult for many of Class members to pursue individual relief due to the nature of the harm, distance from Pennsylvania and because they were court-reported to Adelphoi as adjudicated youths. In addition, many of the Class members come from low-income homes, lack resources, and consequently, are particularly vulnerable to Defendants' abuse, especially without means of redress via a class action.

292.  It would be virtually impossible for individual Class members to obtain effective relief, including, without limitation, effective injunctive and declaratory relief, from Defendants' actions absent certification of a class action.

293.  Individual litigation of multiple cases would be highly inefficient and a waste of judicial and party resources. Moreover, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent results.

294.  Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution.

295.  Plaintiffs are aware of no difficulties regarding the management of this litigation which would preclude its maintenance as a class action.

296.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum where Adelphoi resides and where the acts of abuse alleged herein took place.

## CAUSES OF ACTION

### Federal Claims Pursuant to the United States Constitution

### COUNT 1 – Violations of Title IX 20 U.S.C. § 1681 *et seq.* – Creation of Sexually Hostile Culture/Heightened Risk of Sexual Harassment

297.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

298.  Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ."

299.  Title IX is implemented through the U.S. Department of Education ("DOE") regulations, which apply to "every recipient and to the education program or activity operated by such recipient which receives Federal financial assistance," 34 C.F.R. § 106.11, and which cover sexual harassment—including sexual assault—by school employees, students, and third parties.

300.  Federal DOE regulations further provide that recipients of federal financial assistance shall investigate complaints of noncompliance with those regulations, 34 C.F.R. § 106.8(a), which include sexual assault, sexual abuse, and sexual harassment.

301.  The DOE regulations further require that recipients of federal financial assistance "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." 34 C.F.R. § 106.8(b).

302.  Plaintiffs are "persons" under Title IX.

303.  Adelphoi USA's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Adelphoi USA provides to its patients and residents, placing Adelphoi USA squarely in the purview of Title IX.

304.  Defendant receives federal financial assistance for its education programs and is therefore subject to the provisions of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*, and its implementing regulations at 34 C.F.R. §§ 106.1 *et seq.*

305.  Under Title IX, Adelphoi USA was required to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

306.  Plaintiffs were subject to sexual harassment, abuse and assault by Adelphoi USA staff members while students, patients, and/or residents at Defendant's facilities and programs as described above, including: experiencing unwelcome conduct of a sexual nature (such as unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature); sexual contact with a minor; and repeated sexual grooming behaviors.

307.  The sexual harassment, abuse, and assault experienced by Plaintiffs at Adelphoi USA constitutes sex discrimination under Title IX. As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX[4].

308.  Adelphoi USA was on notice of the conduct as described above, but nonetheless failed to carry out its duties to investigate and take corrective action under Title IX, including through complaints by Plaintiffs directly to Adelphoi USA staff that they were being abused and assaulted.

---

[4] https://www2.ed.gov/about/offices/list/ocr/docs/sexhar00.html

309.  Adelphoi USA is, and has been, deliberately indifferent to the substantial risk of sexual abuse, assault, and molestation posed to all youth who enter their programs and treatment centers. After receiving numerous complaints regarding the sexual abuse of residents, being subjected to dozens of news articles highlighting such abuse, and undergoing a number of prior lawsuits regarding sexual abuse of Adelphoi USA youth, Defendant ignored the sexual abuse occurring under its watch and allowed it to continue.

310.  Adelphoi USA is responsible for setting and approving all national, organization-wide policies and protocols for Adelphoi USA programs and operations, including sex discrimination policies.

311.  Adelphoi USA failed to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in their programs.

312.  By failing to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

313.  The sexual harassment, abuse, and assault experienced by Plaintiffs at Adelphoi USA was so severe, pervasive and objectively offensive that it effectively barred access to an equal opportunity to education for Plaintiffs.

314.  As a direct and proximate result of Defendant's actions and/or inactions, Plaintiffs were damaged.

315.  Adelphoi USA was deliberately indifferent to a sexually hostile culture with a heightened risk of sexual harassment within its programs and facilities by, among other things:

    a.  Failing to address children and families' reports of sexual abuse and/or discouraging youth from reporting such abuse;

    b.  Failing to promptly and adequately investigate, remedy, and respond to complaints about sexual abuse at Adelphoi USA;

    c.  Allowing staff members with known complaints of prior sexual harassment of youth to have further access to Adelphoi USA residents and patients;

    d.  Failing to adequately supervise staff members, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred; and

    e.  Failing to maintain appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected.

316.  Adelphoi USA's creation of and deliberate indifference to a sexually hostile culture increased the risk that Plaintiffs would be sexually harassed. By failing to set appropriate sex discrimination policies, this risk of sexual harassment was increased even further.

