**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAHMIR ADAMS, JEREMY LEE HENSEL, DANNY JESUS RUIZ, TRAY DANIELS, SHAWN SCHLOPY, MIGUEL MARTELL, and COPELAND TYLER,** | |
| **Plaintiffs,** | **Civil Action No. 5:23-cv-03684-JLS** |
| **v.** | |
| **ADELPHOI USA, ADELPHOI CLUB, INC., ADELPHOI VILLAGE, ADELPHOI VALLEY STREAM, INC., ADELPHOI EDUCATION, INC., ADELPHOI FOUNDATION, ADELPHOI WESTERN REGION INC., BERKS COUNTY CHILDREN AND YOUTH SERVICES, and JOHN/JANE DOES 1-100,** | |
| **Defendants.** | |

**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendants Adelphoi USA, Adelphoi Village, Adelphoi Education, Inc., Adelphoi Foundation, and Adelphoi Western Region Inc. (collectively "Adelphoi") move to strike or dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).

Plaintiffs' pleading basically is a rehash of their prior Complaint that does nothing to address the arguments in the preceding Motion to Dismiss. Moreover, Plaintiffs' pleading largely is the same document — containing the same allegations against other social services providers — that counsel has filed in other litigation in this Court. See Butcher v. Mid-Atlantic Youth Services, 5:23-cv-03706-JFL (E.D. Pa.).

Adelphoi seeks dismissal on the basis that Plaintiffs fail to articulate claims under either Title IX or Constitutional violations, thus the Court is without jurisdiction. Presuming that the entire action is not dismissed, Plaintiffs' class action allegations are not viable, nor may Plaintiffs

pursue claims under the Pennsylvania Unfair Trade and Consumer Protection Law. Pursuant to

Local Rule 7.1 accompanying this Motion is a Brief in Support and Proposed Order.

Respectfully submitted,

**DEASEY, MAHONEY & VALENTINI, LTD.**

By _____

Matthew J. Junk, Esquire (PA 86089)
1601 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 587-9400/9456 (fax)
mjunk@dmvlawfirm.com

Dated: February 20, 2024

*Counsel for Defendants Adelphoi USA Adelphoi USA,
Adelphoi Village, Adelphoi Education, Inc., Adelphoi
Foundation, and Adelphoi Western Region Inc.*

2

#11709792v1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAHMIR ADAMS, JEREMY LEE HENSEL, DANNY JESUS RUIZ, TRAY DANIELS, SHAWN SCHLOPY, MIGUEL MARTELL, and COPELAND TYLER,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**ADELPHOI USA, ADELPHOI CLUB, INC., ADELPHOI VILLAGE, ADELPHOI VALLEY STREAM, INC., ADELPHOI EDUCATION, INC., ADELPHOI FOUNDATION, ADELPHOI WESTERN REGION INC., BERKS COUNTY CHILDREN AND YOUTH SERVICES, and JOHN/JANE DOES 1-100,**<br><br>    **Defendants.** | **Civil Action No. 5:23-cv-03684-JLS** |

**BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT**

## I.    INTRODUCTION

Defendants Adelphoi USA, Adelphoi Village, Adelphoi Education, Inc., Adelphoi Foundation, and Adelphoi Western Region Inc. (collectively "Adelphoi") submit this brief in support of the motion to dismiss Plaintiffs' Amended Complaint (Doc. 9). While Plaintiffs' amendment was sought to "cure the deficiencies and issues raised" (Doc. 7) by a Motion to Dismiss (Doc. 6), Plaintiffs' amendment does nothing of the sort. Largely leaving the original allegations and counts untouched, the amended pleading adds multiple Adelphoi-styled entities[1] as parties, as well as "Berks County Children and Youth Services" although no individual legal

---

[1] Plaintiffs' Amended Complaint includes additional entities such as Adelphoi Club, Inc., Adelphoi Village, Adelphoi Valley Stream, Inc., Adelphoi Education, Inc., Adelphoi Foundation, Adelphoi Western Region Inc.

counts are addressed to a single one of those entities. The amended pleading also has discarded Plaintiff Antonio McGruther — an individual that filed his own standalone action in the Middle District of Pennsylvania.[2] Plaintiffs again purport to assert a federal class action against Defendant Adelphoi and a hundred unidentified employees founded upon alleged Title IX and Constitutional violations. Defendants again move for dismissal under Rule 12(b)(1) and (b)(6), as the Complaint does not present an Article III case or controversy. Plaintiffs have failed to articulate legally cognizable claims under either Title IX or Constitutional violations, thus rendering this Court without jurisdiction. Further, presuming that the entire action is not dismissed, Plaintiffs' class action allegations are not viable, nor may Plaintiffs pursue claims under the Pennsylvania Unfair Trade and Consumer Protection Law.

## II.     ALLEGED FACTS AND PROCEDURAL HISTORY

Plaintiffs' pleading basically is a rehash of their prior one, and it largely is the same one that counsel has filed in other litigation in this Court.[3] Plaintiffs broadly allege that "Adelphoi" operates treatment programs and provides rehabilitation, education and support services to adjudicated delinquent youth via contracts with various counties pursuant to the Pennsylvania Juvenile Act. See  Am. Compl. (Doc. 9), ¶¶ 2-3, 62, 80. Specifically, Plaintiffs plead that Adelphoi treated:

> Children with a wide range of backgrounds, abilities, and diagnoses receive treatment from Adelphoi programs. [And offered] many clinical, therapeutic, educational and employment programs for children with special needs and their families.  . . . outpatient behavioral health therapy, family-based mental health services, and various types of consultation-based support. Other non-residential programs include day schools for youth with intellectual/developmental disabilities and autism spectrum

---

[2] AMM v. Adelphoi Services, 4:23-cv-01566 WIA (M.D. Pa.).
[3] See Butcher v. Mid-Atlantic Youth Services, 5:23-cv-03706-JFL (E.D. Pa.).

