## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAHMIR ADAMS, JEREMY LEE HENSEL, DANNY JESUS RUIZ, TRAY DANIELS, SHAWN SCHLOPY, MIGUEL MARTELL, and COPELAND TYLER,<br><br>**Plaintiffs,**<br><br>v.<br><br>ADELPHOI USA, ADELPHOI CLUB, INC., ADELPHOI VILLAGE, ADELPHOI VALLEY STREAM, INC., ADELPHOI FOUNDATION, ADELPHOI WESTERN REGOIN INC., BERKS COUNTY CHILDREN AND YOUTH SERVICES, and JOHN/JANE DOES 1-100,<br><br>**Defendants.** | **Civil Action No. 5:23-cv-03684-JLS** |

## BRIEF IN SUPPORT OF DEFENDANTS ADELPHOI USA, ADELPHOI VILLAGE, ADELPHOI EDUCATION, INC., ADELPHOI FOUNDATION, AND ADELPHOI WESTERN REGION INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendants Adelphoi USA, Adelphoi Village, Adelphoi Education, Inc., Adelphoi Foundation, and Adelphoi Western Region Inc. (collectively "Adelphoi") submit this memorandum in support of its motion to strike or dismiss Plaintiffs' Second Amended Complaint.

### I.    INTRODUCTION

Within an extensive, 83-page, 476-paragraph second amended pleading, Plaintiffs purport to assert a federal class action against Adelphoi, Berks County Children and Youth Services (hereinafter "BCCYS"), and perhaps one hundred (100) unidentified employees of Adelphoi founded upon alleged Title IX and Constitutional violations. Adelphoi moves for dismissal under Rule 12(b)(1) and (b)(6), as the Complaint does not present an Article III case or controversy. Plaintiffs have failed to articulate legally cognizable claims under either Title IX or Constitutional

#11820719v1

violations, thus rendering this Court without jurisdiction. Further, presuming that the entire action is not dismissed, Plaintiffs' class action allegations are not viable.

## II.    ALLEGED FACTS AND PROCEDURAL HISTORY

On May 31, 2024, Plaintiffs were granted leave to file their Second Amended Complaint, with the caveat that no additional amendments will be permitted. See Order Dated May 31, 2024 (Doc. 28). Within their Motion for Leave to file their Second Amended Complaint, Plaintiffs contended that said pleading was necessary in order to cure ongoing and recurrent deficiencies within the Plaintiffs' Original and First Amended Complaints.[1] See Plaintiff's Motion for Leave (Doc. 22). It was further asserted that a Second Amended Complaint was necessary to "incorporate factual intricacies and bolster the allegations against the Defendants." Id. at  A Second Amended Complaint was filed on behalf of the Plaintiffs on June 20, 2024. See Pl's Second Amended Complaint (Doc. 29).

Plaintiffs' claims involve Adelphoi, which is broadly alleged to operate treatment programs and provide rehabilitation, education and support services to adjudicated delinquent youth via contracts with various counties pursuant to the Pennsylvania Juvenile Act. See Pl's Second Amended Complaint (Doc. 29), at ¶¶ 2-3, 63-64, and 78-79. Specifically, Plaintiffs plead that Adelphoi treated:

> Children with a wide range of backgrounds, abilities, and diagnoses receive treatment from Adelphoi USA programs. [And offered] many clinical, therapeutic, educational and employment programs for children with special needs and their families…outpatient behavioral health therapy, family-based mental health services, and various types of consultation-based support. Other non-residential programs include day schools for youth with intellectual/developmental disabilities and autism spectrum disorders. Adelphoi USA's more intensive residential programs include therapeutic boarding schools, therapeutic group homes,

---

[1] The Plaintiffs' Original Complaint (Doc. 1) was filed on September 21, 2023. The Plaintiff's First Amended Complaint (Doc. 9) was filed on January 8, 2024.

#11820719v1

> supervised independent living facilities, an intensive residential treatment program for children who have experienced sexual exploitation, and psychiatric specialty hospitals.

Id., ¶ 64.

At bottom, Plaintiffs allege that "Adelphoi has failed to properly protect Plaintiffs, and those similarly situated, and has shown a reckless disregard and deliberate indifference to the widespread violations of their rights, despite being aware for decades of the conduct of the John Doe Defendants, including the physical assaults and sexual abuse, and the corresponding lack of protection for Plaintiffs and the children residing at Adelphoi." Id., ¶ 16.

