**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAHMIR ADAMS, *et al.*, | : |
|     Plaintiffs, | : CIVIL ACTION |
| | : NO. 23-3684 |
| v. | : |
| | : |
| ADELPHOI USA, *et al.*, | : |
|     Defendants | : |

**MEMORANDUM OPINION**

**Schmehl, J.**   /s/ JLS                                                                                  **September 4, 2025**

**I.   INTRODUCTION**

Before the Court are the motions of Defendants, Berks County Children and Youth Services ("BCCYS") and Adelphoi USA, Adelphoi Village, Adelphoi Education, Inc., Adelphoi Foundation, and Adelphoi Western Region Inc. (collectively, "Adelphoi") to dismiss the Second Amended Complaint (the "Complaint") filed by Plaintiffs which seeks to assert a class action against BCCYS, Adelphoi, and as many as one hundred (100) unidentified employees of Adelphoi. Plaintiffs filed the Complaint seeking relief for violations of Title IX, 20 U.S.C. § 1681, *et seq.* ("Title IX") and 42 U.S.C. § 1983, *et seq.* ("§ 1983"). Plaintiffs also allege Pennsylvania state law claims of negligence, negligent hiring, negligent retention, negligent supervision, gross negligence, negligent misrepresentations and omissions, vicarious liability, negligent infliction of emotional distress, breach of fiduciary duty, corporate liability, and denial of educational opportunities. Additionally, Plaintiffs seek equitable relief in the form of a requirement that Adelphoi implement institution-wide policies and practices to prevent continued alleged abuse within their programs. Upon consideration of the parties' submissions, Defendants' motions will be denied.

## II.     BACKGROUND

Plaintiffs' claims center around Adelphoi, which operates treatment programs and provides rehabilitation, education and support services to adjudicated delinquent youth through contracts with counties pursuant to the Pennsylvania Juvenile Act. *See* Pl's Second Amended Complaint (ECF No. 29) at ¶¶ 2-3, 63-64, and 78-79. According to Plaintiffs, Adelphoi treated:

> Children with a wide range of backgrounds, abilities, and diagnoses receive treatment from Adelphoi USA programs. [And offered] many clinical, therapeutic, educational and employment programs for children with special needs and their families…outpatient behavioral health therapy, family-based mental health services, and various types of consultation-based support. Other non-residential programs include day schools for youth with intellectual/developmental disabilities and autism spectrum disorders. Adelphoi USA's more intensive residential programs include therapeutic boarding schools, therapeutic group homes, supervised independent living facilities, an intensive residential treatment program for children who have experienced sexual exploitation, and psychiatric specialty hospitals.

*Id.*, ¶ 64.

Plaintiffs, seven individuals who were adjudicated delinquent and placed at Adelphoi facilities by juvenile courts, allege specific allegations of abuse by staff members and others. *See id.* They assert a variety of claims concerning abuse spanning approximately thirteen (13) years, from as early as 2009 through 2022, involving multiple counties, facilities, and alleged abusers. *See id.*, ¶¶ 81-256 (outlining allegations specific to each of the named Plaintiffs). The allegations broadly assert:

> Adelphoi has failed to properly protect Plaintiffs, and those similarly situated, and has shown a reckless disregard and deliberate indifference to the widespread violations of their rights, despite being aware for decades of the conduct of the John Doe Defendants, including the physical assaults and sexual abuse, and the corresponding lack of protection for Plaintiffs and the children residing at Adelphoi.

*Id.*, ¶ 16.

Plaintiffs allege the Defendants violated their federal constitutional and statutory rights under the 4th, 8th, and 14th Amendments and committed tortious conduct under state law by subjecting them to harmful and degrading physical, mental and sexual abuse and failing to protect them from harm and injuries committed by others. (ECF No. 29) at ¶ 11. Plaintiffs further allege Defendants violated their state and federal constitutional equal rights to educational opportunities, and that Adelphoi failed to properly train, supervise, and discipline the John/Jane Doe Defendants, leading John/Jane Doe Defendants, as a matter of practice and custom, to engage in systematic, prohibited conduct with the expectation that their conduct would not be subject to discipline or sanctions. *Id.*, ¶ 13. Plaintiffs also assert Adelphoi failed to protect them from assaults and abuse by both staff and unnamed fellow students at the facilities. *Id.*, ¶ 14.