317.  Because Adelphoi USA failed to take corrective measures to curb the pattern and practice of sexual abuse towards its patients at Adelphoi USA, instead allowing this conduct to prevail, Plaintiffs suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiffs' damages were the direct and proximate result of Defendant's actions and/or inactions.

318.  In subjecting Plaintiffs to this wrongful treatment as described, and through its violations of Title IX, Adelphoi USA acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant, in a sum to be shown according to proof.

319.  Furthermore, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

**WHEREFORE,** Plaintiffs, demand judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

**COUNT 2 – Violations of Title IX 20 U.S.C. § 1681(A) *et seq.* – Deliberate Indifference to Prior Sexual Harassment**

320.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

321.  Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

322.  Title IX is implemented through the Code of Federal Regulations. C.F.R. § 106.8(b) provides: ". . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

323.  Adelphoi USA's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Adelphoi USA provides to its patients and residents, placing Adelphoi USA squarely in the purview of Title IX.

324.  Adelphoi USA regularly receives financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq*.

325.  As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.

326.  Sexual harassment is unwelcome conduct of a sexual nature, including unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

327.  Title IX covers all programs of a school that receives any federal financial assistance, and covers sexual harassment—including sexual assault—by school employees, students, and third parties.

328.  Title IX requires Defendant to promptly investigate all allegations of sexual harassment, including sexual assault and abuse.

329.  Before Plaintiffs were abused while at Adelphoi USA, Adelphoi USA had actual knowledge of prior sexual abuse, harassment, and assault of youth in their facilities, dating back for decades.

330.  Based on these prior repeated incidents of sexual abuse and assault, Defendant had actual knowledge of the substantial risk that Plaintiffs would be sexually harassed, abused, or assaulted at Adelphoi USA.

    a.  Addressing children and families' prior reports of sexual abuse and encouraging youth to openly report sexual advances by staff members;

    b.  Thoroughly investigating and terminating the employment of staff members with known complaints of prior sexual abuse and harassment of youth;

    c.  Increasing the quality of staff supervision, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred;

    d.  Maintaining appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected; and

    e.  Improving Adelphoi USA's physical facilities to increase visibility such that no concealed areas remained where abuse could occur undetected.

331.  With this knowledge, Adelphoi USA had the authority to address the pervasive risk of sexual abuse in its programs, and had the authority to take corrective measures, including by:

332.  Adelphoi USA's failure to address the substantial risk of sexual abuse in its programs and facilities, given prior complaints and reports about past abuse, and its failure to set appropriate sex discrimination policy, was clearly unreasonable in light of the known circumstances.

333.  By its acts and omissions, Adelphoi USA was deliberately indifferent to the substantial risk that Plaintiffs would be sexually harassed, abused, and/or assaulted while at Adelphoi USA.

334.  As a result of Defendant's deliberate indifference to this pervasive culture of sexual harassment, Plaintiffs were subjected to severe sexual abuse as children in Adelphoi USA's programs.

335.  Because Adelphoi USA did not take corrective measures to curb the pattern and practice of sexual abuse towards children at Adelphoi USA, instead allowing this conduct to prevail, Plaintiffs suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiffs' damages were the direct and proximate result of Defendant's actions and/or inactions.

336.  The sexual harassment suffered by Plaintiffs was so severe, pervasive, and objective offensive that it effectively barred their access to education opportunities and benefits, including a safe educational environment, full access to their treatment program, and appropriate medical care while at Adelphoi USA.

337.  In subjecting Plaintiffs to this wrongful treatment as described, and through its violations of Title IX, Adelphoi USA in its efforts to avoid bad publicity and maintain its public image acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant, in a sum to be shown according to proof.

338.  Furthermore, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

**WHEREFORE,** Plaintiffs, demand judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 3 – Violations of Title 42 (42 U.S.C. § 1983 *et seq.*) –Civil Rights Deprivation

339.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

340.  While obtaining an education and otherwise residing at the Defendant's facility Plaintiffs had a right to have their civil rights protected and safeguarded.

341.  The Fourth, Eighth, and Fourteenth Amendments to the United States Constitution protect Plaintiffs and the Class from physical and sexual abuse and unreasonable uses of force from Defendants. These Amendments also require Defendants to establish policies and practices to protect Plaintiffs and the Class from known harms and known patterns of constitutional deprivations.

342.  Adelphoi acts as an arm of the states and Commonwealth, where it operates, providing a core public function, and is a state governmental actor for 42 U.S.C. § 1983 liability purposes.

343.  Adelphoi failed, with deliberate indifference, to provide a safe custodial setting for Plaintiffs and the Class, by failing to properly train, supervise, and discipline the staff at Adelphoi, including all John Does. As a proximate result of Adelphoi's policies, practices, and customs, the Defendants, and the John Doe Defendants subjected and/or allowed to be subjected, Plaintiffs and the Class to physical and/or sexual abuse.