2

> disorders. Adelphoi's more intensive residential programs include
> therapeutic boarding schools, therapeutic group homes, supervised
> independent living facilities, an intensive residential treatment
> program for children who have experienced sexual exploitation,
> and psychiatric specialty hospitals.

Id., ¶ 64.

At bottom, Plaintiffs allege that "Adelphoi has failed to properly protect Plaintiffs, and those similarly situated, and has shown a reckless disregard and deliberate indifference to the widespread violations of their rights, despite being aware for decades of the conduct of the John Doe Defendants, including the physical assaults and sexual abuse, and the corresponding lack of protection for Plaintiffs and the children residing at Adelphoi." Id., ¶ 16. Plaintiffs assert violations of federal Constitutional and statutory rights under the 4th, 8th, and 14th Amendments, with tortious conduct under state law, by subjecting Plaintiffs to harmful and degrading physical, mental, and sexual abuse, and by failing to protect Plaintiffs from harm and injuries committed by others. Id., ¶ 11. Plaintiffs also assert that Defendants violated Plaintiffs' state and federal Constitutional equal rights to "educational opportunities." Id., ¶ 12. Plaintiffs further allege that Adelphoi failed to properly train, supervise, and discipline the John/Jane Doe Defendants and that the John/Jane Doe Defendants, as a matter of practice and custom, engaged in systematic, prohibited conduct expecting that their conduct would not be subject to discipline or sanctions. Id., ¶ 13. Further, Plaintiffs state that Adelphoi failed to protect Plaintiffs from assaults and abuse by staff and unnamed fellow "students" at Adelphoi. Id., ¶ 14.

In addition to general accusations about Adelphoi allowing or permitting abuses, seven Plaintiffs are making varied claims of abuse spanning 13 years, different counties/placing agencies, unknown facilities, and different abusers. See id., ¶¶ 81-251 (providing allegations specific to each of the named Plaintiffs).

#11586516v1

Plaintiffs purportedly bring this suit as a class action under Rules 23(a), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure. See id., ¶¶ 258. Plaintiffs provide that their class definition broadly includes "All persons who are currently and/or have previously attended, resided, and/or were court ordered into placement, at any Adelphoi, juvenile facility, juvenile detention, juvenile placement, and/or holding facility . . . [and] were subjected to either physical, emotional, mental, and/or sexual abuse . . . and/or either had their educational opportunities deprived, are having their educational opportunities deprived, and/or are at threat to have their educational opportunities deprived." Id., ¶ 260. In support of their request for a class certification, Plaintiffs specifically allege that "[i]t would be virtually impossible for individual Class members to obtain effective relief, including, without limitation, effective injunctive and declaratory relief, from Defendants' actions absent certification of a class action." Id., ¶ 275. Plaintiffs further allege that "Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution." Id., ¶ 277.[4]

Springing from their core allegations of abuse and misconduct, Plaintiffs have asserted various legal counts, including the following: COUNT 1 – Violations of Title IX 20 U.S.C. § 1681 et seq. – Creation of Sexually Hostile Culture/Heightened Risk of Sexual Harassment; COUNT 2 – Violations of Title IX 20 U.S.C. § 1681(A) et seq. – Deliberate Indifference to Prior Sexual Harassment; COUNT 3 – Violations of Title 42 (42 U.S.C. § 1983 et seq.) –Civil Rights Deprivation; COUNT 10 – Violations of the Pennsylvania Unfair Trade Practices and Consumer

---

[4] However, contrary to the assertions cited above, it should be noted that one of the Plaintiffs involved in this litigation, ***Antonio McGruther, has filed his own, standalone action in the Middle District of Pennsylvania***: AMM v. Adelphoi Services, 4:23-cv-01566 WIA (M.D. Pa.).The Court may take judicial notice of facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201. Further, Plaintiffs incongruously plead that there are ***other actions being prosecuted individually***. See Am. Compl., ¶ 17.

Protection Law ("UTPCPL"), 73 P.S. § 201-1, et seq.; and COUNT 15 – Denial of Educational Opportunities.

### III.     STANDARD OF REVIEW

In a challenge to subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff has the burden of persuasion to convince the court that it has jurisdiction. Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. In reviewing a facial challenge, which contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto." In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) (quoting Gould, 220 F.3d at 176). A court will apply the same standard as that applicable to a motion to dismiss for failure to state a claim under Rule 12(b)(6). Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014).

In deciding a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. Id. at 234 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. (explaining that

determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The onus is on a plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations omitted).

## IV.    ARGUMENT

### A.    Plaintiffs Have Failed To Plead A Private Right Of Action Under Title IX

Counts 1 and 2 of Plaintiffs' Amended Complaint purport to state a claim under Title IX, 20 U.S.C. § 1681, et seq. Plaintiffs' claims are based solely on the conclusory allegations that Adelphoi was deliberately indifferent to sexual harassment and assaults and they fail to establish a private actor's right of action under Title IX.

Title IX of the Education Amendments of 1972 states that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," 20 U.S.C. § 1681(a), subject to certain exemptions. Id., § 1681(a)(1)–(9). In other words, recipients of federal funding that administer an educational program or activity, are prohibited from discriminating on the basis of sex.