Plaintiffs maintain that Defendants violated federal Constitutional and statutory rights under the 4th, 8th, and 14th Amendments, together with tortious conduct under state law, by subjecting Plaintiffs to harmful and degrading physical, mental, and sexual abuse, and by failing to protect Plaintiffs from harm and injuries committed by others. Id., ¶ 11. Plaintiffs also assert that Defendants violated Plaintiffs' state and federal Constitutional equal rights to "educational opportunities." Id., ¶ 12. Plaintiffs further allege that Adelphoi failed to properly train, supervise, and discipline the John/Jane Doe Defendants and that the John/Jane Doe Defendants, as a matter of practice and custom, engaged in systematic, prohibited conduct expecting that their conduct would not be subject to discipline or sanctions. Id., ¶ 13. Further, Plaintiffs state that Adelphoi failed to protect Plaintiffs from assaults and abuse by staff and unnamed fellow "students" at Adelphoi. Id., ¶ 14.

In addition to general accusations about Adelphoi allowing or permitting abuses, Plaintiffs — seven (7) individuals who were adjudicated delinquent and placed at Adelphoi facilities by juvenile courts— allege specific allegations of abuse by staff members and others. Those eight Plaintiffs are asserting varied claims of abuse spanning approximately thirteen (13) years, different

counties/placing agencies, unidentified facilities, and different alleged abusers:

| Plaintiff | Alleged abuse | Years | Adjudicating County | Alleged Abusers |
|---|---|---|---|---|
| Jahmir Adams | Sexual abuse | 2019-2022 when he was a juvenile and approx. 17-19 years old | Berks | Patrick Kratz and Mr. Dave |
| Jeremy Lee Hensel | Sexual abuse | 2009-2010 when he was a juvenile and approx. 16-17 years old | Allegheny | Jeffrey Newhouse |
| Danny Jesus Ruiz | Sexual abuse | 2017-2019 when he was approx. 13-15 years old | Allegheny | Supervisor Andy<br><br>Supervisor Joe, Matt Leary, and Mr. Juan |
| Tray Daniels | Sexual abuse | 2013 when he was approx. 15 years old | Allegheny | Mr. Dave |
| Shawn Schlopy | Sexual abuse | 2018-2019 when he was approx. 16-17 years old | McKean | Mr. Craig |
| Miguel Martell | Sexual abuse | 2017-2019 when he was approx. 13-15 years old | Dauphin | Dave and Frank Chapel |
| Copeland Tyler | Sexual abuse | 2010-2011 when he was a juvenile and approx. 14-15 years old | Allegheny | Justin, J.D. and Steve |

See id., ¶¶ 81-256 (providing allegations specific to each of the named Plaintiffs).

Plaintiffs purportedly bring this suit as a class action under Rules 23(a), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure. See id., ¶¶ 263-284. Plaintiffs identify their class definition as follows:

> All persons who are currently and/or have previously attended, resided, and/or were court ordered into placement, at any Adelphoi USA, juvenile facility, juvenile detention, juvenile placement, and/or holding facility, in any state, Commonwealth, or jurisdiction, and while at any or in connection with any of the Defendants' facility(ies) were subjected to either physical, mental, and/or sexual abuse by any of the named Defendants, and/or their staff members, volunteers, agents, servants, employees, or the like while juveniles, and/or either had their educational opportunities deprived, are

4

> having their educational opportunities deprived, and/or are at threat
> to have their educational opportunities deprived (the "Class")."

Id., ¶ 265. In support of their request for a class certification, Plaintiffs specifically allege that "[i]t would be virtually impossible for individual Class members to obtain effective relief, including, without limitation, effective injunctive and declaratory relief, from Defendants' actions absent certification of a class action." Id., ¶ 280. Plaintiffs further allege that "Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution." Id., ¶ 282.

It should be noted that one of the Plaintiffs originally involved in this litigation, Antonio McGruther, has filed his own standalone action in the Middle District of Pennsylvania: AMM v. Adelphoi Services, 4:23-cv-01566 WIA (M.D. Pa.). Accordingly, Mr. McGruther was not included as a named Plaintiff within the First or Second Amended Complaints.[2] Plaintiffs have also averred that ***there are other actions being prosecuted individually***:

> Additionally, in the Commonwealth of Pennsylvania state court, separate lawsuits, raising almost identical claims, including both physical and sexual abuse, to those contained within this complaint, including complaints for excessive force, fondling, groping, sodomy, and rape have been filed against Adelphoi USA and/or the other related named Defendants.

Id., ¶ 17. This includes, at a minimum, a lawsuit initiated in the Court of Common Pleas, in Philadelphia County, on behalf of Brandon McDaniels. See McDaniels v. Adelphoi, Case No. 221202237 (Phila. Ct. Com. Pl.), in which Adelphoi is also being represented by the undersigned counsel.