In addition to their general claims against BCCYS and Adelphoi, Plaintiffs make the following specific allegations against named staff members: Patrick Kratz and Mr. Dave sexually abused Plaintiff Adams (*Id.*, ¶¶ 81-110); Jeffrey Newhouse sexually abused Plaintiff Hensel (*Id.*, ¶¶ 111-138); Supervisor Andy, Supervisor Joe, Matt Leary, and Mr. Juan sexually abused Plaintiff Ruiz (*Id.*, ¶¶ 139-161); Mr. Dave sexually abused Plaintiff Daniels (*Id.*, ¶¶ 162-186); Mr. Craig sexually abused Plaintiff Schlopy (*Id.*, ¶¶ 187-211); Dave and Frank Chapel sexually abused Plaintiff Martell (*Id.*, ¶¶ 212-233); and Justin, J.D. and Steve sexually abused Plaintiff Tyler (*Id.*, ¶¶ 234-256).

The allegations underpinning Plaintiffs' claims against BCCYS are that BCCYS places juveniles at Adelphoi, and that it was on notice of the wrongful conduct yet failed to carry out its duties to investigate and take corrective action under Title IX. (ECF No. 29) at ¶¶ 293 and 298.

Plaintiffs assert this lawsuit as a class action under Rules 23(a), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure (*see id.*, ¶¶ 263-284), identifying their class definition as follows:

> All persons who are currently and/or have previously attended, resided, and/or were court ordered into placement, at any Adelphoi USA, juvenile facility, juvenile detention, juvenile placement, and/or holding facility, in any state, Commonwealth, or jurisdiction, and while at any or in connection with any of the Defendants' facility(ies) were subjected to either physical, mental, and/or sexual abuse by any of the named Defendants, and/or their staff members, volunteers, agents, servants, employees, or the like while juveniles, and/or either had their educational opportunities deprived, are having their educational opportunities deprived, and/or are at threat to have their educational opportunities deprived (the "Class").

Id., ¶ 265.

### III. LEGAL STANDARD

Motions to dismiss are governed by Federal Rule of Civil Procedure 12(b)(6). If a plaintiff fails to state a claim upon which relief can be granted, the court may dismiss the action. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.* at 678-79. A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). "Where a complaint

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 557).

In *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016), the Third Circuit instructed district courts to apply a three-step analysis to 12(b)(6) motions: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegation that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." (*quoting Iqbal*, 556 U.S. at 675, 679). *See Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

In our analysis of a motion to dismiss, the Third Circuit allows us to consider documents "attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

IV. **DISCUSSION**

    A. **TITLE IX CLAIMS**

Counts I and II of Plaintiffs' Complaint allege violations of Title IX against Adelphoi and BCCYS, asserting that Defendants created a sexually hostile culture/heightened risk of sexual harassment and were deliberately indifferent to prior sexual harassment.

Title IX of the Education Amendments of 1972 states that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," 20 U.S.C. § 1681(a), subject to certain exemptions. *Id.*, § 1681(a)(1)–(9). Put simply, recipients of federal funding administering an educational program or activity are prohibited from discriminating on the basis of sex.

### a. **ADELPHOI**

The Supreme Court held that the applicable liability standard for such Title IX claims is "deliberate indifference", drawing upon the deliberate indifference standard applied under 42 U.S.C. § 1983. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). In *Gebser v. Lago Vista Indep. Sch. Dist.*, the Court created the legal standard for establishing liability under Title IX for sexual abuse or harassment committed by an educator employed by an educational recipient of federal funds. 524 U.S. 274, 290-93 (1998). Under *Gebser*, in order to reach the question of whether a funding recipient acted with deliberate indifference, a plaintiff must establish "an appropriate person" at the funding recipient institution had "actual knowledge of discrimination." *Id.* at 290.

Adelphoi argues Plaintiffs assert only conclusory allegations of notice to Adelphoi and its reckless indifference in spite of that notice. (ECF No. 32-1, p. 11). Adelphoi contends that it is insufficient to aver only that Plaintiffs' alleged abuse was reported to "an appropriate person" without identifying that individual or the reasons why Plaintiffs deemed that individual to qualify as an "appropriate" person for purposes of reporting their allegations. *Id.* Therefore, Adelphoi concludes Plaintiffs have failed to sufficiently plead claims to support a private cause of action under Title IX. *Id.*