**WHEREFORE,** Plaintiffs, demand judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### Pennsylvania State Law Claims

### COUNT 4 – Negligence

344.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

345.  Defendant had a duty to act reasonably and to maintain a safe environment for Plaintiffs and the Class while within the Defendant's care.

346.  Adelphoi USA acted with a lack of care towards Plaintiffs through its acts and omissions, including: allowing and authorizing a culture of abuse at Adelphoi USA facilities; failing to train and educate staff regarding the identification and reporting of abuse; failing to properly supervise youth attending Adelphoi USA programs; failing to adequately train staff regarding best practices when working with youth with intellectual and developmental disabilities and youth with advanced mental health needs; failing to adequately supervise staff members to proactively identify and curtail signs of abuse; failing to maintain Adelphoi USA facilities so as to eliminate "blind spots" where abuse could easily occur without detection; failing to instruct supervisors regarding circumstances indicating a high risk of abuse; failing to monitor Plaintiffs' wellbeing while in Adelphoi USA programming so as to detect incidents of abuse; failing to take adequate and appropriate measures after learning about repeated known incidents of physical, sexual and emotional abuse within Adelphoi USA programs; and failing to prevent serious and lasting psychological, physical, and emotional harm to youth in Adelphoi USA programs.

347.  Moreover, Adelphoi USA's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

348.  These actions deprived Plaintiffs of educational opportunities.

349.  By failing to exercise ordinary care through their acts and omissions, Adelphoi USA caused harm to Plaintiffs.

350.  Because of Defendant's breach of their duty of care, Defendant foreseeably caused physical and emotional harm to Plaintiffs.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 5 – Negligent Hiring

351.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

352.  Adelphoi USA is required to make an appropriate investigation of all employees staffed at their facilities. This duty requires that potential applicants are thoroughly and appropriately screened to ensure that they will provide safe care for the vulnerable children in Defendant's programs.

353.  Adelphoi USA knew or should have known that the employment of the staff members who abused Plaintiffs posed a risk or hazard to the youth in their treatment programs. With a thorough background check and investigation of applicants' prior work history, personal and professional references, and potential "red flags", Adelphoi USA would have known that these employees were not suitable for the particular duty of caring for children.

354.  It was unreasonable for Adelphoi USA to hire employees whom Adelphoi USA should have known, based on reasonable pre-hiring screening, were unsuitable to work in a behavioral health center for children and adolescents with cognitive differences and advanced mental health needs.

355.  As detailed above, Plaintiffs were harmed by various Adelphoi USA staff members. These harms include: physical abuse, sexual assault, and withholding meals.

356.  Because of Adelphoi USA's negligent hiring practices, Plaintiffs were proximately harmed by these employees. Had Adelphoi USA shown due care in the screening of its employees, Adelphoi USA staff members would not have been given the access and opportunity to physically, sexually, and emotionally abuse Plaintiffs.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 6 – Negligent Retention

357.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

358.  Adelphoi USA became aware or reasonably should have become aware that its employees were engaged in acts of physical, sexual, and/or emotional abuse of Adelphoi USA patients and residents, and yet failed to investigate, discharge, or reassign these employees.

359.  Adelphoi USA reasonably should have known that its staff physically and sexually abused Plaintiffs while in their care. With reasonable supervision, protocols, and checkpoints in place, Adelphoi USA should have been aware of these egregious acts. Despite the fact that Adelphoi USA reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

360.  Adelphoi USA reasonably should have known that Adelphoi USA staff verbally and physically abused Plaintiffs. Plaintiffs even reported this abuse to Adelphoi USA, putting them on actual notice of their employee's bad acts. Adelphoi USA also should have known staffers routinely watched and groomed Plaintiffs for sexual abuse. With reasonable supervision and protocols in place, Adelphoi USA should have known about each of these incidents. Despite the fact that Adelphoi USA reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

361.  Adelphoi USA reasonably should have known that Adelphoi USA staff abused Plaintiffs via withholding food from them as punishment. Had Adelphoi USA adequately supervised its employees, Adelphoi USA reasonably would have known about these incidents. Despite the fact that Adelphoi USA reasonably should have known about this abuse, it allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

362.  Adelphoi USA reasonably should have known that Adelphoi USA staff members named herein this Complaint sexually abused Plaintiffs on the Defendant's property. Had Adelphoi USA adequately and appropriately supervised and exercised control over its staff, they would have been aware of the abuse that occurred to Plaintiffs. Despite the fact that Adelphoi USA reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