The Supreme Court first interpreted Title IX to provide for a judicially implied private right of action against a federal-funded educational institution for sexual harassment, and later, an implied damages remedy in such actions. Cannon v. Univ. of Chi., 441 U.S. 677, 709, 717 (1979) (concluding that the text, history, and purpose of Title IX "counsel implication of a cause

of action in favor of private victims of discrimination"; and holding that the private plaintiff in that case could maintain her Title IX lawsuit); Franklin v. Gwinnett Cty. Pub. Sch., 503 U.S. 60, 76 (1992) (concluding that "a damages remedy is available for an action brought to enforce Title IX"). The Court similarly created the legal standard for establishing liability under Title IX for sexual abuse or harassment committed by a teacher. Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290-93 (1998) (setting out legal standard and analysis for determining liability under Title IX against an educational recipient of federal funds, for harassment by a teacher of a student, in a private right of action brought by the alleged victim). The Court, and numerous federal courts of appeals, have described this judicially created liability standard — which draws upon the "deliberate indifference" standard as applied under 42 U.S.C. § 1983 — as a "high bar for plaintiffs to recover under Title IX." Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 643 (1999) (characterizing the "deliberate indifference" standard it had adopted in Gebser as a "high standard" that was intended to "to eliminate any 'risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions'" (quoting Gebser, 524 U.S. at 290–91)); Stiles ex rel. D.S. v. Grainger Cty., Tenn., 819 F.3d 834, 848 (6th Cir. 2016) ("The deliberate indifference standard set forth in Davis sets a high bar for plaintiffs to recover under Title IX."); see also, e.g., I.F. v. Lewisville Indep. Sch. Dist., 915 F.3d 360, 368 (5th Cir. 2019) ("Deliberate indifference is an extremely high standard to meet." (quoting Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001))); Doe v. Galster, 768 F.3d 611, 619 (7th Cir. 2014) ("The standard of deliberate indifference sets a high bar for plaintiffs under Title VI and Title IX."); Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 665 (2012) ("The deliberate indifference standard outlined by the Supreme Court in Davis v. Monroe County Board of Education is a narrow one."); Doe v. Sch. Bd. of Broward Cty., Fla.,

604 F.3d 1248, 1259 (11th Cir. 2010) (stating that in the context of a private right of action under Title IX, "[d]eliberate indifference is an exacting standard").

Before reaching the issue of whether a funding recipient acted with "deliberate indifference," Gebser requires that a plaintiff establish that "an appropriate person" at the funding recipient had "actual knowledge of discrimination." See, e.g., J.F.K. v. Troup Cty. Sch. Dist., 678 F.3d 1254, 1260 (11th Cir. 2012) ("The first step for the Appellants to defeat summary judgment as to their Title IX claim is to identify a person with the authority to take corrective measures in response to actual notice of sexual harassment."). Failure to show either "actual" notice or that such notice was provided to "an appropriate person" of the funding recipient may constitute the sole basis for a court's dismissal of a Title IX claim seeking damages for sexual harassment or abuse. See, e.g., P.H. v. Sch. Dist. of Kansas City, Mo., 265 F.3d 653, 659–60 (8th Cir. 2001) (though it was undisputed that the teacher had engaged in "persistent and ongoing" sexual abuse of his student for two years, dismissing Title IX claim in the absence of evidence creating a triable issue that the school district had actual notice of the conduct); Baynard v. Malone, 268 F.3d 228, 239 (4th Cir. 2001) (dismissing Title IX claim seeking damages for sexual molestation committed by a sixth grade teacher, because plaintiff failed to show "actual notice" by an "appropriate person").

In the present case, Plaintiffs' Amended Complaint contains only conclusory allegations of notice and the repeated catchphrase of reckless indifference. See, e.g., Am. Compl., ¶¶ 291 (making conclusory allegations of notice); ¶¶ 16, 73, 292, 298, 316 (making conclusory statements about indifference). These are nothing more than "threadbare recitals" of elements of a cause of action. While the pleading provides specific allegations about the supposed abuses for each of the named Plaintiffs across almost 200 paragraphs, there is no specific averment that any

8

one of those Plaintiffs received educational services. Even more, there is no averment within those paragraphs to support the "exacting standard" of deliberate indifference. Quite simply, the Amended Complaint is utterly devoid of a single, factual allegation that any of these Plaintiffs reported abuse at all, much less to an "appropriate person" at Adelphoi. Based on their failure to aver the provision of educational services or that actual notice was provided to an appropriate person, Plaintiffs have to plead claims to support a private right of action under Title IX.

### B. Plaintiffs' Amended Complaint Fails To State Claims Under Section 1983

Defendants additionally assert that Plaintiffs fail to state claims under 42 U.S.C. § 1983 because the Amended Complaint fails to plausibly support that Defendants acted under color of state law. Plaintiffs allege that although Adelphoi is private entity that it nonetheless is a state actor because it performs a "public function" by accepting adjudicated juveniles in its various programs. See  Am. Compl., ¶¶ 2, 5. Plaintiffs further cite that Adelphoi accepts these placements pursuant to the Juvenile Act. See id., ¶ 80. However, these allegations are insufficient to establish that Adelphoi is a state actor subject to Constitutional claims under section 1983.