Springing from their core allegations of abuse and misconduct, Plaintiffs have asserted

---

[2] The Court may take judicial notice of facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201.

various legal counts, including the following:

- COUNT 1 – Violations of Title IX 20 U.S.C. § 1681 et seq. – Creation of Sexually Hostile Culture/Heightened Risk of Sexual Harassment (against Adelphoi and BCCYS);

- COUNT 2 – Violations of Title IX 20 U.S.C. § 1681(A) et seq. – Deliberate Indifference to Prior Sexual Harassment (against Adelphoi and BCCYS);

- COUNT 3 – State-Created Danger in Violation of Plaintiffs' Constitutional and Federal Rights, pursuant to Title 42 (42 U.S.C. § 1983 et seq.) (against Adelphoi and BCCYS);

- COUNT 4 – Failure to Train & Supervise, in Violations of Plaintiffs' Constitutional and Federal Rights, pursuant to Title 42 (42 U.S.C. § 1983 et seq.) (against Adelphoi and BCCYS);

- COUNT 5 – Negligence (against Adelphoi only);

- COUNT 6 – Negligence (against BCCYS only);

- COUNT 7 – Negligent Hiring (against Adelphoi only);

- COUNT 8 – Negligent Retention (against Adelphoi only);

- COUNT 9 – Negligent Supervision (against Adelphoi only);

- COUNT 10 – Gross Negligence (against Adelphoi only);

- COUNT 11 – Gross Negligence (against BCCYS only);

- COUNT 12 – Negligent Misrepresentations and Omissions (against Adelphoi only);

- COUNT 13 – Vicarious Liability (against Adelphoi only);

- COUNT 14 – Negligent Infliction of Emotional Distress (against Adelphoi only);

- COUNT 15 – Breach of Fiduciary Duty (against Adelphoi only);

- COUNT 16 – Corporate Liability (against Adelphoi only); and

- COUNT 17 – Denial of Educational Opportunities (against Adelphoi only).

Plaintiffs also seek equitable relief in the form of a requirement that Adelphoi implement

6

institution-wide policies and practices to prevent continued alleged abuse within their programs. Id., ¶¶ 464-472.

## III. STANDARD OF REVIEW

In a challenge to subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff has the burden of persuasion to convince the court that it has jurisdiction. Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. In reviewing a facial challenge, which contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto." In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) (quoting Gould, 220 F.3d at 176). A court will apply the same standard as that applicable to a motion to dismiss for failure to state a claim under Rule 12(b)(6). Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014).

In deciding a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. Id. at 234 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. (explaining that determining "whether a complaint states

7

#11820719v1

a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

The onus is on a plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations omitted). The court need not accept unsupported inferences, Cal. Pub. Employees Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), nor legal conclusions cast as factual allegations, Twombly, 550 U.S. at 556. Legal conclusions without factual support are not entitled to the assumption of truth. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements," do not satisfy the requirements of Rule 8). Accordingly, a court should dismiss a complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### A.  ARGUMENT

### B.  Plaintiffs Have Failed to Plead a Private Right of Action Under Title IX

Counts 1 and 2 of Plaintiffs' Second Amended Complaint purport to state a claim under Title IX, 20 U.S.C. § 1681, et seq. Plaintiffs' claims are based solely on the conclusory allegations

that Adelphoi was deliberately indifferent to sexual harassment and assaults, and their Second Amended Complaint is devoid of the requisite allegations to establish a private actor's right of action under Title IX.

Title IX of the Education Amendments of 1972 states that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," 20 U.S.C. § 1681(a), subject to certain exemptions. Id., § 1681(a)(1)–(9). In other words, recipients of federal funding that administer an educational program or activity, are prohibited from discriminating on the basis of sex.

The Supreme Court first interpreted Title IX to provide for a judicially implied private right of action against a federal-funded educational institution for sexual harassment, and later, an implied damages remedy in such actions. Cannon v. Univ. of Chi., 441 U.S. 677, 709, 717 (1979) (concluding that the text, history, and purpose of Title IX "counsel implication of a cause of action in favor of private victims of discrimination"; and holding that the private plaintiff in that case could maintain her Title IX lawsuit); Franklin v. Gwinnett Cty. Pub. Sch., 503 U.S. 60, 76 (1992) (concluding that "a damages remedy is available for an action brought to enforce Title IX"). The Court similarly created the legal standard for establishing liability under Title IX for sexual abuse or harassment committed by a teacher. Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290-93 (1998) (setting out legal standard and analysis for determining liability under Title IX against an educational recipient of federal funds, for harassment by a teacher of a student, in a private right of action brought by the alleged victim).