While Adelphoi is correct in its assertion that Plaintiffs have not yet identified an "appropriate person" who had actual knowledge of the abuse, Plaintiffs allege that "after receiving numerous complaints regarding the sexual abuse of residents, being subjected to dozens of news articles highlighting such abuse, and undergoing a number of prior lawsuits regarding sexual abuse of Adelphoi youth, Defendant ignored the sexual abuse occurring under its watch and allowed it to continue." (ECF No. 29) at ¶ 299. The Court, at this stage of the proceedings, must take Plaintiffs' alleged facts as true. Plaintiffs assert that Adelphoi had knowledge of allegations of sexual abuse at its facilities through complaints, media coverage, and prior lawsuits. Plaintiffs have plead sufficient factual material necessary for the Court to plausibly believe that an "appropriate person" had "actual knowledge of discrimination." Adelphoi's motion to dismiss the Title IX claims is therefore denied.

### b. BCCYS

Under *Davis*, a recipient's damages liability is limited to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs. 526 U.S. at 645. It is not clear, however, whether *Davis* applies here, as this case involves a series of claims of teacher-on-student sexual abuse, rather than student-on-student claims of harassment.

*Davis* reiterated *Gebser*'s holding that "a recipient intentionally violates Title IX, and is subject to a private damages action, where the recipient is deliberately indifferent to known acts of teacher-student discrimination." 526 U.S. at 643. The *Davis* opinion then goes on to analyze the more limited circumstances in which a school can be liable for student-on-student harassment:

> That is, the deliberate indifference must, at a minimum, "cause [students] to undergo" harassment or "make them liable or vulnerable" to it. Moreover, because the harassment

must occur "under" "the operations of" a funding recipient, see 20 U.S.C. § 1681(a); § 1687 (defining "program or activity"), the harassment must take place in a context subject to the school district's control.

These factors combine to limit a recipient's damages liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs. Only then can the recipient be said to "expose" its students to harassment or "cause" them to undergo it "under" the recipient's programs. We agree with the dissent that these conditions are satisfied most easily and most obviously when the offender is an agent of the recipient.

*Id.* at 645.

In *Wamer v. University of Toledo*, the Sixth Circuit noted that this language implies that the higher standards necessary to establish educational recipient liability in student-on-student incidents of harassment are unnecessary in the context of teacher-student harassment. 27 F.4th 461, 470 (6th Cir. 2022). The opinion goes on to explain that "while a school quite obviously 'subjects' its students to harassment and discrimination when it fails to respond to harassment by its agent (a teacher or professor), a school can only be seen to be responsible for the impacts of student-on-student harassment in more limited circumstances." *Id.*

BCCYS argues that Plaintiffs merely allege that it places juveniles at Adelphoi, which does not establish that BCCYS has substantial control over the internal operations of Adelphoi facilities. (ECF No. 31, pp. 7-9). The requirement of substantial control, however, seems to only apply to cases of student-on-student harassment, rather than allegations of multiple employees of an educational recipient sexually abusing multiple students in the context of juvenile detention.

Although BCCYS is not a school and may not have had substantial control over the Adelphoi staff and facilities, it did have ultimate control over whether the Plaintiffs would be placed there at all. In the context of the placement and detention of minors, this is a significant responsibility resulting in substantial control over the safety of those individuals. In allowing the claims to proceed to discovery, additional evidence relevant to BCCYS' duty or ability to

intervene, such as by ceasing to place minors at Adelphoi facilities pending an investigation into the allegations, may be uncovered.

BCCYS further argues, similarly to Adelphoi, that Plaintiffs have not provided sufficient details to support the inference that BCCYS had actual knowledge of the abuse, or that a nexus exists between BCCYS's alleged conduct and the injuries. (ECF No. 31, pp. 9-10). Plaintiffs allege BCCYS, like Adelphoi, was on notice of the conduct, including through complaints of abuse made by the Plaintiffs directly to county employees. (ECF No. 29) at ¶ 299. Plaintiffs allege BCCYS had knowledge of allegations of sexual abuse at Adelphoi facilities through complaints, media coverage, and prior lawsuits, and therefore have plead sufficient factual material necessary for the Court to plausibly believe that an "appropriate person" at BCCYS had "actual knowledge of discrimination."