363.  Adelphoi USA reasonably should have known that multiple male Adelphoi USA staffers were physically abusing Plaintiffs. Had Adelphoi USA adequately and appropriately supervised and exercised control over its staff, Adelphoi USA would have been aware of the abuse that occurred to Plaintiffs. Despite the fact that Defendant reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

364.  Adelphoi USA reasonably should have known, and did in fact know, Plaintiffs were abused by Adelphoi USA staff members when multiple Plaintiffs showed physical signs of abuse, including marks on their bodies and an extremely swollen arms, legs, and wrists. Despite Adelphoi USA's knowledge via repeated reports about staff members named herein this Complaint and others employed by them yet did not independently investigate, transfer, or fire this employee, instead allowing the abuse of Plaintiffs to happen time and time again.

365.  Defendant reasonably should have known of the abuse of each Plaintiff, yet negligently retained the employees responsible for the abuse. Because of Defendant's breach of their duty to take action to prevent reasonably foreseeable harm by their employees under these circumstances, each Plaintiff was grievously harmed.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment

interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

<b><u>COUNT 7 – Negligent Supervision</u></b>

366.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

367.  Defendant, Adelphoi, knew or should have known of the need to properly and effectively observe, manage, direct, oversee, and/or supervise staff, teachers, counselors, employees, agents, servants, representatives, and/or ostensible agents in their relationships with young children.

368.  Defendant, Adelphoi, knew or should have known of the particular risk posed by the staff members named within the Complaint and others based on, among other things, their inappropriate and/or questionable conduct, their history of sexually, physically, and/or emotionally abusing children, and/or their behavior indicative of an intent to isolate, groom, and/or facilitate sexually contacting and/or abusing a young minor child, including the abuse by the staff members named within the Complaint and others and/or other staff members of Plaintiffs.

369.  The staff members named within the Complaint and others and/or other staff members' sexual abuse of Plaintiff gradually increased in frequency and intensity over time.

370.  The negligence, carelessness, and/or recklessness of Defendant, Adelphoi, for the conduct of their actual or apparent staff, teacher, counselors, employees, agents, servants, representatives, and/or ostensible agents, in the hiring, certifying, assigning, observation, retaining, supervision, management, oversight, direction, administration, and/or otherwise control of the staff members named within the Complaint and/or other staff members consists of one or more of the following:

371.  Negligent hiring, certifying, assigning, observation, retaining, supervision, management, oversight, direction, administration, and/or otherwise control of staff and/or teachers and/or counselors in the employ of Adelphoi and/or Defendant;

372.  Failing to use due care in hiring, certifying, assigning, observation, retaining, supervision, management, oversight, direction, administration, and/or otherwise control of the staff members named within the Complaint and/or other staff members and the relationship of the staff members named within the Complaint and others and/or other staff members with Plaintiffs; and

373.  Failing to investigate and supervise the staff members named within the Complaint and/or other staff members and their relationship with Plaintiffs.

**WHEREFORE,** Plaintiffs, demand judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

<u>**COUNT 8 – Gross Negligence**</u>

374.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

375.  Adelphoi USA owed Plaintiffs a duty to provide a safe environment with adequate protection, supervision, and care while in their custody.

376.  Adelphoi USA acted with a lack of care towards Plaintiffs by demonstrating a conscious disregard or indifference towards their safety and wellbeing and significantly departing from how a reasonably careful person would act under the circumstances.

377.  At all relevant times, Adelphoi USA owed a duty to Plaintiffs to implement practices and policies to:

a.  Prevent sexual, emotional, and physical abuse of youth by Adelphoi USA staff;

b.  Prohibit and prevent romantic or sexual relationships between youth and Adelphoi USA staff;

c.  Prohibit grooming and other sexually exploitative behavior by Adelphoi USA staff;

d.  Require the prompt reporting of any allegations or suspicions of sexual, physical or emotional abuse of youth in Adelphoi USA programs by staff or by peers;

56

    e.   Require the independent investigation of all reports of sexual, physical, or emotional abuse of youth in Adelphoi USA programs;

    f.   Mandate the training of all staff who work directly with youth in Adelphoi USA programs regarding sexual abuse, sexual relationships with residents, grooming, sexual reactivity, the prohibition thereof, and reporting obligations;

    g.   Protect Plaintiffs and from such abuse and foreseeable risks; and

    h.   Provide a safe environment for children with disabilities and mental health needs free from sexual abuse, harassment, and physical harm.

378.  Defendant's duty arose from taking responsibility for the care and custody of youth attending their programs.

379.  Adelphoi USA acted recklessly and indifferently as the entity responsible for the care and custody of children with disabilities and advanced mental health needs who sought out Adelphoi USA for treatment, growth, and education, including Plaintiffs.