Under section 1983, a plaintiff must demonstrate that his or her federal constitutional or statutory rights were violated by a person acting "under the color of state law." Kost v. Kozakiewitz, 1 F.3d 176, 184 (3d Cir. 1993). The "under color of state law" requirement ensures that only conduct fairly attributable to the state is actionable under § 1983 and that private conduct, no matter how wrongful or discriminatory, escapes liability. See Leshko v. Servis, 423 F.3d 337, 339-40 (3d Cir. 2005). The essential question is whether the challenged activity "may be fairly treated as that of the State itself[.]" Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). Although this is a "fact-specific inquiry[,]" it may be addressed on a motion to dismiss.

9

Schneider v. Arc of Montgomery Cty., 497 F. Supp. 2d 651, 660 (E.D. Pa. 2007) (collecting cases).

A private party may be regarded as a "a federal actor . . . under one of three interrelated theories of government action: (i) the 'public function' test, (ii) the 'close nexus' test and (iii) the 'symbiotic relationship' test." Brown v. Philip Morris Inc., 250 F.3d 789, 801 (3d Cir. 2001). In deciding whether there has been state action, a court must remain focused on the central purpose of the state action inquiry — to "assure that constitutional standards are invoked when 'it can be said that the state is *responsible* for the specific conduct of which plaintiff complains.'" Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (emphasis in original). Courts note that the requirements of the public function test are "rigorous" and "rarely . . . satisfied." Robert S. v. Stetson School, Inc., 256 F.3d 159, 165 (3d Cir. 2001) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995)). It requires a court to determine whether the defendant was performing a function that is "traditionally and exclusively" the province of the state. Leshko, 423 F.3d at 343. In this instance, Plaintiffs' Amended Complaint simply does not assert, nor does it contain any supporting factual allegations to suggest, that providing treatment services under the Juvenile Act is a traditional and exclusive government function in Pennsylvania. Accordingly, the Amended Complaint fails to adequately allege state action under the public function test.

District courts should permit amendment when dismissing a civil rights case for failure to state a claim unless doing so would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). Therefore, the Court may consider whether allowing Plaintiffs an opportunity to amend the Amended Complaint on the public

function test would be futile. In short, courts have opined that similarly situations have not invoked the public function requirement and that Plaintiffs' claims in this regard would be futile.

In <u>Leshko v. Servis</u>, 423 F.3d 337 (3d Cir. 2005), the Third Circuit analyzed whether a function is traditionally and exclusively reserved to the state. In <u>Leshko</u>, the plaintiff sustained serious burns when her foster mother allegedly left her alone next to a pot of hot water, which she overturned onto herself. The plaintiff alleged that her foster parents violated her Fourteenth Amendment right to be free from physical harm, and that they were state actors because they were county "employees" and Pennsylvania had placed her in their custody pursuant to its statutory foster care system. <u>Id.</u> at 337-39. The Third Circuit affirmed the district court's dismissal of the complaint, holding that the defendants were not state actors because the state had not delegated a "traditional and exclusive" state function. The Court concluded that no aspect of the foster care system had been the exclusive province of Pennsylvania and distinguished the state's care for foster children from its provision of medical services to incarcerated prisoners, which constituted state action under <u>West v. Atkins</u>, 487 U.S. 42, 54-55 (1988). <u>Id.</u> at 343-47.

In distinguishing <u>West</u>, the Third Circuit noted that, while "[c]onstitutional obligations on a state are powerful evidence that the required functions are traditionally governmental," neither the "federal Constitution nor the Pennsylvania Constitution requires that the state provide care for foster children." <u>Id.</u> at 344. Foster care in Pennsylvania, rather, "is a creature of statute, begun in 1981 under ***Pennsylvania's Juvenile Act***." <u>Id.</u> (emphasis supplied). The <u>Leshko</u> Court also determined that, unlike the prisoner in <u>West</u>, the plaintiff's care was not delivered in an institutional setting. Further, although only Pennsylvania could select plaintiff's caregiver, as in the case in prison, "[i]t simply cannot be said that, historically, foster children in Pennsylvania could only turn to caregivers authorized by the Commonwealth." <u>Id.</u> at 345-47.

The <u>Leshko</u> Court's reference to the Juvenile Act is instructive because Pennsylvania's provision of custody, treatment and rehabilitative services to adjudicated delinquents is also a "creature of statute," — the Juvenile Act — which is not mandated by the federal Constitution or the Pennsylvania Constitution.[5] Furthermore, while Plaintiffs herein were not cared for in a private home, as the plaintiff in <u>Leshko</u>, these Plaintiffs nonetheless received treatment and services at Adelphoi, which is a private entity. Plaintiffs herein have not offered any allegations to suggest that this setting was comparable to that involved in <u>West</u>, <u>i.e.</u> a "tight security-based strictures of prison life," such that "persuasive institutional influences" render Plaintiffs' situation analogous to that of an incarcerated prisoner who is constrained by authority that is "quintessentially governmental." <u>Leshko</u>, 423 F.3d at 346.

Nor can Plaintiffs claim that their situation would be analogous to a prison in which those individuals are separated from society. With the Juvenile Act, the purposes do not include separation from the family/community but, rather, the preservation of the unity of the family whenever possible, or an alternative family, and providing for "care, protection, safety and wholesome mental and physical development[.]" 42 Pa. C.S. § 6301(b). Adjudicated juveniles specifically cannot be in adult prisons. Rather, they are to be contained only in a licensed foster home, a licensed facility operated by a child welfare agency, or an approved detention home, camp, center or other facility under the direction of the court or other public authority or a private agency. <u>See</u> 42 Pa. C.S. § 6327(a). Moreover, under Pennsylvania law, the private facilities that accept juveniles for custodial treatment are not obligated to accept those individuals, but may refuse to house them. <u>See Glen Mills Schools v. Court of Comm. Pl. Phila.</u>

---

[5] Referring to the enactment of the Juvenile Act in 1901, the <u>Leshko</u> Court noted that "statutory duties of even such early vintage are not traditionally governmental." 423 F.3d at 345.