The Court, and numerous federal courts of appeals, have described this judicially created liability standard — which draws upon the "deliberate indifference" standard as applied under 42

9

U.S.C. § 1983 — as a "high bar for plaintiffs to recover under Title IX." Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 643 (1999) (characterizing the "deliberate indifference" standard it had adopted in Gebser as a "high standard" that was intended to "to eliminate any 'risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions'" (quoting Gebser, 524 U.S. at 290–91)); Stiles ex rel. D.S. v. Grainger Cty., Tenn., 819 F.3d 834, 848 (6th Cir. 2016) ("The deliberate indifference standard set forth in Davis sets a high bar for plaintiffs to recover under Title IX."); see also, e.g., I.F. v. Lewisville Indep. Sch. Dist., 915 F.3d 360, 368 (5th Cir. 2019) ("Deliberate indifference is an extremely high standard to meet." (quoting Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001))); Doe v. Galster, 768 F.3d 611, 619 (7th Cir. 2014) ("The standard of deliberate indifference sets a high bar for plaintiffs under Title VI and Title IX."); Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 665 (2012) ("The deliberate indifference standard outlined by the Supreme Court in Davis v. Monroe County Board of Education is a narrow one."); Doe v. Sch. Bd. of Broward Cty., Fla., 604 F.3d 1248, 1259 (11th Cir. 2010) (stating that in the context of a private right of action under Title IX, "[d]eliberate indifference is an exacting standard").

Before reaching the issue of whether a funding recipient acted with "deliberate indifference," Gebser requires that a plaintiff establish that "an appropriate person" at the funding recipient had "actual knowledge of discrimination." See, e.g., J.F.K. v. Troup Cty. Sch. Dist., 678 F.3d 1254, 1260 (11th Cir. 2012) ("The first step for the Appellants to defeat summary judgment as to their Title IX claim is to identify a person with the authority to take corrective measures in response to actual notice of sexual harassment."). Failure to show either "actual" notice or that such notice was provided to "an appropriate person" of the funding recipient may constitute the sole basis for a court's dismissal of a Title IX claim seeking damages for sexual harassment or

10

abuse. See, e.g., P.H. v. Sch. Dist. of Kansas City, Mo., 265 F.3d 653, 659–60 (8th Cir. 2001) (though it was undisputed that the teacher had engaged in "persistent and ongoing" sexual abuse of his student for two years, dismissing Title IX claim in the absence of evidence creating a triable issue that the school district had actual notice of the conduct); Baynard v. Malone, 268 F.3d 228, 239 (4th Cir. 2001) (dismissing Title IX claim seeking damages for sexual molestation committed by a sixth grade teacher, because plaintiff failed to show "actual notice" by an "appropriate person").

In the present case, Plaintiffs' Second Amended Complaint contains only conclusory allegations of notice to Adelphoi and the repeated catchphrase of reckless indifference. See Pls.' Second Amended Compl., ¶¶ 100, 149, 201, 223 (making conclusory allegations of notice); ¶¶ 16, 74, 271a., 271l., 306, 325, 360, 362, 404 and 412 (making conclusory statements about reckless indifference). These are nothing more than "threadbare recitals" of elements of a cause of action, and there are no averments to support the "exacting standard" of notice to an "appropriate person" and deliberate indifference. It is insufficient to aver only that their alleged abuse was reported to "an appropriate person" without also identifying that individual and/or the alleged basis as to why the Plaintiffs perceived said individual to qualify as "appropriate" to report the alleged abuse to. Based on their failure to aver the requisite factual support that actual notice was provided to an appropriate persons, and not merely labels and conclusions, Plaintiffs have failed to sufficiently plead claims to support a private cause of action under Title IX.

### C. **Plaintiffs' Second Amended Complaint Fails To State Claims Under Section 1983**

In addition to the foregoing, Adelphoi asserts that the basis for Plaintiffs' claims and the jurisdiction of this Court is without merit, because Adelphoi is not a state actor subject to claims

for Constitutional violations. In sum, Plaintiffs fail to state claims under 42 U.S.C. § 1983 because the Complaint fails to plausibly support that Defendants acted under color of state law.

Plaintiffs allege that although Adelphoi is private entity that it nonetheless is a state actor because it performs a "public function" by accepting adjudicated juveniles in its various programs. See Pls.' Second Amended Compl., ¶ 2. Plaintiffs further cite that Adelphoi accepts these placements pursuant to the Juvenile Act. See id., ¶ 80. However, these allegations are insufficient to establish that Adelphoi is a state actor subject to Constitutional claims under section 1983.