Plaintiffs' allegations, taken as a whole, plausibly suggest that BCCYS has been on notice of reports of sexual abuse of minors at Adelphoi facilities, and has both the ability and responsibility to take corrective action to prevent continuing harm to Plaintiffs and those similarly situated. As previously mentioned, Plaintiffs seek injunctive relief based on their allegation that the harm is ongoing and has not been addressed by any of the defendants in this matter. It appears, from BCCYS's website, that the agency continues to place juveniles at Adelphoi Village. *Placement Information for Parents*, County of Berks – Children and Youth – www.berkspa.gov, https://www.berkspa.gov/departments/juvenile-probation-office/placement-information-for-parents (last visited Sep. 4, 2025). It is certainly plausible that the alleged harms and wrongful conduct described in the Complaint resulted from BCCYS's alleged failure to act. Therefore, BCCYS's motion to dismiss the Title IX claims will be denied.

### B. § 1983 CLAIMS

Private actors are not generally held liable under § 1983 for acts committed under color of state law, but a private party may be considered to be a state actor in practice if there exists "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks omitted)).

The Third Circuit established three tests derived from the Supreme Court jurisprudence on this issue to apply in determining whether there is a sufficient nexus between the state and the private conduct at issue: (1) whether the private actor was delegated a "traditionally and exclusively state function" (the "public function test"); (2) whether the private actor has acted "in concert with state officials" (the "close nexus test"); and (3) whether the State has "so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity" (the "symbiotic relationship test"). *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).

### a. ADELPHOI

Plaintiffs argue that although Adelphoi is a private entity, it should be considered and treated as a state actor because it performs a traditionally exclusive public function by accepting youth adjudicated delinquent by juvenile courts. (ECF No. 34, p. 7). Plaintiffs note the juveniles have been found guilty of committing criminal offenses and are placed in Adelphoi's facilities for rehabilitation and punishment. *Id*.

The Supreme Court has held that prisoners in privately run prisons can bring § 1983 actions against the prison entities and their employees. *See Correctional Services Corp. v.*

*Malesko*, 534 U.S. 61, 71 n. 5, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) ("*state* prisoners ... already enjoy a right of action against private correctional providers under 42 U.S.C. § 1983") (emphasis in original). Courts in this district have also found that private prisons may qualify as state actors under the public functions test. "The function of incarcerating people, whether done publicly or privately, is the exclusive prerogative of the state." *McCullum v. City of Philadelphia*, No. CIV. A. 98-5858, 1999 WL 493696, at *3 (E.D. Pa. July 13, 1999) (quoting *Giron v. Corrections Corp. of Am.*, 14 F.Supp.2d 1245, 1247–51 (D.N.M.1998)).

According to Plaintiffs' Complaint, Adelphoi "accepted juveniles for placement pursuant to court orders issued from various county and state governmental units" (ECF No. 29) at ¶ 62, and "serves as a custodial facility for the placement of juvenile court adjudicated youths, aged 8-18, and other at-risk youth. Operating since at least the early 1970s, Adelphoi has provided juvenile residential care since its inception." *Id*. at ¶ 63.

Adelphoi argues it should not be considered to perform a public function, because Plaintiffs cannot claim that the Adelphoi facilities are analogous to prisons. (ECF No. 32-1, pp. 11-15). Adelphoi contends that imprisoned individuals are separated from society, while the Pennsylvania Juvenile Act aims to preserve the unity of the family whenever possible, and provide for "care, protection, safety and wholesome mental and physical development[.]" *Id.* at 14 (citing 42 Pa. C.S. § 6301(b)). Adelphoi also asserts that private facilities may decline to accept adjudicated juveniles for custodial treatment. *Id*. at 15 (citing *Glen Mills Schools v. Court of Comm. Pl. Phila. Cty.*, 520 A.2d 1379, 513 Pa. 310 (1987)).

> Plaintiffs argue, however, that Adelphoi facilities are indeed akin to prisons:
>
> "Adelphoi provides a custodial setting that closely resembles the environment of a juvenile detention center. The facilities are designed to control and restrict the movements of the residents, ensuring they cannot leave without authorization. This level of control and supervision is characteristic of prison settings …"

(ECF No. 34, p. 7).

The Complaint includes specific allegations that lend support to this argument. Plaintiffs allege Adelphoi limited the contact Plaintiffs had with the outside world, including by limiting phone calls. (ECF No. 29) at ¶ 65. Plaintiffs allege Adelphoi staff abused them by withholding food as a punishment (*Id*. at ¶ 389), and at least one Plaintiff alleges that a staff member threatened his ability to go home in response to the Plaintiff resisting sexual advances. *Id.* at ¶ 93. Plaintiffs note: "Especially in a group home or residential treatment setting, abuse can more easily be hidden and children have limited access to police, advocates, or social services representatives who can intervene." *Id*. at ¶ 69.