380.  Adelphoi USA knew or should have known that by failing to take appropriate measures with respect to the lack of appropriate training, supervision, and oversight of its facilities and employees who work closely with children and young adults suffering with advanced mental health needs, intellectual and developmental disabilities, and low IQs, Adelphoi USA created an unreasonable risk of harm to Plaintiffs so great that it was highly probably that the harm would result.

381.  As one of the nation's largest behavioral healthcare organizations, Adelphoi USA is or should be acutely aware of the delicate nature of working with these youth and the likelihood of abuse and harm resulting from the failure to closely monitor, train, and supervise their staff. Adelphoi USA thus owed its resident youth a duty to protect them from the foreseeable risk of staff who take advantage of this power differential for improper purposes.

382.  The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with disabilities are easily targeted because they are more likely to be perceived as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments. Especially in a group home or residential treatment setting, abuse can more easily be hidden and children McGruther have limited access to police, advocates, or social services representatives who can intervene.134

383.  By recklessly failing to keep these children safe while in its care and custody, Adelphoi USA exhibited a willful disregard for necessary precautions to reasonably protect Plaintiffs.

384.  As a direct and proximate result of Defendant's reckless indifference to Plaintiffs, Plaintiffs have suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, physical manifestations of this distress, loss of self-esteem, anxiety, fright, grief, humiliation and loss of enjoyment of life. Plaintiffs were prevented and will continue to be prevented from performing their activities of daily living due to the gross negligence of Adelphoi USA.

**WHEREFORE,** Plaintiffs, demand judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

<u>**COUNT 9 – Negligent Misrepresentations and Omissions**</u>

385.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

386.  In the course of their business, Defendant presents itself as maintaining a gold standard in the field of behavioral health treatment for troubled youth. Adelphoi USA's website describes its "core values" of compassion, knowledge, collaboration, dedication, learning and progress. Adelphoi USA details its commitment to serving the community, and its use of a philosophy of care which "integrates the latest

scientific and medical advancements with time-tested philosophies and compassionate family engagement to provide practical, effective and efficient care, making a meaningful difference in the lives of those we serve, and the world around them."

387.  Defendant's website also describes its "commitment to safety and security," detailing the organization's recent formalization of its safety and security protocols through an evolved culture of Servant Leadership and a dedicated commitment to operational, clinical and risk management best practices. Through its advertising, Adelphoi USA represented to Plaintiffs and their families that adequate practices and protocols were in place at their facilities to ensure the safety of children placed in their care to receive treatment. What Adelphoi USA failed to mention in their advertising, however, is the repeated pattern of sexual abuse and exploitation of young people who enter their programs.

388.  Adelphoi USA's website and advertising misrepresents material facts regarding the quality of its programs, as Adelphoi USA fails to demonstrate an actual commitment to safety or security for its patients, students and residents. Thus, Defendant's representations were not true, as Adelphoi USA negligently supervised and managed their facilities in such a way that children routinely suffered sexual, physical, and emotional abuse while under their watch.

389.  Plaintiffs and their family members relied on Defendant's representations about the quality of their programs in choosing to enroll in treatment at Adelphoi USA.

390.  Adelphoi USA knew or should have known that the representations about the quality of their programs – especially the safety and security of their patients, students and residents – would be relied upon by those individuals and their families.

391.  Plaintiffs were harmed because of Adelphoi USA's negligent misrepresentations about the safety and security of their programs. Plaintiff parents and guardians reasonably relied on Adelphoi USA's representations of safety and security, and were thereby harmed when they unknowingly placed their children in Adelphoi USA's custody.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 10 – Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq.*

392.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

393.  The UTPCPL prohibits acts of unfair competition and "unfair or deceptive acts or practices."

394.  Adelphoi USA is a "person" as defined by 73 P.S. § 201-2 and has engaged in "trade" or "commerce" as defined by 73 P.S. § 201-2.

395.  Plaintiffs are "person[s]" as defined by 73 P.S. § 201-2 who, through their parents and/or guardians, purchased behavioral health treatment services from Adelphoi USA.

396.  Adelphoi USA's acts and practices were intended to and did result in the continued sale of services to Plaintiffs, and those acts and practices violated the UTPCPL, 73 P.S. § 201-2, including by:

    a.  Representing that their services had characteristics or benefits that they did not have;

    b.  Representing that their services were of a particular standard, quality or grade, when they were not;

    c.  Advertising services with intent not to sell them as advertised; and

    d.  Engaging in any other fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding.