#11586516v1

Cty., 520 A.2d 1379, 513 Pa. 310 (1987) (noting that a court had no authority to force a private residential facility to accept or retain custody of juvenile who had been adjudicated delinquent).

In conclusion, the public function test is a bar that Plaintiffs cannot approach, much less meet. As Plaintiffs recognize, Adelphoi variously offers clinical, therapeutic, educational and employment programs for children with special needs and their families. See Am. Compl., ¶ 64. As in Leshko, juveniles have not, historically, been required to turn to Pennsylvania or state-authorized entities for such mental health treatment/services. See Leshko, 423 F.3d at 345-47. Simply because such services may have evolved to become part of a broader public function does not make those services a traditional and exclusive function of the state. See, e.g., Rendell-Baker v. Kohn, 457 U.S. 830, 841-42 (1982) (holding that privately-operated school for maladjusted high school students, while serving the public, did not perform a task within the exclusive province of the state). Benn v. Universal Health System, Inc., 371 F.3d 165, 172 (3d Cir. 2004) (involuntary commitment of mentally ill not an "exclusive" public function, thus delegation to private entity does not constitute state action); Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995) (discussing Jackson and Rendell-Baker and concluding that the "exclusivity" requirement has been stressed by the court, making it extremely difficult for plaintiff's to satisfy this standard). Accordingly, Plaintiffs' Amended Complaint may be dismissed for failing to state claims for Constitutional violations.

**C.     Plaintiffs' Class Action Allegations Are Inherently Deficient For Class Certification**

Plaintiffs did not significantly adjust any allegations addressing class status, with the exception of identifying two equally illegitimate subclasses. See Am. Compl., ¶ 260. Therefore, Defendants maintain the same challenges to those allegations.

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 155 (1982) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-701 (1979)). Class certification may only be granted if the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure are satisfied:

> (a) Prerequisites. One or more members of a class may sue . . . as representative parties on behalf of all members only if
> > (1) the class is so numerous that joinder of all members is impracticable;
> > (2) there are questions of law or fact common to the class;
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The elements of this four-part test are commonly referred to as "numerosity," "commonality," "typicality," and "representativeness."

An action may proceed on a class basis only if the plaintiffs satisfy the requirements of Federal Rule of Civil Procedure 23, which the Supreme Court has described as "a one-size-fits-all formula for deciding the class-action question." Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 559 US 393, 399 (2010). Under the express language of Rule 23, two conditions must be met to maintain a class action: "The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." Id.

Additionally, courts have held that Rule 23 has an "implicit" requirement that the proposed class be "definite" or "ascertainable." Bell v. Cheswick Generating Station, No. 12-cv-929, 2015 WL 401443, at *2 (W.D. Pa. Jan. 28, 2015) (citations omitted). "[A]scertainability entails two important elements. First, the class must be defined with reference to objective

criteria. Second, there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013).

Where the requirements of Rule 23 are not met, the court may issue an order "requir[ing] that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). While courts generally consider whether a proposed class meets the Rule 23 requirements after the plaintiffs move for class certification, nothing prevents a court from addressing class certification earlier in the proceedings. See Thompson v Merck & Co., Inc., No. 01-cv-1004, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) ("At the outset, we note that plaintiffs argue that this court lacks authority to strike the class allegations from the complaint until after the plaintiffs have filed a motion for class certification. We do not agree."). In fact, Rule 23 contemplates early resolution of class certification, stating: "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). In some cases, "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Landsman & Funk PC v. Skinder-Strauss Associates, 640 F.3d 72, 93, n.30 (3d Cir. 2011). As the Supreme Court explained:

> Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.

Falcon, 457 U.S. at 160. "[W]here it is clear from the complaint itself that the requirements for maintaining a class action cannot be met, a defendant may move to strike the allegations before a motion for class certification is filed." Semenko v. Wendy's Int'l, Inc., No. 12-cv-0836, 2013 WL

1568407, at *3 (W.D. Pa. April 12, 2013) (quoting <u>NBL Flooring, Inc. v. Trumball Ins. Co.</u>, No. 10-cv-4398, 2011 WL 4481918, at *1 (Sept. 11, 2011)). Rules 23(c)(1)(A), 23(d)(1)(D), and 12(f) allow courts to do so. "These Rules, together, provide authority for the Court to strike the class allegations from Plaintiffs' Complaint, if appropriate, even before Plaintiffs move for class certification." <u>Bell</u>, 2015 WL 401443, at *2. Similarly, if it is clear from the complaint that "no amount of discovery will demonstrate that the class can be maintained," a court can strike the plaintiff's class allegations prior to class discovery. Id. (citations and emphasis omitted); <u>see also</u> <u>Semenko</u>, 2013 WL 1568407, at *11 (striking class allegations prior to class certification motion or class discovery).

Regardless of whether the issue of class certification is raised through a defendant's motion to strike or a plaintiff's motion for class certification, "[t]he plaintiffs bear the burden of advancing a <u>prima facie</u> showing that the class action requirements of Federal Rule of Civil Procedure 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." <u>Semenko</u>, 2013 WL 1568407, at *2. In other words, "accelerating the class certification question does not alter the traditional Rule 23 burdens…." <u>Bell</u>, 2015 WL 401443, at *3. This is a situation in which Plaintiffs' allegations reveal that a class action is not proper. Plaintiffs cannot meet their burden, and the Court should strike Plaintiffs' class allegations.