Under section 1983, a plaintiff must demonstrate that his or her federal constitutional or statutory rights were violated by a person acting "under the color of state law." Kost v. Kozakiewitz, 1 F.3d 176, 184 (3d Cir. 1993). The "under color of state law" requirement ensures that only conduct fairly attributable to the state is actionable under § 1983 and that private conduct, no matter how wrongful or discriminatory, escapes liability. See Leshko v. Servis, 423 F.3d 337, 339-40 (3d Cir. 2005). The essential question is whether the challenged activity "may be fairly treated as that of the State itself[.]" Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). Although this is a "fact-specific inquiry[,]" it may be addressed on a motion to dismiss. Schneider v. Arc of Montgomery Cty., 497 F. Supp. 2d 651, 660 (E.D. Pa. 2007) (collecting cases).

A private party may be regarded as a "a federal actor . . . under one of three interrelated theories of government action: (i) the 'public function' test, (ii) the 'close nexus' test and (iii) the 'symbiotic relationship' test." Brown v. Philip Morris Inc., 250 F.3d 789, 801 (3d Cir. 2001). In deciding whether there has been state action, a court must remain focused on the central purpose of the state action inquiry — to "assure that constitutional standards are invoked when 'it can be said that the state is *responsible* for the specific conduct of which plaintiff complains.'" Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (emphasis in

#11820719v1

original). Courts note that the requirements of the public function test are "rigorous" and "rarely . . . satisfied." Robert S. v. Stetson School, Inc., 256 F.3d 159, 165 (3d Cir. 2001) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995)). It requires a court to determine whether the defendant was performing a function that is "traditionally and exclusively" the province of the state. Leshko, 423 F.3d at 343. In this instance, Plaintiffs' Second Amended Complaint simply does not assert, nor does it contain any supporting factual allegations to suggest, that providing treatment services under the Juvenile Act is a traditional and exclusive government function in Pennsylvania. Accordingly, the Complaint fails to adequately allege state action under the public function test.

In Leshko v. Servis, 423 F.3d 337 (3d Cir. 2005), the Third Circuit analyzed whether a function is traditionally and exclusively reserved to the state. There, the plaintiff sustained serious burns when her foster mother allegedly left her alone next to a pot of hot water, which she overturned onto herself. The plaintiff alleged that her foster parents violated her Fourteenth Amendment right to be free from physical harm, and that they were state actors because they were county "employees" and Pennsylvania had placed her in their custody pursuant to its statutory foster care system. Id. at 337-39. The Third Circuit affirmed the district court's dismissal of the complaint, holding that the defendants were not state actors because the state had not delegated a "traditional and exclusive" state function. The Court concluded that no aspect of the foster care system had been the exclusive province of Pennsylvania and distinguished the state's care for foster children from its provision of medical services to incarcerated prisoners, which constituted state action under West v. Atkins, 487 U.S. 42, 54-55 (1988). Id. at 343-47.

In distinguishing West, the Third Circuit noted that, while "[c]onstitutional obligations on a state are powerful evidence that the required functions are traditionally governmental," neither

13

the "federal Constitution nor the Pennsylvania Constitution requires that the state provide care for foster children." Id. at 344. Foster care in Pennsylvania, rather, "is a creature of statute, begun in 1981 under **Pennsylvania's Juvenile Act**." Id. (emphasis supplied). The Leshko Court also determined that, unlike the prisoner in West, the plaintiff's care was not delivered in an institutional setting. Further, although only Pennsylvania could select plaintiff's caregiver, as in the case in prison, "[i]t simply cannot be said that, historically, foster children in Pennsylvania could only turn to caregivers authorized by the Commonwealth." Id. at 345-47.

The Leshko Court's reference to the Juvenile Act is instructive because Pennsylvania's provision of custody, treatment and rehabilitative services to adjudicated delinquents is also a "creature of statute," — the Juvenile Act — which is not mandated by the federal Constitution or the Pennsylvania Constitution.[3] Furthermore, while Plaintiffs herein were not cared for in a private home, as the plaintiff in Leshko, these Plaintiffs nonetheless received treatment and services at Adelphoi, which is a private entity. Plaintiffs herein have not offered any allegations to suggest that this setting was comparable to that involved in West, i.e. a "tight security-based strictures of prison life," such that "persuasive institutional influences" render Plaintiffs' situation analogous to that of an incarcerated prisoner who is constrained by authority that is "quintessentially governmental." Leshko, 423 F.3d at 346.

Nor can Plaintiffs claim that their situation would be analogous to a prison in which those individuals are separated from society. With the Juvenile Act, the purposes do not include separation from the family/community but, rather, the preservation of the unity of the family whenever possible, or an alternative family, and providing for "care, protection, safety and wholesome mental and physical development[.]" 42 Pa. C.S. § 6301(b). Adjudicated juveniles

---

[3] Referring to the enactment of the Juvenile Act in 1901, the Leshko Court noted that "statutory duties of even such early vintage are not traditionally governmental." 423 F.3d at 345.