Plaintiffs also assert Adelphoi "is funded in large part by the Commonwealth of Pennsylvania and other government entities, jurisdictions, and agencies, both inside and outside Pennsylvania, to provide services mandated by law for children who have been adjudicated as delinquent in juvenile court." *Id.* at ¶ 77. The Complaint then goes on to allege Adelphoi "has been the recipient of placements and commitments of juveniles from Pennsylvania, New York, New Jersey, Delaware, Indiana, Ohio, West Virginia, Michigan, and other states by virtue of its promise of a progressive and effective program for delinquent children, with proven services." *Id.* at ¶ 79.

Since there is limited caselaw in the Third Circuit concerning this question, Adelphoi and Plaintiffs have cited cases analyzing whether private actors in the foster care system can be deemed state actors under the public function test. While these cases are relevant, the circumstances here are vastly different.

In a recent Sixth Circuit case, *Nugent v. Spectrum Juv. Just. Servs.*, parents of a juvenile who died by suicide while detained by a private childcare institution filed a § 1983 action against the institution. 72 F.4th 135 (6th Cir. 2023). The Court found that the complaint contained

adequate facts to establish the institution was a state actor, because it not only carried out the public function of caring for youths at the direction of the state, but the facility was alleged to be "similar to a prison setting." *Id.* at 143. The complaint stated that the defendants had influence and control over how long a child was detained, restricted the movements of the children, and that the children were not free to leave the facilities. *Id*.

The Plaintiffs here have similarly pled sufficient facts to suggest the Commonwealth of Pennsylvania has endowed Adelphoi with the legal authority to exercise control over juveniles under court-ordered confinement, and that Adelphoi facilities were run like typical juvenile detention facilities in many respects. Plaintiffs have alleged that their freedom was significantly controlled within the facilities, which made them particularly vulnerable to abuse from staff members. Adelphoi's assertion that, as a private entity, it is not required to accept juveniles adjudicated delinquent is not relevant to the public function analysis. Since the operation of correctional facilities has been deemed a traditionally exclusive state function, Plaintiffs have plausibly alleged state action, and Adelphoi's motion to dismiss the § 1983 claims will be denied.

  **b.** **BCCYS**

Plaintiffs assert claims against BCCYS under 42 U.S.C. § 1983 for state-created danger and failure to train and supervise. BCCYS argues these claims lack necessary allegations of personal involvement or wrongdoing by BCCYS or its employees, noting that the allegations in the Complaint are primarily directed at Adelphoi and its employees. (ECF No. 31, pp. 10-11).

A § 1983 claim must allege that the public entity defendant violated the Plaintiffs' constitutional rights through an unconstitutional custom, policy, or practice that directly caused the constitutional violations. In *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, the

Supreme Court emphasized the necessity of linking the constitutional violation to a specific action or policy of the public entity. 520 U.S. 397, 397 (1997).

Plaintiffs contend that they have provided sufficient context to allege BCCYS caused the alleged constitutional violations through an unconstitutional custom, policy, or practice. (ECF No. 35, pp. 4-6). The Complaint states that all of the individual perpetrators' alleged wrongful acts "were made possible by their employment at Adelphoi and by BCCYS placing juveniles at Adelphoi." (ECF No. 29) at ¶ 338. Plaintiffs allege BCCYS was on notice of the alleged abuse, including through complaints of abuse made by the Plaintiffs directly to county employees. *Id.* at ¶ 299.

Notably, BCCYS's website states that "both Federal and State Laws define child abuse and mandate the agency's investigation of such reports." Abuse Investigation, County of Berks – Children and Youth – www.berkspa.gov, https://www.berkspa.gov/departments/children-and-youth/abuse-investigation (last visited Sep. 2, 2025). Taking Plaintiffs' allegations as true, if BCCYS employees were made aware of allegations of child abuse at Adelphoi facilities and failed to promptly investigate or cease placing juveniles at the facilities, that inaction would be in violation of both federal and state laws according to its own website.