397.  Adelphoi USA's acts and practices violated the UTPCPL because Adelphoi USA failed to disclose information that was material to Plaintiffs' transactions with them:

    a.  When advertising its services as a behavioral health provider, Adelphoi USA knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable and appropriate safeguards, systems and processes in place to safely provide care and treatment free from abuse for Plaintiffs.

    b.  Adelphoi USA knowingly and intentionally failed to disclose and actively concealed that youth in Adelphoi USA programs had for decades been victims of sexual, physical, and emotional abuse by Adelphoi USA staff, and that Adelphoi USA did not take appropriate actions in response to this known abuse.

398.  Adelphoi USA had ample means and opportunities to alert Plaintiff sat the outset to the fact that it was not employing appropriate processes, protocols, and safeguards to reasonably protect the youth in its programs and facilities. Adelphoi USA later had means and opportunities to alter Plaintiffs and their family that Plaintiffs had suffered abuse while being treated in one of Defendant's behavioral health centers, yet failed to do so.

399.  Plaintiffs and their families justifiably and reasonably relied on the assurances, promises, and representations Adelphoi USA made regarding the safety, security of their treatment centers. Had Adelphoi USA made the above disclosures, revealing to Plaintiffs and their families that in reality, Adelphoi USA's patient were prone to frequent sexual, physical, and emotional abuse by staff, and that Adelphoi USA did not have adequate procedures and policies in place to adequately protect and care for vulnerable children, Plaintiffs would not have been sent to Adelphoi USA for their treatment.

400.  Adelphoi USA had the duty to accurately disclose the nature, safety, and quality of its behavioral health centers because it made partial representations about the safety and quality of its facilities. Adelphoi USA volunteered this specific information to Plaintiffs through advertising, on its website, and in documents that its behavioral health treatment centers provided high quality services, including representations that Adelphoi USA places a great emphasis on the safety and security of its programs.

Adelphoi USA had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiffs, yet actively concealed this information from Plaintiffs and their families.

401.  As a direct and proximate result of Defendant's deceptive acts and practices in violation of the UTPCPL, Plaintiffs have suffered actual damages caused by the sexual and/or physical abuse they endured while at Adelphoi USA. Adelphoi USA's misleading statements and omissions were a substantial factor in causing Plaintiffs' harms.

402.  Plaintiffs are accordingly entitled to actual damages, equitable relief, reasonably attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Adelphoi USA from its unlawful, fraudulent and deceitful activities.

**WHEREFORE,** Plaintiffs, demand judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 11 – Vicarious Liability

403.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

404.  When each Plaintiff was sexually, physically, and/or emotionally abused by Adelphoi USA staff members, these staff members were acting within their scope of employment in supervising and providing treatment to Adelphoi USA patients.

405.  Adelphoi USA is vicariously liable under the doctrine of *respondeat superior* for the tortious conduct committed by their staff members during their staff's treatment of children at Adelphoi USA.

406.  Adelphoi USA staff members' sexual, physical, and/or emotional abuse of Plaintiffs constitutes an assault or battery, as detailed further below.

407.  Adelphoi USA ratified their staff members' abusive conduct towards Plaintiffs by failing to discipline, take corrective action, and/or report the child abuse. For decades, Adelphoi USA has sanctioned this culture of abusive behavior by their staff, as described above.

408.  These tortious acts were also foreseeable, as Adelphoi USA was aware of repeated incidents of sexual, physical, and emotional abuse of Adelphoi USA patients within their facilities. Adelphoi USA knew that their patients, including Plaintiffs, were particularly susceptible to abuse as youth with disabilities and critical mental health needs. Adelphoi USA knew, or reasonably should have known, that by failing to implement appropriate procedures, policies, and safeguards, it was highly foreseeable that their staff would continue to abuse vulnerable children in their treatment programs, including Plaintiffs.

409.  As a direct and proximate result of Adelphoi USA's employees' abuse towards Plaintiffs, Plaintiffs have suffered physical harms and have suffered and will continue to suffer emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## <u>COUNT 12 – Negligent Infliction of Emotional Distress</u>

410.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

411.  Pursuant to Pennsylvania law, Adelphoi USA's negligent acts and omissions constitute the negligent infliction of emotional distress, as: 1) Adelphoi USA acted negligently, as described above; 2) Adelphoi USA's negligence placed Plaintiffs in the zone of danger of physical impact or injury, as each plaintiff was physically abused by Adelphoi USA staff; and 3) Plaintiffs suffered emotional distress as a result of

Adelphoi USA's negligent conduct. Pa. SSJI (Civ) § 13.40, *et seq*. and other related and applicable laws and statutes.

412.  Moreover, Adelphoi USA's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

413.  Plaintiffs and the Class suffered physical injury as a result of Defendants' conduct.

**WHEREFORE,** Plaintiffs, demand judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 13 – Intentional Infliction of Emotional Distress

414.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

415.  Defendant's conduct is extreme and outrageous.

416.  Adelphoi USA's actions and inactions were outrageous and extreme, shocking, atrocious, and intolerable. Their conduct goes beyond the possible bounds of decency, and Adelphoi USA acted with the reckless disregard of the probability that Plaintiffs would suffer emotional distress as a result. Pa. SSJI (Civ) § 17.40 *et seq*. and other related and applicable laws and statutes.