### 1.  Plaintiffs Have No Standing

To have standing to sue, a plaintiff bears the burden of establishing "(1) [an] injury-in-fact ... that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) [a likelihood] ... that the injury will be redressed by a favorable decision." <u>Danvers Motor Co., Inc. v. Ford Motor Co.</u>, 432 F.3d 286, 290-91 (3d Cir. 2005); <u>see also</u> <u>General Telephone Co. of</u>

the Southwest v. Falcon, 457 U.S. 147, 156 (1982) (noting that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members"). Herein, the individual plaintiffs lack standing to bring claims because of their individualized interests in the alleged damages. It is notable that while Plaintiffs maintain that they were each adjudicated delinquents and placed in some Adelphoi juvenile facility, the proposed class is broad enough to incorporate *any* individual who was ever placed at *any* Adelphoi facility, regardless of the character of the facility or the nature of the placement. Thus, Plaintiffs' proposed class definition itself defeats standing because the definition disregards the disparate scenarios, treatments, placements, locations, and alleged abuses specific to each purported class member. Further, none of Plaintiffs have particularized that they suffered an injury-in-fact to educational progress from the purported actions of Defendants, a particular term in Plaintiffs' proposed class definition and a sub-class. Where, as here "none of the named plaintiffs purporting to represent [the] class [have] establishe[d] the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." O'Shea v. Littleton, 414 U.S. 488, 494 (1974). Given the named Plaintiffs' inability to demonstrate standing, this Court cannot certify the putative class. Id.

### 2.     The Proposed Class Is Not Ascertainable

The lack of shared interest, shared potential claims, and shared potential injuries is a theme that further dilutes the class request. Specifically, Plaintiffs' class allegations should be stricken because plaintiffs have not sufficiently alleged an ascertainable or definitive class. See Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 592–93 (3d Cir. 2012).

The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is "defined with reference to objective criteria"; and (2) there is "a reliable and administratively

feasible mechanism for determining whether putative class members fall within the class definition." Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013). Ascertainability is "a relatively simple requirement." Byrd v. Aaron's Inc., 784 F.3d 154, 161 (3d Cir. 2015). However, a putative class action "will founder if the only proof of class membership is the say-so of putative class members or if ascertaining the class requires extensive and individualized fact-finding." Hayes, 725 F.3d at 356. As the court in Bell noted, "[b]efore delving into the 'rigorous analysis' required by Rule 23, a court should first consider whether a precisely defined class exists...." Bell, 2015 WL 401443, at 3 (quoting Bentley v. Honeywell Int'l, Inc., 223 F.R.D. 471, 477 (S.D. Ohio 2004)).

Plaintiffs' proposed class would involve ascertainment predominantly based upon the "say-so" of the putative class members, that is, their simple assertion of abuse and resultant harm. Whether class members were subject to abuse is not something that can be readily and preliminarily determined through reliable and feasible administrative processes based on objective criteria. Instead, to identify the members of Plaintiffs' putative class, the litigants and the Court will need to engage in mini-trials to determine the specific facts regarding the claims made by each person. Thus, this proposed class basically requires individualized fact-finding to identify the class members, rendering the class wholly unascertainable. See Wright v. City of Wilmington, No. 13-1966-SLR-SRF, 2016 WL 356023, at *4 (D. Del. Jan. 28, 2016) (citing Carrera v. Bayer Corp., 727 F.3d 300, 305 (3d Cir. 2013)). "When a class definition involves an ultimate issue of liability, the court must conduct mini-hearings in order to determine who belongs within the class and who does not, rendering the process administratively infeasible and therefore unascertainable." Bell, 2015 WL 401443, at *4.

### 3.    The Proposed Class Does Not Have Commonality

Plaintiffs identify alleged common issues of law or fact in this case. See  Am. Compl., ¶ 266. However, none of these sweeping, alleged issues of law or fact suffice to satisfy the commonality requirement.

The commonality prong of Rule 23(a) requires that the proposed class members share, not some highly abstract allegation of wrongdoing, but "a discrete legal question." J.B. v. Valdez, 186 F.3d 1280, 1289 (10th Cir. 1999) (observing that the "allegation of systematic failures" is not "a moniker for meeting the class action requirements"). The "discrete legal question" must be "applicable *in the same manner* to each member of the class" so that it may be meaningfully resolved in a single proceeding. Falcon, 457 U.S. at 155 (emphasis added). Plaintiffs must establish their class allegations by "generalized proof . . . applicable to the class as a whole." Lumpkin v. E.I. DuPont de Nemours & Co., 161 F.R.D. 480, 482 (M.D. Ga. 1995) (emphasis added). It follows that a common question, for purposes of Rule 23(a)(2), can only be one that is susceptible to such generalized proof. See, e.g., Webb v. Merck & Co., 206 F.R.D. 399, 404-5 (E.D. Pa. 2002) (noting that "if broad discrimination is the only common denominator in the class, this does not satisfy the commonality requirement").

By definition, as alluded to previously, there can be no generalized proof in this case. In the first instance, Plaintiffs' supposed common issues are nothing more than esoteric legal concepts, rather than a common "discrete legal question." Moreover, whether Adelphoi's purported acts or omissions, policies or procedures created a duty, violated a duty, caused an injury, or resulted in some other Constitutional violation depends on the actual application of a specific set of circumstances to each Plaintiff in light of the individual's location, needs, placement, programs, and services that Adelphoi provided to that person. See, e.g., Blunt v.