14

#11820719v1

specifically cannot be in adult prisons. Rather, they are to be contained only in a licensed foster home, a licensed facility operated by a child welfare agency, or an approved detention home, camp, center or other facility under the direction of the court or other public authority or a private agency. See 42 Pa. C.S. § 6327(a). Moreover, under Pennsylvania law, the private facilities that accept juveniles for custodial treatment are not obligated to accept those individuals, but may refuse to house them. See Glen Mills Schools v. Court of Comm. Pl. Phila. Cty., 520 A.2d 1379, 513 Pa. 310 (1987) (noting that a court had no authority to force a private residential facility to accept or retain custody of juvenile who had been adjudicated delinquent).

In conclusion, the public function test is a bar that Plaintiffs cannot approach, much less meet. As Plaintiffs recognize, Adelphoi variously offers clinical, therapeutic, educational and employment programs for children with special needs and their families. See Pls.' Compl., ¶ 64. As in Leshko, juveniles have not, historically, been required to turn to Pennsylvania or state-authorized entities for such mental health treatment/services. See id. at 345-47. Simply because such services may have evolved to become part of a broader public function does not make those services a traditional and exclusive function of the state. See, e.g., Rendell-Baker v. Kohn, 457 U.S. 830, 841-42 (1982) (holding that privately-operated school for maladjusted high school students, while serving the public, did not perform a task within the exclusive province of the state). Benn v. Universal Health System, Inc., 371 F.3d 165, 172 (3d Cir. 2004) (involuntary commitment of mentally ill not an "exclusive" public function, thus delegation to private entity does not constitute state action); Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995) (discussing Jackson and Rendell-Baker and concluding that the "exclusivity" requirement has been stressed by the court, making it extremely difficult for plaintiff's to satisfy this standard). Accordingly, Plaintiffs' Second Amended Complaint must be dismissed for failing to state claims

15

#11820719v1

for Constitutional violations.

### D. Plaintiffs' Class Action Allegations Are Inherently Deficient For Class Certification

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 155 (1982) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-701 (1979)). Class certification may only be granted if the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure are satisfied:

> (a) Prerequisites. One or more members of a class may sue . . . as representative parties on behalf of all members only if:
>
> > (1) the class is so numerous that joinder of all members is impracticable;
> >
> > (2) there are questions of law or fact common to the class;
> >
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> >
> > (4) the representative parties will fairly and adequately protect the interests of the class.

The elements of this four-part test are commonly referred to as "numerosity," "commonality," "typicality," and "representativeness."

An action may proceed on a class basis only if the plaintiffs satisfy the requirements of Federal Rule of Civil Procedure 23, which the Supreme Court has described as "a one-size-fits-all formula for deciding the class-action question." Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 559 US 393, 399 (2010). Under the express language of Rule 23, two conditions must be met to maintain a class action: "The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." Id.

#11820719v1

Additionally, courts have held that Rule 23 has an "implicit" requirement that the proposed class be "definite" or "ascertainable." Bell v. Cheswick Generating Station, No. 12-cv-929, 2015 WL 401443, at *2 (W.D. Pa. Jan. 28, 2015) (citations omitted). "[A]scertainability entails two important elements. First, the class must be defined with reference to objective criteria. Second, there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013).

Where the requirements of Rule 23 are not met, the court may issue an order "requir[ing] that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). While courts generally consider whether a proposed class meets the Rule 23 requirements after the plaintiffs move for class certification, nothing prevents a court from addressing class certification earlier in the proceedings. See Thompson v Merck & Co., Inc., No. 01-cv-1004, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) ("At the outset, we note that plaintiffs argue that this court lacks authority to strike the class allegations from the complaint until after the plaintiffs have filed a motion for class certification. We do not agree."). In fact, Rule 23 contemplates early resolution of class certification, stating: "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).

In some cases, "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Landsman & Funk PC v. Skinder-Strauss Associates, 640 F.3d 72, 93, n.30 (3d Cir. 2011). As the Supreme Court explained:

> Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it

17

#11820719v1

may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.

Falcon, 457 U.S. at 160. "[W]here it is clear from the complaint itself that the requirements for maintaining a class action cannot be met, a defendant may move to strike the allegations before a motion for class certification is filed." Semenko v. Wendy's Int'l, Inc., No. 12-cv-0836, 2013 WL 1568407, at *3 (W.D. Pa. April 12, 2013) (quoting NBL Flooring, Inc. v. Trumball Ins. Co., No. 10-cv-4398, 2011 WL 4481918, at *1 (Sept. 11, 2011)). Rules 23(c)(1)(A), 23(d)(1)(D), and 12(f) allow courts to do so. "These Rules, together, provide authority for the Court to strike the class allegations from Plaintiffs' Second Amended Complaint, if appropriate, even before Plaintiffs move for class certification." Bell, 2015 WL 401443, at *2. Similarly, if it is clear from the complaint that "no amount of discovery will demonstrate that the class can be maintained," a court can strike the plaintiff's class allegations prior to class discovery. Id. (citations and emphasis omitted); see also Semenko, 2013 WL 1568407, at *11 (striking class allegations prior to class certification motion or class discovery).