Plaintiffs' allegations suggest a failure to train and supervise BCCYS employees and/or a custom of failing to respond appropriately to at least a subset of reports of child abuse, and that these failures caused the alleged violations of their constitutional rights. Therefore, Plaintiffs have sufficiently alleged § 1983 claims against BCCYS for state-created danger and failure to train and supervise, and BCCYS's motion to dismiss the claims is denied.

## C. STATE LAW NEGLIGENCE CLAIMS (BCCYS)

Plaintiffs assert state law negligence and gross negligence claims against BCCYS in Counts VI and XI of the Complaint. BCCYS argues these claims should be dismissed for failure to state a claim. (ECF No. 31, pp. 12-13). Under Pennsylvania law, "[t]he mere fact that an accident occurred does not give rise to an inference that the injured person was the victim of negligence." *Toro v. Fitness Int'l LLC.*, 150 A.3d 968, 976–77 (2016) (quoting *Estate of Swift by Swift v. Northeastern Hosp.*, 690 A.2d 719, 722 (1997)). A plaintiff must prove four elements to establish negligence by a defendant: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *Id.* The nature of the duty owed is primarily determined by the relationship between the parties at the time of the plaintiff's injury. *Id.*

BCCYS argues Plaintiffs failed to provide adequate factual support to demonstrate BCCYS breached a legally recognized duty owed to Plaintiffs, or to establish a causal connection between BCCYS's conduct and the alleged injury. (ECF No. 31, p. 12). In response, Plaintiffs argue they have adequately alleged that BCCYS owed a duty of care to the Plaintiffs and breached that duty by failing to protect them from known risks, causing damages as a result. (ECF No. 35, p. 6). The Court agrees that Plaintiffs have adequately alleged the elements of a negligence claim. As previously noted, the BCCYS website states that the agency is mandated to investigate reports of child abuse. This mandate to investigate certainly suggests that BCCYS owed Plaintiffs a duty of care, particularly since the Plaintiffs were placed in the allegedly abusive environments by BCCYS itself. If BCCYS was on notice of reports of abuse, as alleged, and failed to act, there is certainly a plausible causal connection between BCCYS's conduct and the alleged injuries.

BCCYS additionally argues that Plaintiffs' gross negligence claims must be dismissed, because Pennsylvania common law does not recognize degrees of negligence. (ECF No. 31, pp. 12-13). BCCYS contends that there are only statutorily created claims for gross negligence in Pennsylvania, and notes Plaintiffs have not identified a specific statutory gross negligence claim. *Id.* at 13. In *Milshteyn v. Fitness International, LLC*, the Superior Court of Pennsylvania analyzed the question of whether Pennsylvania caselaw recognizes gross negligence claims as distinct common law causes of action. 2022 PA Super 30, 271 A.3d 498, 504-06 (2022). The plaintiffs in that case contended Pennsylvania caselaw has established that gross negligence is merely a differing standard of care, rather than a distinct cause of action. *Id.* at 504-05. The Court concluded that their argument misinterpreted the cited cases:

> For example, the Milshteyns cite to *Ferrick Excavating & Grading Co. v. Senger Trucking Co.* for the proposition that gross negligence is merely a differing standard of care and not a distinct cause of action. *See id.*, 506 Pa. 181, 484 A.2d 744, 749 (1984). However, even *Ferrick* acknowledged gross negligence is a distinct standard of care from ordinary negligence. *See id.*, at 749. Nor does *In re Scheidmantel* support the Milshteyns' position. *See id.*, 868 A.2d 464 (Pa. Super. 2005). In *Scheidmantel*, this Court, after acknowledging the lack of precision in the term "gross negligence," observed that "when courts have considered the concept ... in various civil contexts, they have concluded uniformly that there is a substantive difference between 'ordinary negligence' and 'gross negligence.'" *See id.*, at 485.

*Milshteyn*, 271 A.3d at 505-06.

The Court went on to conclude that the Plaintiffs' claim for gross negligence constituted a wholly distinct claim. *Id.* at 506. Therefore, Pennsylvania courts regard gross negligence claims as distinct causes of action. For the reasons outlined above, BCCYS's motion to dismiss Plaintiffs' negligence and gross negligence claims is denied.

### D. CLASS ACTION ALLEGATIONS

Federal Rule of Civil Procedure 23 governs the requirements for a class to be certified for a class action. Fed. R. Civ. P. 23. There are four prongs that must be met for a class to be

successfully certified: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Id.* The decision to certify a class action is typically made when a class moves for class action certification.