417.  Adelphoi USA's conduct was a substantial factor in causing severe emotional and psychological distress to Plaintiffs. This distress was of such an intensity that no reasonable person should be expected to endure it.

418.  Moreover, Adelphoi USA's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

419.  By permitting a culture of systematic physical, emotional, and sexual abuse at Adelphoi facilities, Adelphoi USA caused Plaintiffs to suffer, among other things, appalling and deplorable acts of physical, sexual, and/or emotional abuse, and the resulting pain, suffering, humiliation, grief, shame, disgust, anxiety, nervousness, shock, distrust, and loss of enjoyment of life. Plaintiffs will continue to suffer from these enduring harms, and have incurred/will continue to incur lost earnings, lost earning capacity, and expenses for psychological treatments and counseling.

**WHEREFORE,** Plaintiffs, demand judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

**COUNT 14 – Breach of Fiduciary Duty**

420.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

421.  Adelphoi USA, as a service provider for youth with disabilities and advanced behavioral and mental health needs, owes a fiduciary duty to act in the best interests of the youth they serve. When a child is placed in an Adelphoi USA facility, Adelphoi USA assumes the fiduciary duty to ensure that the child receives appropriate care and is safe from foreseeable harms.

422.  By allowing and authorizing a culture of physical, emotional, and sexual abuse in its programs and facilities, repeatedly failing to report child abuse in its facility, allowing youth to be systematically abused while in Adelphoi USA programs, inadequately training and supervising Direct Support Professionals, failing to maintain safe premises for youth which eliminated "blind spots," and failing to monitor Plaintiffs' wellbeing so as to detect signs of abuse, among other failures, acts, and omissions as previously described, Adelphoi USA has breached their fiduciary duty towards Plaintiffs.

423.  Plaintiffs were thereby harmed by Defendant's breach of this fiduciary duty.

**WHEREFORE,** Plaintiffs, demand judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 15 – Injunctive and Equitable Relief

424.  Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

425.  Class members are currently at risk of irreparable harm due to Defendant's failure to enact and enforce appropriate and sufficient policies, procedures, and processes for the prevention of physical, emotional, and sexual abuse of youth enrolled in their programs and residing in their facilities. On behalf of the Class, Plaintiffs seek injunctive and equitable relief requiring Adelphoi USA to implement institution-wide policies and practices to prevent continued abuse within their programs.

426.  The risk of irreparable harm that Plaintiffs and Class Members face is higher than the general societal risk of these harms, and that increased risk is directly traceable to the actions and inactions of Adelphoi USA.

427.  These harms through which Adelphoi USA has placed Plaintiffs and Class Members at risk are irreparable. Child abuse, whether it be physical, emotional, or sexual abuse, and the trauma, pain, and suffering that it creates, cannot be undone. Youth, especially youth with disabilities and advanced mental health and behavioral needs, carry the trauma they endured as children with them for the rest of their lives. No monetary compensation can reverse this pain. Therefore, proactive injunctive relief is necessary to eliminate the increased risk posed by Defendant's actions and inactions in order to protect Plaintiffs and Class Members from irreparable harm.

428.  The common injury suffered by Plaintiffs and the Class – being placed at heightened risk of sexual, physical, emotional abuse, deprivation of educational opportunities, and assault by Adelphoi USA – will be redressed by the requested injunctive relief.

    a.  Protect students from physical, emotional, and sexual abuse while placed in Adelphoi USA programs and facilities;

    b.  Promptly and thoroughly report known and reasonably suspected of physical, emotional, and sexual abuse at Adelphoi USA;

    c.  Properly respond to this child abuse when it occurs; and

    d.  Supervise, monitor, and prevent Adelphoi USA staff from committing acts of abuse against child patients and residents.

429.  Adelphoi USA has a duty, triggered by federal and state law, to protect its patients and residents. This duty includes a responsibility to:

    a.  Protect students from physical, emotional, and sexual abuse while placed in Adelphoi USA programs and facilities;

    b.  Promptly and thoroughly report known and reasonably suspected of physical, emotional, and sexual abuse at Adelphoi USA;

    c.  Properly respond to this child abuse when it occurs; and

    d.  Supervise, monitor, and prevent Adelphoi USA staff from committing acts of abuse against child patients and residents.

430.  Adelphoi USA has breached its duty towards Plaintiffs and Class Members by failing to implement and enforce necessary and appropriate policies, procedures, and protocols to prevent and address incidents of child abuse in Adelphoi USA's programs and facilities.