Lower Merion Sch. Dist., 262 F.R.D. 481, 489-90 (E.D. Pa. 2009) (noting that individualized determinations were required to determine whether the school district had violated the IDEA). Accordingly, individualized proof will have to be obtained from each supposed class member to determine the specific facts regarding the claims made by each person and questions such as: (1) the type of placement; (2) the length of placement; (3) whether/what abuse occurred; (4) when the abuse occurred; (5) whether the abuse was reported; and (6) the impact of the abuse, if any, on each Plaintiff. These questions and others must be answered for each individual Plaintiff. Based on the divergent locations, abusers, abuse, and other innumerable circumstances of each Plaintiff, the answers to these questions will vary significantly, rendering class wide resolution "in one stroke" simply impossible. Wal-Mart, 131 S. Ct. at 2551.

### 4.     Plaintiffs Cannot Satisfy Rule 23(b)(2) or (3)

Plaintiffs purport to assert class claims under either Rule 23(b)(2) or (b)(3) in the request for class certification. See. Am. Compl., ¶ 258. However, their proposed class is not viable under either subsection. For this reason as well, the Court should strike Plaintiffs' class allegations. See Thompson, 2004 WL 62710, at *3 (striking class allegations where "plaintiffs cannot satisfy either Rule 23(b)(2) or (3)").

Rule 23(b)(2) permits class certification where, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class actions certified under (b)(2) are restricted to those cases where the ***primary relief sought is injunctive or declaratory relief***." Thompson, 2004 WL 62710, at *3 (emphasis supplied) (citing Barnes v. American Tobacco Co., 161 F.3d 127, 142-43 (3d Cir.1998)). "Where, as here, the putative class seeks injunctive and declaratory relief as well as compensatory

damages, the Third Circuit measures the predominance of money damages in the Rule 23(b)

context using the 'incidental damages' standard set forth by the Fifth Circuit to determine

whether the monetary damages are incidental to the injunctive and declaratory relief sought."

Wright, 2016 WL 356023, at *7 (citing Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 198-

99 (3d Cir. 2009)). "Incidental damages" are those that "flow directly from liability to the class

as a whole on the claims forming the basis of the injunctive or declaratory relief." Thompson,

2004 WL 62710, at *3 (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th

Cir.1998) (emphasis in original)). Courts consider three factors in determining whether a class

seeks "incidental damages":

> (1) whether such damages are of a kind to which class members
> would be automatically entitled;
> (2) whether such damages can be computed by "objective
> standards" and not standards significantly reliant upon "the
> tangible, subjective differences of each class member's
> circumstances"; and
> (3) whether such damages would require additional hearings to
> determine.

Id.

Here, Plaintiffs seek both compensatory and punitive damages. See Am. Compl., Ad

Damnum Clauses, stating "Plaintiffs, demand judgment against Defendants, individually, jointly

and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00),

exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages,

and such other legal and equitable relief as the Court deems appropriate.") These damages cannot

be computed by objective standards. Each person's experience would undoubtedly be analyzed

by an individualized determination of the nature, extent, and duration of abuse, as well as the

impact of such abuse on each member's own life experiences. Such an inquiry would plainly

require individualized hearings to determine. See Thompson, 2004 WL 62710, at *4 ("Plaintiffs'

21

request for compensatory and punitive damages on behalf of each class member would necessarily require individualized proof of injury.") "Plaintiff's claims therefore cannot as a matter of law satisfy the prerequisites for class certification under Rule 23(b)(2)." Id.; see also Wright, 2016 WL 356023, at *7 (striking class allegations for failure to satisfy Rule 23(b)(2) where "determining each class member's monetary damages will require an individualized analysis.").

Plaintiffs' proposed class claims fare no better under Rule 23(b)(3). Rule 23(b)(3) permits class actions where "the questions of law or common fact to class members predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311 (3d Cir. 2008) (citations and quotations omitted). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." Id. (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 172 (3d Cir. 2001)).

As noted above, there is no question that essential elements of Plaintiffs' claims require individual analysis and treatment, rendering class certification impossible. Adjudicating Plaintiffs' claims implicates numerous individualized issues bearing on both liability and damages, which, once again, will require individualized proofs as to each class member. See Wright, 2016 WL 356023, at *8 (denying class certification on Section 1983 claims where "each class member's inclusion would require an analysis of whether the facts and legal character of

22

the detention comport with plaintiff's theory"). For each purported class member, a factfinder will have to determine specific aspects of the abuse. None of these questions can be resolved on a wholesale, class basis. Further, the defenses that Defendants may present will vary from member to member. <u>See</u> <u>Thompson</u>, 2004 WL 62710, at *5 (noting that the defendant's unique defenses to class members' claims negate predominance).

Furthermore, Plaintiffs' own allegations belie that these claims are not more susceptible to resolution on an individualized basis. Plaintiffs have specifically acknowledged that there are ***other cases outside of the contours of the present litigation***. Moreover, at least one Plaintiff has filed his own suit in the Middle District of Pennsylvania, directly contradicting Plaintiffs' assertion that these cases can/should readily proceed as a class. <u>See</u>  Am. Compl., ¶ 17; <u>see also</u> <u>AMM v. Adelphoi Services</u>, 4:23-cv-01566 WIA (M.D. Pa.).