Regardless of whether the issue of class certification is raised through a defendant's motion to strike or a plaintiff's motion for class certification, "[t]he plaintiffs bear the burden of advancing a prima facie showing that the class action requirements of Federal Rule of Civil Procedure 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." Semenko, 2013 WL 1568407, at *2. In other words, "accelerating the class certification question does not alter the traditional Rule 23 burdens…." Bell, 2015 WL 401443, at *3. This is a situation in which Plaintiffs' allegations reveal that a class action is not proper. Plaintiffs cannot meet their burden, and the Court should strike Plaintiffs' class allegations.

### E.  Plaintiffs' Proposed Class Is Not Ascertainable

In this instance, Plaintiff's class allegations should be stricken because plaintiffs have not

sufficiently alleged an ascertainable or definitive class. See Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 592–93 (3d Cir. 2012). The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is "defined with reference to objective criteria"; and (2) there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013). Ascertainability is "a relatively simple requirement." Byrd v. Aaron's Inc., 784 F.3d 154, 161 (3d Cir. 2015). However, a putative class action "will founder if the only proof of class membership is the say-so of putative class members or if ascertaining the class requires extensive and individualized fact-finding." Hayes, 725 F.3d at 356. As the court in Bell noted, "[b]efore delving into the 'rigorous analysis' required by Rule 23, a court should first consider whether a precisely defined class exists…." Bell, 2015 WL 401443, at 3 (quoting Bentley v. Honeywell Int'l, Inc., 223 F.R.D. 471, 477 (S.D. Ohio 2004)).

Plaintiffs' proposed class would involve ascertainment predominantly based upon the "say-so" of the putative class members, that is, their simple assertion of abuse. Whether class members were subject to abuse is not something that can be readily and preliminarily determined through reliable and feasible administrative processes based on objective criteria. Instead, to identify the members of Plaintiffs' putative class, the litigants and the Court will need to engage in mini-trials to determine the specific facts regarding the claims made by each person. Similarly, Plaintiffs' definition would include persons who either had educational opportunities deprived or are ***in threat*** to have such opportunities deprived. Such a category of individuals not only is incredibly amorphous, but it has the same pitfall in requiring an individualized determination as to each prospective class member. Thus, this proposed class basically requires individualized fact-finding to identify the class members, rendering the class wholly unascertainable. See Wright v. City of

19

Wilmington, No. 13-1966-SLR-SRF, 2016 WL 356023, at *4 (D. Del. Jan. 28, 2016) (citing Carrera v. Bayer Corp., 727 F.3d 300, 305 (3d Cir. 2013)).

At the end of the day, Plaintiffs' proposed class would require individualized fact inquiries into the specific educational, developmental, behavioral, and medical characteristics and histories of each putative class member, necessitating mini-trials to determine class membership. "When a class definition involves an ultimate issue of liability, the court must conduct mini-hearings in order to determine who belongs within the class and who does not, rendering the process administratively infeasible and therefore unascertainable." Bell, 2015 WL 401443, at *4. Accordingly, scrutiny of Plaintiffs' definition dictates that the Court strike Plaintiffs' class allegations.

### F.  Plaintiffs Cannot Satisfy Rule 23(b)(2) or (3)

Plaintiffs purport to assert class claims under either Rule 23(b)(2) or (b)(3) in the request for class certification. See. Pls. Compl., ¶ 263. However, their proposed class is not viable under either subsection. For this reason as well, the Court should strike Plaintiffs' class allegations. See Thompson, 2004 WL 62710, at *3 (striking class allegations where "plaintiffs cannot satisfy either Rule 23(b)(2) or (3)").

Rule 23(b)(2) permits class certification where, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class actions certified under (b)(2) are restricted to those cases where the ***primary relief sought is injunctive or declaratory relief***." Thompson, 2004 WL 62710, at *3 (emphasis supplied) (citing Barnes v. American Tobacco Co., 161 F.3d 127, 142-43 (3d Cir.1998)). "Where, as here, the putative class seeks injunctive and declaratory relief as well as compensatory damages, the

Third Circuit measures the predominance of money damages in the Rule 23(b) context using the 'incidental damages' standard set forth by the Fifth Circuit to determine whether the monetary damages are incidental to the injunctive and declaratory relief sought." Wright, 2016 WL 356023, at *7 (citing Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 198-99 (3d Cir. 2009)). "Incidental damages" are those that "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." Thompson, 2004 WL 62710, at *3 (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir.1998) (emphasis in original)). Courts consider three factors in determining whether a class seeks "incidental damages":

(1) whether such damages are of a kind to which class members would be automatically entitled;

(2) whether such damages can be computed by "objective standards" and not standards significantly reliant upon "the tangible, subjective differences of each class member's circumstances"; and

(3) whether such damages would require additional hearings to determine.