> As previously noted, the Complaint defines the proposed class as:
>
> All persons who are currently and/or have previously attended, resided, and/or were court ordered into placement, at any Adelphoi USA, juvenile facility, juvenile detention, juvenile placement, and/or holding facility, in any state, Commonwealth, or jurisdiction, and while at any or in connection with any of the Defendants' facility(ies) were subjected to either physical, mental, and/or sexual abuse by any of the named Defendants, and/or their staff members, volunteers, agents, servants, employees, or the like while juveniles, and/or either had their educational opportunities deprived, are having their educational opportunities deprived, and/or are at threat to have their educational opportunities deprived (the "Class").

*Id.*, ¶ 265.

Defendants move to dismiss Plaintiffs' class action allegations, arguing Plaintiffs have not met their burden of demonstrating numerosity, commonality, typicality, or adequacy under Rule 23(a) (ECF No. 31, pp. 13-20), and that Plaintiffs class action allegations are inherently deficient for class certification. (ECF No. 32-1, p. 16). Under Federal Rule of Civil Procedure 12(f), courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Relatedly, Federal Rule of Civil Procedure 23(d)(1)(D) provides that a "court may issue orders that ... require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."

"Courts may, in rare instances, strike class allegations prior to a motion for class certification." *Bernstein v. Serv. Corp. Int'l*, No. 17-4960, 2018 WL 6413316, at *3 (E.D. Pa. Dec. 6, 2018). "However, district courts within the Third Circuit typically conclude that motions to strike class action allegations filed before plaintiffs move for class certification are premature." *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 244 (E.D.

Pa. 2012) (citing *P.V. ex rel. Valentin v. Sch. Dist. of Phila.*, No. 2:11-cv-04027, 2011 WL 5127850, at *3–4 (E.D. Pa. Oct. 31, 2011)).

Granting such a motion before class certification is appropriate "only where '[n]o amount of additional class discovery will alter th[e] conclusion' that the class is not maintainable." *Id.* (quoting *Thompson v. Merck & Co.*, No. C.A. 01-1004, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004)); *see also id.* at 245 (noting that "[d]iscovery and full briefing on the merits of class certification are typically required" before considering whether the requirements of Federal Rule of Civil Procedure 23 have been satisfied).

Plaintiffs have not had the opportunity to conduct even preliminary discovery. In *Miller v. Glen Mills Schools*, the Court denied the defendant's motion to dismiss and strike the plaintiff's class action allegations without prejudice to the defendant's' right to challenge any future motion for class certification. 2019 WL 6877176, at *5 (E.D. Pa. Dec. 17, 2019). Since no discovery had been conducted, the Court determined the motion to strike was premature, stating "the court [could not] determine whether a class of boys who attended Glen Mills and who suffered physical abuse is ascertainable as a Rule 23(b)(3) class." *Id.*, at *3. The Court finds the same here.

Plaintiffs argue the Complaint has sufficiently pled class action allegations, meeting Rule 23(a)'s prerequisites and laying a solid foundation for class certification. (ECF No. 35, pp. 6-8). The Court agrees with the Plaintiffs and finds that the Defendants' motions to dismiss the class action allegations are premature. Defendants have not shown that no amount of discovery will allow Plaintiffs to resolve any deficiencies in their class action allegations or class definition.

Additionally, the current proposed class definition is not controlling. Further discovery may reveal a different class than that asserted by Plaintiffs. The Court is able to modify and

redefine the class if necessary. *See Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 234 (E.D. Pa. 2010) ("Pursuant to Rule 23(c), a court has the inherent power and discretion to redefine and modify a class in a way which allows maintenance of an action as a class action.") (internal quotations omitted); *Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 478 (E.D. Pa. 2021) ("Courts possess the authority to limit or modify class definitions in order to provide the precision needed for class certification"). The Court, having determined the class action certification analysis is premature, denies the Defendants' motions to dismiss Plaintiffs' class action allegations.

### IV.   CONCLUSION

For the reasons set forth above, the motions to dismiss of Defendants are denied. Specifically, Plaintiffs' Title IX claims, § 1983 claims, and Pennsylvania state law negligence claims against Defendants, as found in Counts I, II, III, IV, VI, and XI of the Second Amended Complaint, are permitted to remain. Further, Defendants' motions to dismiss Plaintiffs' class action allegations at this early stage of the litigation are denied, without prejudice to the Defendants' rights to challenge any future motion for class certification.