431.  Accordingly, Plaintiffs, on behalf of themselves and the Class, request that the Court issue an Order requiring Adelphoi USA to implement and enforce best-practice policies and procedures for the prevention of, and response to, physical, emotional, and sexual abuse at Adelphoi USA.

432.  In crafting their specific injunctive relief demands, Plaintiffs intend to consult with experts to determine the best practices that should be implemented in order to prevent further child abuse at Adelphoi USA. By way of example, such policies and practices include:

   a.  rigorous hiring and screening protocols;

   b.   revised guidelines governing interactions between staff and youth;

   c.  robust sexual reactivity training for Direct Support Professionals (DSPs);

   d.  improved training for DSPs regarding de-escalation techniques;

   e.  increased supervision of DSPs, especially during the most vulnerable nighttime windows;

   f.  compliance with physical building requirements to increase visibility such that individuals cannot commit abuse in concealed areas; and

   g.  improved video monitoring infrastructure.

### PRAYER FOR RELIEF

433.  Plaintiffs alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein.

434.  Plaintiffs, individually and on behalf of the Class, respectfully request the Court to enter judgment on their behalf and on behalf of the Class as follows:

   a.  Certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, as requested above, appointing Plaintiffs as Class representatives, and appointing Plaintiffs' counsel as counsel for the Class;

   b.  Issuing appropriate notice to the Class at Defendants' expense;

   c.  Declaring that Defendants have violated their Mandatory Reporting Obligations;

    d.   Ordering Defendants to meet their obligations under 23 Pa.C.S.A. § 6311 and 49 Pa.C.S.A. § 45.402, and all other applicable child abuse reporting laws, for all states in which they operate, on both a historical and going-forward basis and supply sufficient evidence to the Court they have and will continue to do so;

    e.   Ordering Defendants to make a complete disclosure of all records and information in their possession, custody, or control during the time period from January 1, 2000, to the present pertaining to the abuse of students at Adelphoi. Plaintiffs request that the Court appoint a special master and/or take other appropriate measures to ensure sensitive information about the victims of Defendants' abuse remains confidential (unless authorized by a victim/survivor) and, additionally, provide a mechanism for the victims of abuse to review records pertaining to them to verify that they exist, are accurate, and complete, and are available to be reviewed by Pennsylvania and/or other government officials and law enforcement agents;

    f.   Ordering appropriate injunctive, declaratory, and other equitable relief;

    g.   Issuing a writ of mandamus commanding Defendants to report, as required by 23 Pa.C.S.A. § 6311, all child abuse presently known or suspected by them, and to submit proof of compliance with such order to the Court within 10 days of such order;

    h.   Awarding Plaintiffs and Class members compensatory, restitutionary, general, consequential, punitive, and exemplary damages in an amount to be determined at trial;

    i.   Awarding pre-judgment and post-judgment interest as permitted by law;

    j.   Awarding reasonable attorneys' fees and costs, including expert fees as provided for by law; and

    k.   Granting such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

435.  Plaintiffs alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

436.  Plaintiffs demand a jury on all claims triable as a matter of right.


Respectfully Submitted,

_____                    _____
David Wesley Cornish, Esquire                      Brent Wieand, Esquire
Cornerstone Legal Group, LLC                       Wieand Law Firm, LLC
230 South Broad Street, 17th Floor                 230 South Broad Street, 17th Floor
Philadelphia, PA 19102                             Philadelphia, PA 19103
Phone: 888-313-1385                                Phone: 215-666-7777
Email: **cornerstonelegalgroup@gmail.com**         Email: **bwieand@wieandlaw.com**
**ATTORNEY FOR PLAINTIFFS**                        **ATTORNEY FOR PLAINTIFFS**
**Date**: September 20, 2023

## <u>VERIFICATION</u>

The facts set forth in the foregoing Complaint are true and correct to the best of the undersigned's knowledge, information and belief and are verified subject to the penalties for perjury and unsworn falsification to authorities and/or the tribunal under both state and United States law.

Respectfully Submitted,

_____

David Wesley Cornish, Esquire
Cornerstone Legal Group, LLC
230 South Broad Street, 17th Floor
Philadelphia, PA 19102
Phone: 888-313-1385
Email**: cornerstonelegalgroup@gmail.com**
**ATTORNEY FOR PLAINTIFFS**
**Date**: September 20, 2023

_____

Brent Wieand, Esquire
Wieand Law Firm, LLC
230 South Broad Street, 17th Floor
Philadelphia, PA 19103
Phone: 215-666-7777
Email**: bwieand@wieandlaw.com**
**ATTORNEY FOR PLAINTIFFS**