**D.**    <u>**Plaintiffs Fail To State A Claim Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law**</u>

Should Plaintiffs' suit not be dismissed in its entirety, then Plaintiffs' claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") should be dismissed. The purpose of the Act (73 P.S. § 201-1, et seq.) is to "benefit the public at large by eradicating, among other things, 'unfair or deceptive' business practices . . . [with] the statute's underlying foundation [being] fraud prevention." <u>Chalfin v. Beverley Enterprises, Inc.</u>, 741 F. Supp. 1162, 1174 (E.D. Pa. 1989) (quoting <u>Comm. by Creamer v. Monumental Properties, Inc.</u>, 459 Pa. 450, 457-59, 239 A.2d 812, 815-16 (1974)). The "general purpose of the UTPCPL is to protect the public from fraud and unfair deceptive business practices." <u>Burke v. Yingling</u>, 446 Pa. Super. 16, 666 A.2d 288, 291 (1995). Specifically, the UTPCPL protects a person who "purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the

use or employment by any person of a method, act or practice declared unlawful by section 3 of [the] act [.]" 73 P.S. § 201–9.2. Further, an individual must establish that "he or she suffered damages arising from the purchase or lease of goods or services." <u>Keller v. Volkswagen of America, Inc.</u>, 733 A.2d 642, 646 (Pa.Super.1999) (citing 73 P.S. § 201–9.2). Otherwise stated, for a private individual to bring a cause of action under the Act, one must establish the following: (1) that s/he is a purchaser or lessee; (2) that the transaction deals with "goods or services"; (3) that the good or service primarily was for personal, family or household purposes; and (4) that s/he suffered damages arising from the purchase or lease of these goods or services. <u>See</u> <u>Keller</u>, 1999 Pa. Super 153, 733 A.2d at 646.

Plaintiffs primarily have failed to allege that they were purchasers or lessors. Plaintiffs first allege in their Complaint that Adelphoi provided treatment and rehabilitative services to Plaintiffs on the basis of contracts with various Pennsylvania counties. <u>See</u>  Am. Compl., ¶ 79. Yet, Plaintiffs also assert that they or their parents purchased behavioral health treatment services from Adelphoi. <u>See</u> <u>id.</u>, ¶ 378. On the basis of these contradictory averments, Plaintiffs do not properly assert unfair trade claims against Adelphoi because Plaintiffs do not articulate that they were, in fact, purchasers of any goods or services. The UTPCPL permits only persons who have purchased or leased goods or services to sue. <u>Duffy v. Lawyers Title Ins. Co.</u>, 972 F. Supp. 2d 683 (E.D. Pa. 2013).

Further, the services in this matter were mental health treatment or social services programs that clearly were not goods/services for personal, family or household purposes. Plaintiffs maintain that those services were provided pursuant to contract, under direction of the law/counties, and in facilities in which Plaintiffs resided. <u>See</u>  Am. Compl., ¶¶ 1-2, 62-63. Plaintiffs then state that Adelphoi provided various mental health services and programs. <u>See</u> <u>id.</u>,

24

¶¶ 64, 106, 134, 156, 180, 204, 225, 247. As such, the services provided in that environment could not have been for personal, family or household purposes. Moreover, Pennsylvania's courts have previously held that the UTPCPL does not apply to the provision of medical services. <u>See</u> <u>Simmons v. Simpson House, Inc.</u>, 224 F. Supp. 3d 406, 420 (E.D. Pa. 2016); <u>see also</u>, <u>Walter v. Magee–Womens Hosp. of UPMC Health Sys</u>, 876 A.2d 400, 407 (Pa. Super. 2005); <u>Foflygen v. R. Zemel, M.D.</u>, 615 A.2d 1345, 1354-55 (Pa. Super. 1992).

Finally, to state a cause of action under the UTPCPL, a plaintiff must be able to identify that there is either ***money or property*** that they would have had but for the allegedly fraudulent commercial actions of a defendant. <u>See</u> <u>Benner v. Bank of America, N.A.</u>, 917 F. Supp. 2d 388 (E.D. Pa. 2013). Here, Plaintiffs have failed to do so, nor can they do so.

## V.       CONCLUSION

Based on the foregoing, Defendants request that the Court grant the motion.

Respectfully submitted,

**DEASEY, MAHONEY & VALENTINI, LTD.**

By _____
Matthew J. Junk, Esquire (PA 86089)
1601 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 587-9400/9456 (fax)
mjunk@dmvlawfirm.com

Dated: February 20, 2024          *Counsel for Defendants Adelphoi USA Adelphoi USA, Adelphoi Village, Adelphoi Education, Inc., Adelphoi Foundation, and Adelphoi Western Region Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew J. Junk, Esquire, hereby certifies that a true and correct copy of the foregoing

Motion to Dismiss and Brief in Support, on behalf of Defendants Adelphoi USA Adelphoi USA,

Adelphoi Village, Adelphoi Education, Inc., Adelphoi Foundation, and Adelphoi Western Region

Inc. has been filed electronically and is available for review and retrieval on the court system's

website, by counsel of record.

**DEASEY, MAHONEY & VALENTINI, LTD.**

By _____
          Matthew J. Junk, Esquire (PA 86089)
          1601 Market Street, Suite 3400
          Philadelphia, PA 19103
          (215) 587-9400/9456 (fax)
          mjunk@dmvlawfirm.com

Dated: February 20, 2024      *Counsel for Defendants Adelphoi USA Adelphoi*
          *USA, Adelphoi Village, Adelphoi Education, Inc.,*
          *Adelphoi Foundation, and Adelphoi Western Region*
          *Inc.*