Id.

Here, Plaintiffs seek both compensatory and punitive damages. See Pls.' Second Amended Compl., Ad Damnum Clauses (stating "Plaintiffs, demand judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate"). These damages cannot be computed by objective standards. Rather, these damages are subject to subtle differences based on each class member's circumstances. Each person's experience would undoubtedly be analyzed by an individualized determination of the nature, extent, and duration of abuse, as well as the impact of such abuse on each member's own life experiences. Such an inquiry

21

#11820719v1

would plainly require individualized hearings to determine. See Thompson, 2004 WL 62710, at *4 ("Plaintiffs' request for compensatory and punitive damages on behalf of each class member would necessarily require individualized proof of injury.") "Plaintiff's claims therefore cannot as a matter of law satisfy the prerequisites for class certification under Rule 23(b)(2)." Id.; see also Wright, 2016 WL 356023, at *7 (striking class allegations for failure to satisfy Rule 23(b)(2) where "determining each class member's monetary damages will require an individualized analysis.").

Plaintiffs' proposed class claims fare no better under Rule 23(b)(3). Rule 23(b)(3) permits class actions where "the questions of law or common fact to class members predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311 (3d Cir. 2008) (citations and quotations omitted). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." Id. (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 172 (3d Cir. 2001)).

There is no question that essential elements of Plaintiffs' causes of action require highly individual analysis and treatment, rendering class certification impossible. Adjudicating Plaintiffs' claims implicates numerous individualized issues bearing on both liability and damages, which, once again, will require individualized proofs as to each class member. See Wright, 2016 WL 356023, at *8 (denying class certification on Section 1983 claims where "each class member's inclusion would require an analysis of whether the facts and legal character of the detention

22

comport with plaintiff's theory"). For each purported class member, a factfinder will have to determine specific aspects of the abuse. None of these questions can be resolved on a wholesale, class basis. Further, the defenses that Defendants may present will vary from class member to class member. See Thompson, 2004 WL 62710, at *5 (noting that the defendant's unique defenses to class members' claims negate predominance).

Furthermore, Plaintiffs' own allegations belie that these claims are not more susceptible to resolution on an individualized basis. Plaintiffs have specifically acknowledged that there are other cases outside of the contours of the present litigation. Moreover, at least one Plaintiff has filed his own suit in the Middle District of Pennsylvania, and another in the Court of Common Pleas of Philadelphia, directly contradicting Plaintiffs' assertion that these cases can/should readily proceed as a class. See Pls.' Compl., ¶ 17; see also AMM v. Adelphoi Services, 4:23-cv-01566 WIA (M.D. Pa.); and see McDaniels v. Adelphoi, No. 221202237 (Phila. Ct. Com. Pl.)

Based on the nature of Plaintiffs' purported class definition and claims, it is inescapable that this action, "conducted nominally as a class action[,] would degenerate in practice into multiple lawsuits tried separately." Id. As the court in Semenko explained, "predominance exists only when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." 2013 WL 1568407, at *11. That is not the case even with the varied allegations even among the named Plaintiffs. The proposed class claims in this action simply "cannot be adjudicated in a one size fits all format, as required by Rule 23(b)(3)," and the Court should strike Plaintiffs' class allegations. Id.

IV.    **CONCLUSION**

Based on the foregoing, Defendants Adelphoi USA, Adelphoi Village, Adelphoi

23

Education, Inc., Adelphoi Foundation, and Adelphoi Western Region Inc. request that the Court dismiss Plaintiffs' action entirely. In the alternative, Defendants request that the Court strike Plaintiffs' class action allegations.

Respectfully submitted,

**DEASEY, MAHONEY & VALENTINI, LTD.**

By ___*/s/ Edward J. Henry*___
Edward J. Henry, Esquire (PA 314928)
1601 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 587-9400/9456 (fax)
ehenry@dmvlawfirm.com
*Counsel for Defendants,*
*Adelphoi USA, Adelphoi Village,*
*Adelphoi Education, Inc., Adelphoi Foundation,*
*and Adelphoi Western Region Inc.*

Dated: July 2, 2024

24

#11820719v1